BENJAMIN C. MIZER, Principal Deputy Assistant Attorney General
JOHN W. HUBER, United States Attorney
DANIEL D. PRICE, Assistant United States Attorney (Utah Bar No. 2646)
JACQUELINE COLEMAN SNEAD, Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.   20530
Tel: (202) 616-8475
*Attorneys for Petitioner*

_____

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION, | CASE NO. 2:16-cv-611-DN |
| Petitioner,<br><br>v.<br><br>UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING, | **MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE DEA ADMINISTRATIVE SUBPOENAS**<br><br>Chief Judge David Nuffer |
| Respondents. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................ 1

STATUTORY AND REGULATORY BACKGROUND ................................................ 1

FACTUAL BACKGROUND ........................................................................................... 3

ARGUMENT .................................................................................................................... 4

      I.      THE DEA ADMINISTRATIVE SUBPOENA IS ENFORCEABLE ................... 4

            A.      DEA Is Authorized To Issue Administrative Subpoenas in the Course of Its Investigation into Potential CSA Violations .................................... 4

            B.      DEA's Inquiry Is Not Too Indefinite ........................................................ 5

            C.      The Information Sought in DEA's Subpoena Is Reasonably Relevant to Its Investigation ........................................................................................... 5

            D.      All Administrative Prerequisites Have Been Met ..................................... 6

      II.     STATE LAW DOES NOT EXCUSE RESPONDENTS FROM COMPLIANCE WITH DEA'S SUBPOENA BECAUSE THE CSA PREEMPTS STATE LAW .................................................................................... 7

CONCLUSION .............................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631 (7th Cir. 2013) ... 10

*Cerveny v. Aventis, Inc.*, No. 2:14-cv-545, 2016 WL 1065826 (D. Utah Mar. 16, 2016).......... 7, 8

*Devon Energy Prod Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195 (10th Cir. 2012) ........ 7

*EEOC v. Dillon Cos.*, 310 F.3d 1271 (10th Cir. 2002) ................................................................. 5

*EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984) ................................................................................. 5

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) ............................................................ 5

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990) ....................................................................... 7, 8

*Fidelity Fed. Save. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ..................................... 8

*FTC v. Carter*, 636 F.2d 781 (D.C. Cir. 1980) ........................................................................... 5

*FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977) .................................................................. 4

*Gonzales v. Oregon*, 546 U.S. 243 (2006) ................................................................................. 8

*Gonzales v. Raich*, 545 U.S. 1 (2005) .................................................................................... 1-2

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985) ................................... 7

*In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000) ..................................................... 10

*Okla. Press Publishing Co. v. Walling,* 327 U.S. 186 (1946) ............................................... 4, 5, 8

*Or. PDMP v. DEA*, 998 F. Supp. 2d 957 (D. Or. 2014),
    *appeal filed*, No. 14-35402 (9th Cir. docketed May 9, 2014) ......................................... 10

*Perez v. Alegria*, No. 15-MC-401-SAC, 2015 WL 4744480 (D. Kan. Aug. 11, 2015) ............... 5

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875 (5th Cir. 1989) ..... 6

*Sec. & Exch. Comm'n v. Blackfoot Bituminous, Inc.*, 622 F.2d 512 (10th Cir. 1980) .................. 4

*United States v. Andersen*, No. 3:14-MC-11-JEM, 2014 WL 5390566 (N.D. Ind. Oct. 22, 2014) 5

*United States v. Inst. for Coll. Access & Success*, 27 F. Supp. 3d 106 (D.D.C. 2014) .................. 4

*United States v. Mich. Dep't of Cmty. Health*,
    No. 10-mc-109, 2011 WL 2412602 (W.D. Mich. June 9, 2011) ..................................... 10

*United States v. Moffett*, 84 F.3d 1291 (10th Cir. 1996) ................................................ 5

*United States v. Moore*, 423 U.S. 122 (1975) ............................................................ 2

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ............................................... 4

*United States v. Powell*, 379 U.S. 48 (1964) .............................................................. 8

*United States v. Zadeh*,
    No. 15-10195, -- F.3d --, 2016 WL 1612754 (5th Cir. Apr. 21, 2016) ........................ 4, 8

*U.S. Dep't of Justice v. Colo. Bd. of Pharmacy*,
    . No. 10-1116, 2010 WL 3547898 (D. Colo. Aug. 13, 2010), *aff'd & adopted by* 2010 WL
    3547896 (D. Colo. Sept. 3, 2010) ............................................................................. 9, 10

## Statutes & Legislative Material

Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*...................................................... 1

21 U.S.C. § 811 ........................................................................................................ 2

21 U.S.C. § 812 ........................................................................................................ 2

21 U.S.C. § 822 ........................................................................................................ 2

21 U.S.C. §§ 823-824, 829 ........................................................................................ 6

21 U.S.C. § 841 ........................................................................................................ 2

21 U.S.C. § 842 ........................................................................................................ 2

21 U.S.C. §§ 871-890 ............................................................................................... 4

21 U.S.C. § 876 ............................................................................................... *passim*

21 U.S.C. § 878 .................................................................................................... 5, 6

21 U.S.C. § 880 ........................................................................................................ 2

21 U.S.C. § 882 ........................................................................................................ 2

21 U.S.C. § 903 ................................................................................................................ 8

Colo. Rev. Stat. § 12-22-705 ........................................................................................... 9

Utah Code Ann. § 58-37f-201 ..................................................................................... 4, 7

H.R. Rep. No. 91-1444 (1970) ......................................................................................... 9

**Regulations**

21 C.F.R. §§ 1301.01 *et seq.* ......................................................................................... 2

21 C.F.R. § 1301.11 ......................................................................................................... 2

21 C.F.R. §§ 1316.01 -.13 ............................................................................................... 2

21 C.F.R. §§ 1316.31 - .34, 1316.41 -.68 ...................................................................... 2

28 C.F.R. Pt. 0, Subpt. R, App. ...................................................................................... 6

28 C.F.R. § 0.100 ............................................................................................................ 1

28 C.F.R. § 0.101 ............................................................................................................ 1

Petitioner the United States Department of Justice, Drug Enforcement Administration ("DEA") hereby submits this memorandum in support of its petition to enforce an administrative subpoena pursuant to 21 U.S.C. § 876(c). DEA's subpoena sought information in the Utah Controlled Substance Database relating to the prescribing practices of a Utah-licensed medical professional who is the subject of an ongoing DEA investigation into potential violations of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq*. DEA's subpoena was issued pursuant to DEA's authority to investigate CSA violations and seeks specific information relevant to DEA's investigation. The subpoena therefore satisfies all requirements for enforcement. Moreover, to the extent a Utah state law purports to require federal law enforcement agencies to obtain a search warrant prior to accessing Utah Controlled Substance Database information, the CSA preempts that conflicting requirement. Accordingly, the DEA's subpoena should be enforced.

## STATUTORY AND REGULATORY BACKGROUND

DEA was established by Executive Order 11727, and the Attorney General has delegated to it functions relating to or arising from investigations of "matters concerning drugs," 28 C.F.R. § 0.100, as well as the responsibility for developing and implementing "a concentrated program throughout the Federal Government for the enforcement of Federal drug laws and for cooperation with State and local governments in the enforcement of their drug abuse laws," *id.* § 0.101(a). DEA is therefore the federal agency charged with primary responsibility for enforcing and administering the requirements of the CSA.

In the CSA, "Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Gonzales v. Raich*, 545 U.S. 1, 13 (2005). The CSA categorizes

controlled substances into five schedules, based on "their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." *Id.* (citing 21 U.S.C. §§ 811, 812). Drugs in Schedules II-V have a currently accepted medical use and may be dispensed for such use with a prescription, subject to any applicable limitations or restrictions. *See* 21 U.S.C. § 812. In enacting the CSA, "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels." *United States v. Moore*, 423 U.S. 122, 135 (1975). Accordingly, those who seek to manufacture, distribute, or dispense controlled substances with CSA-authorized uses must first obtain a registration. 21 U.S.C. § 822; 21 C.F.R. § 1301.11(a). The CSA imposes criminal penalties on those, including registrants, who manufacture, distribute, or dispense controlled substances except as authorized by the CSA. 21 U.S.C. §§ 841-842. Indeed, Congress "was aware that registrants, who have the greatest access to controlled substances and therefore the greatest opportunity for diversion, were responsible for a large part of the illegal drug traffic." *Moore*, 423 U.S. at 135.

DEA's functions include the implementation, regulation, and enforcement of registration requirements for manufacturers, distributors, and dispensers of controlled substances. *See* 21 C.F.R. §§ 1301.01 *et seq*. DEA thus administers the CSA's registration process as well as the process for suspending or revoking registrations that have been issued. *See* 21 C.F.R. §§ 1301.01 *et seq*. In connection with its responsibilities under the CSA, DEA is also authorized to conduct administrative inspections of controlled premises, 21 U.S.C. §§ 880, 882(f); 21 C.F.R. §§ 1316.01 -.13; and to conduct administrative hearings, 21 C.F.R. §§ 1316.31 - .34, 1316.41 -.68. DEA is also authorized to issue an administrative subpoena to "require the production of any records (including books, papers, documents, and other tangible things which constitute or

contain evidence) which [it] finds relevant or material to" an investigation under the CSA. 21
U.S.C. § 876(a).

## FACTUAL BACKGROUND

In May 2015, DEA initiated an investigation into the prescribing practices of a DEA
registrant ("DEA Registrant #1") in the Salt Lake metropolitan area. Declaration of Diversion
Investigator Robert Churchwell ("Churchwell Decl.") ¶¶ 3-4, attached hereto. Based on its
investigation, DEA suspects that DEA Registrant #1 has provided controlled substance
prescriptions, in violation of the CSA, to individuals who, in turn, sell the controlled substances
illegally, and who may be members of a criminal organization with overseas ties. *Id.* ¶ 5. On
November 12, 2015, DEA served an administrative subpoena, issued pursuant to 21 U.S.C. §
876, on Francine A. Giani, Executive Director of Respondent the Utah Department of
Commerce, and Mark Steinagel, Director of Respondent the Utah Division of Occupational and
Professional Licensing ("DOPL"), seeking information in the Utah Controlled Substance
Database ("CSD"). Churchwell Decl. ¶ 7. The Utah CSD is administered and maintained by
DOPL and contains comprehensive information about controlled substance prescriptions issued
and/or filled in the State of Utah. *Id.* ¶ 6; *see* Utah Code Ann. § 58-37f-201. DEA relies on the
Utah CSD program, as it does on similar Prescription Database Monitoring Programs
("PDMPs") in other states, as a principle investigative resource. Churchwell Decl. ¶ 6. Here,
DEA's subpoena specifically sought all prescription records in the Utah CSD associated with
DEA Registrant #1 for the period beginning January 8, 2015, to the present. *Id.* ¶ 7.

To date, Respondents have failed to comply with DEA's administrative subpoena. *Id.* ¶ 9.
Respondents have explained their refusal to comply by citing a 2015 amendment to Utah Code

Ann. § 58-37f-301(2)(k), which purports to require "federal . . . law enforcement agencies" to obtain a "valid search warrant" in order to gain   access to information in the Utah CSD. *See* Churchwell Decl. ¶ 8.

## ARGUMENT

## I.     THE DEA ADMINISTRATIVE SUBPOENA IS ENFORCEABLE

Congress may authorize the Executive Branch to issue subpoenas for the production of records and information necessary to the performance of agency functions. *Okla. Press Publishing Co. v. Walling,* 327 U.S. 186, 209 (1946). A court has a "strictly limited role" when reviewing a petition to enforce an administrative subpoena. *United States v. Zadeh*, No. 15-10195, -- F.3d --, 2016 WL 1612754, at *6 (5th Cir. Apr. 21, 2016); *accord United States v. Inst. for Coll. Access & Success*, 27 F. Supp. 3d 106, 111 (D.D.C. 2014) (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 871–72 (D.C. Cir. 1977)). An administrative subpoena is enforceable if the court determines that "[1] the inquiry is within the authority of the agency, [2] the demand is not too indefinite, and [3] the information sought is reasonably relevant" to the authorized inquiry. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). The court also may consider whether "all administrative prerequisites have been met." *Sec. & Exch. Comm'n v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir. 1980). As discussed in turn below, each of these elements is satisfied here.

### A.     DEA Is Authorized To Issue Administrative Subpoenas in the Course of Its Investigation into Potential CSA Violations

Congress specifically authorized investigations of the illegal distribution of controlled substances in the CSA. 21 U.S.C. §§ 871-890 (setting forth general enforcement authorities, including various investigatory methods). As part of this authority, § 876(a) grants DEA the power to issue administrative subpoenas in order to compel testimony or "require the production of any

records . . . which the Attorney General finds relevant or material to the investigation" of any CSA violation. 21 U.S.C. § 876(a); *see also United States v. Moffett*, 84 F.3d 1291, 1293 (10th Cir. 1996) (recognizing that 21 U.S.C. § 876 "is written to give the DEA broad powers to investigate violations of federal drug laws"). DEA investigators are authorized to execute and serve these subpoenas. *Id.* § 878(a)(2). Accordingly, the first requirement for enforcement of DEA's subpoena is satisfied.

### B.    DEA's Inquiry Is Not Too Indefinite

The second requirement for enforcement of DEA's subpoena—that it be sufficiently definite—is also satisfied. Essentially, this requirement ensures that the records sought can be identified by their description in the subpoena. *Cf. Okla. Press Pub. Co.*, 327 U.S. at 208-09. DEA's subpoena sought specific prescription and dispensing data for a single medical provider—the subject of its investigation—over a specified duration of time (January 8, 2015 to the present). *See* Churchwell Decl. ¶ 7. Accordingly, the subpoena qualifies as sufficiently definite for enforcement purposes. *Cf. United States v. Andersen*, No. 3:14-MC-11-JEM, 2014 WL 5390566, at *2 (N.D. Ind. Oct. 22, 2014) (holding that a subpoena seeking an individual's lease agreements, property listings, any documents listing names and ages of tenants, and any documents pertaining to the disclosure of lead-based paint hazards was sufficiently definite).

### C.    The Information Sought in DEA's Subpoena Is Reasonably Relevant to Its Investigation

The data sought in DEA's subpoena, which relates to prescriptions issued by a specific medical provider, are clearly relevant to the investigation that the DEA is conducting. The relevance requirement "is not especially constraining." *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1274-75 (10th Cir. 2002) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984)). The

5

requirement is satisfied as long as the information sought is "not plainly incompetent or irrelevant to any lawful purpose of the [agency]." *Perez v. Alegria*, No. 15-MC-401-SAC, 2015 WL 4744480, at *7 (D. Kan. Aug. 11, 2015) (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)). Moreover, "[t]he agency's own consideration of relevance should be accepted unless it is 'obviously wrong.'" *Id.* (quoting *FTC v. Carter*, 636 F.2d 781, 788 (D.C. Cir. 1980)). Information qualifies as relevant if it "merely 'touches a matter under investigation.'" *Id.* (quoting *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989)).

Improperly dispensing or prescribing drugs in a manner that diverts otherwise legal controlled substances to illegal uses is a violation of the CSA's registration and prescription requirements. *See* 21 U.S.C. §§ 823-824, 829. DEA's declarant has explained that DEA is investigating a medical provider's potential diversion of prescribed controlled substances to illegal uses in violation of the CSA. Churchwell Decl. ¶¶ 3-5. Information regarding the prescriptions that this provider has issued is directly relevant to that inquiry. Accordingly, the third requirement for enforcement of DEA's subpoena is satisfied.

### D. All Administrative Prerequisites Have Been Met

The sole statutory prerequisite for DEA's issuance of a subpoena pursuant to 21 U.S.C. § 876 is that the agency find the subpoenaed evidence relevant or material to its investigation. 21 U.S.C. § 876(a). As discussed above, the subpoenaed evidence here is clearly relevant to DEA's investigation of suspected diversion by the individual whose prescription information the subpoena seeks. DEA's administrative subpoena was issued by a DEA officer with authority to issue the subpoena pursuant to 21 U.S.C. § 878(a)(2) and 28 C.F.R. Pt. 0, Subpt. R, App. § 4(a). Churchwell Decl. ¶¶ 1, 7. The subpoena was properly served on the heads of the Respondent

6

agencies pursuant to 21 U.S.C. § 876(b) and Utah R. Civ. P. 4(d)(1)(K). Churchwell Decl. ¶ 7. Accordingly, all administrative prerequisites to enforcement of the DEA's subpoena have been met.

## II.     STATE LAW DOES NOT EXCUSE RESPONDENTS FROM COMPLIANCE WITH DEA'S SUBPOENA BECAUSE THE CSA PREEMPTS STATE LAW

Through counsel, Respondents have stated that they will not comply with DEA's administrative subpoena because compliance would violate state law. Churchwell Decl. ¶ 8. Specifically, Respondents assert that Utah Code Ann. § 58-37f-301(2)(k) prohibits disclosure of information in the Utah CSD to DEA absent a valid search warrant. *See* Churchwell Decl. ¶ 8. To the extent this Utah statute precludes compliance with a validly issued DEA administrative subpoena, or seeks to set a higher standard for production than that which is required by the CSA, it is in conflict with federal law. As discussed below, under such circumstances, federal law preempts the state statute, and the subpoena should be enforced regardless of whether it complies with state law.

Under the Supremacy Clause, state laws that "interfere with, or are contrary to, federal law" are invalid. *Cerveny v. Aventis, Inc.*, No. 2:14-cv-545, 2016 WL 1065826, at *5 (D. Utah Mar. 16, 2016) (quoting *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)). Courts have recognized three forms of preemption—express preemption, field preemption, and conflict preemption. *Id.* (citing *Devon Energy Prod Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012)). "Express preemption exists where Congress utilizes 'explicit statutory language' to supersede state law." *Id.* (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). Field preemption "occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to

supplement it." *Id.* (internal quotation omitted). "Conflict preemption arises 'where it is impossible for a private party to comply with both state and federal requirements . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *English*, 496 U.S. at 79); *accord Fidelity Fed. Save. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982).

Although the CSA indicates that it should not be construed as indicating Congress's intent to "occupy the field" of controlled substance regulation, it also expressly mandates preemption when "there is a positive conflict between [a CSA] provision . . . [and] State law so that the two cannot consistently stand together." 21 U.S.C. § 903. This provision "disclaims field pre-emption, and affirmatively *prescribes* federal pre-emption whenever state law creates a conflict." *Gonzales v. Oregon,* 546 U.S. 243, 289-90 (2006) (Scalia, J., dissenting); *see also Zadeh*, 2016 WL 1612754, at *2 (recognizing that the CSA "explicitly retains preemptive effect over [conflicting] state regulations"). In *Zadeh*, the Fifth Circuit thus held that a Texas law that prohibited disclosure of patient records except in circumstances not applicable in the case was preempted by the CSA because it stood as an obstacle to DEA's authority to obtain information pursuant to the CSA's administrative subpoena provision. *Id.* at *3.

Utah's search warrant requirement similarly conflicts with the authority that Congress granted DEA in 21 U.S.C. § 876 to obtain records that it deems relevant for investigatory purposes through an administrative subpoena—without probable cause and without a warrant issued by a magistrate. *See Okla. Press Pub. Co.,* 327 U.S. at 209 (finding probable cause was unnecessary for an administrative subpoena issued for purposes of a Department of Labor investigation); *United States v. Powell*, 379 U.S. 48, 57 (1964) (IRS did not need probable cause to issue administrative

8

summons). Indeed, by purporting to require DEA to obtain a search warrant from a judicial

magistrate based on probable cause, the Utah law essentially prevents DEA from acquiring

information that it is authorized to acquire pursuant to § 876, whenever DEA seeks records from

Utah's CSD relating to an investigation that has not developed probable cause. The warrant

requirement is not merely a nuisance to DEA's investigative process but is in wholesale conflict

with Congress's intent to allow DEA to issue investigatory subpoenas without the burden of

additional requirements. *See* H.R. Rep. No. 91-1444, at 4620-21 (1970) (explaining that the

subpoena provision "authorizes the Attorney General to . . . compel production of records or other

tangible things which constitute or contain evidence and upon which he has made a finding as to

materiality or relevancy"). The fact that § 876 itself allows DEA to seek a court order to enforce an

administrative subpoena *after* the subpoena is served, *see* 21 U.S.C. § 876(c), also suggests that

Congress did not intend to require DEA to obtain a warrant in advance.

A number of other courts have recognized that 21 U.S.C. § 876 preempts conflicting state

law provisions and that, accordingly, DEA subpoenas issued pursuant to § 876 should be enforced.

The District Court for the District of Colorado considered a Colorado statute that allowed release

of PDMP information to law enforcement officials in response to a subpoena only when the

information released was "specific to an individual" and was "part of a bona fide investigation."

*U.S. Dep't of Justice v. Colo. Bd. of Pharmacy*, No. 10-1116, 2010 WL 3547898 (D. Colo. Aug.

13, 2010), at *2 (quoting Colo. Rev. Stat. § 12-22-705(3)(e)). The court held that the CSA

provision preempted the Colorado law insofar as the Colorado law limited the release of

information specific to a patient, as opposed to a medical provider, because such a limitation

"stands as an obstacle to the DEA's efforts to accomplish investigation, through the subpoena

9

process pursuant to 21 U.S.C. § 876, of potential violations of the C[SA]." *Id.* at *4. The court therefore granted DEA's petition to enforce the subpoena. *Id.*, *aff'd & adopted by* 2010 WL 3547896 (D. Colo. Sept. 3, 2010). Similarly, the District Court for the Western District of Michigan held that a Michigan state law's confidentiality provision, which imposed criminal penalties on any state employee who disclosed confidential lists of those granted medical marijuana registration cards, "must be and is nullified to the extent it conflicts with the [CSA] by preventing the federal government's exercise of its subpoena power under § 876." *United States v. Mich. Dep't of Cmty. Health*, No. 10-mc-109, 2011 WL 2412602, at *13 (W.D. Mich. June 9, 2011). A magistrate judge in the District Court for the District of Oregon similarly held that an Oregon state law requiring law enforcement personnel to present a court order based on probable cause in order to obtain PDMP information was preempted by § 876. *See Or. PDMP v. DEA*, 998 F. Supp. 2d 957, 961 (D. Or. 2014) (citing decision in *United States v. Ore. PDMP*, 3:12-mc-298 (D. Or. Aug. 27, 2012)).[1]

The same result should apply here. Imposing the requirement of Utah Code Ann. § 58-37f-301(2)(k) on DEA to obtain a search warrant before obtaining Utah CSD records will

---

[1] In the cited 2014 *Or. PDMP* decision, the district court held that DEA's use of administrative subpoenas to obtain Oregon PDMP information violated the Fourth Amendment rights of patients, who had intervened in the case. 998 F. Supp. 2d at 967. The court therefore did not reach the preemption issue. *See id.* The district court's decision is currently on appeal to the Ninth Circuit. *See Or. PDMP v. DEA*, No. 14-35402 (9th Cir. docketed May 9, 2014). The Government continues to maintain that third parties lacked standing to intervene in the District of Oregon proceeding and that DEA's use of an administrative subpoena to seek PDMP information is reasonable under the Fourth Amendment, given the closely regulated nature of controlled substance distribution and the general reasonableness standard that applies to the evaluation of an administrative subpoena. *See, e.g., id.* ECF No. 50 (DEA reply brief, citing *inter alia Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 646 (7th Cir. 2013) (rejecting Fourth Amendment challenge to administrative subpoena for medical records under general reasonableness standard); *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000) (same)).

frustrate a legitimate DEA investigation that is clearly authorized under the CSA, and for which DEA issued an administrative subpoena pursuant to authority expressly granted by Congress. Churchwell Decl. ¶¶ 3-7, 10-13. Under these circumstances, the Court should hold that Utah Code Ann. § 58-37f-301(2)(k) is preempted, and should order that DEA's administrative subpoena be enforced.

## **CONCLUSION**

For the foregoing reasons, the Court should enforce DEA's administrative subpoena against Respondents.

DATED this 14th day of June, 2016.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOHN W. HUBER
United States Attorney
DANIEL D. PRICE (Utah Bar No. 2646)
Assistant United States Attorney
JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

s/ Kathryn L. Wyer
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.   20530
Tel: (202) 616-8475
*Attorneys for Petitioner*