John Mejia, USB No. 13965
Leah Farrell, USB No. 13696
jmejia@acluutah.org
lfarrell@acluutah.org
ACLU of Utah Foundation
355 North 300 West
Salt Lake City, UT 84103
(801) 521-9862

Nathan Freed Wessler (*pro hac vice* application pending)
Brett Max Kaufman (*pro hac vice* application pending)
nwessler@aclu.org
bkaufman@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

*Attorneys for Respondents–Intervenors*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>    *Petitioner*,<br>v.<br><br>UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING,<br><br>    *Respondents*. | Case No. 2:16-cv-611-DN<br><br>**MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**<br><br>**Oral Argument Requested**<br><br>Chief Judge David Nuffer |

UNITED STATES DEPARTMENT OF
JUSTICE, DRUG ENFORCEMENT
ADMINISTRATION,

    *Petitioner*,

  v.

IAFF LOCAL 1696, EQUALITY UTAH,
AMERICAN CIVIL LIBERTIES UNION OF
UTAH, JOHN DOE 1, and JOHN DOE 2,

    *Respondents–Intervenors*.

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................... iv

Corporate Disclosure Statement ........................................................................................... vii

Relief Sought and Grounds for Motion .................................................................................1

Factual Background ...............................................................................................................2

Argument ...............................................................................................................................7

    I.      Movants are entitled to intervene as of right. .............................................................7

           A.      The motion to intervene is timely. .................................................................. 8

           B.      Movants have Fourth Amendment interests in ensuring that their
prescription records are not disclosed to law enforcement without a
warrant based on probable cause. .................................................................. 9

           C.      The disposition of this lawsuit may impair Movants' ability to protect
their interests. ................................................................................................ 12

           D.      The existing parties may not adequately represent Movants' interests
in this litigation. ............................................................................................ 13

    II.      Movants are entitled to permissive intervention. ........................................................16

Conclusion ............................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837 (10th Cir. 1996)................................................................................. 8, 10

*Douglas v. Dobbs*, 419 F.3d 1097 (10th Cir. 2005)........................................ 10

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091 (10th Cir. 2005) .......................... 7

*Herring v. Keenan*, 218 F.3d 1171 (10th Cir. 2000)....................................... 10

*Kerns v. Bader*, 663 F.3d 1173 (10th Cir. 2011) .......................................... 10

*Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381 (10th Cir. 1977) .................. 15

*Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223 (10th Cir. 2010) .......................... 8

*Or. Prescription Drug Monitoring Program v. U.S. DEA*, 998 F. Supp. 2d 957 (D. Or. 2014).................................................................................. 11

*Or. Prescription Drug Monitoring Program v. U.S. DEA*, No. 3:12-cv-02023 (D. Or. Mar. 31, 2013) ........................................................................ 16

*Romero v. Bd. of Cty. Comm'rs for the Cty. of Curry*, 313 F.R.D. 133 (D.N.M. 2016)................................................................................. 8, 10

*San Juan Cty. v. United States*, 503 F.3d 1163 (10th Cir. 2007).................. 8, 9, 10, 14

*Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416 (10th Cir. 1984)................. 13

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ...................................... 11, 12

*State v. Skinner*, 10 So. 3d 1212 (La. 2009) ............................................... 11

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ...................... 14, 15, 16

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004).................... 10

*Tudor Ins. Co. v. 1st Nat. Title Ins. Agency, LLC*, 281 F.R.D. 513 (D. Utah 2012)................. 9

*Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) .................. 7, 8, 9, 14

*Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 232 F.R.D. 392 (D. Utah 2005) ................................................................................. 16

*Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111
(10th Cir. 2002)........................................................................................... 14

*Whalen v. Roe*, 429 U.S. 589 (1977)............................................................... 11

*WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992 (10th Cir. 2009) .................... 12, 13, 14

**Statutes**

21 U.S.C. § 876 ........................................................................................... 4, 13

Utah Code Ann. § 58-37-2 ............................................................................ 2

Utah Code Ann. § 58-37f-201 ....................................................................... 2

Utah Code Ann. § 58-37f-203 ....................................................................... 3

Utah Code Ann. § 58-37f-301 ....................................................................... 4

Utah Code Ann. § 58-37f-601 ....................................................................... 11

**Rules**

Fed. R. Civ. P. 24 ........................................................................................ 7

Utah Admin. Code R156-37f-203.................................................................. 3

Utah Admin. Code R156-37f-301.................................................................. 4

**Treatises**

Wayne LaFave, *Search and Seizure* (5th ed. 2015)....................................... 11

**Other Authorities**

Dennis Romboy, *Unwarranted Drug Database Search Prompts New Utah Law,
Lawsuits*, Deseret News (Apr. 23, 2015),
http://www.deseretnews.com/article/865627152/Unwarranted-drug-database-
search-prompts-new-Utah-law-lawsuits.html?pg=all .............................. 4

Linda Simoni-Wastila & Christopher Tompkins, *Balancing Diversion Control
and Medical Necessity: The Case Of Prescription Drugs with Abuse Potential*,
36 Substance Use & Misuse 1275 (2001)............................................... 3

Marvin H. Sims, CSD Administrator, *Utah's Controlled Substance Database Program* (Sept. 2012), http://www.pdmpassist.org/pdf/PPTs/West2012/3_Sims_NewInitiatives.pdf. ........................ 3

Office of Nat'l Drug Control Policy, *Utah Drug Control Update*, https://www.whitehouse.gov/sites/default/files/docs/state_profile_-_utah_0.pdf (last visited July 22, 2016) ................................................................... 2

Office of the Utah Legislative Auditor General, *A Review of the Use of the Controlled Substance Database by Law Enforcement*, 2 (Dec. 15, 2015), https://le.utah.gov/audit/15_eilr.pdf .......................................................... 4

Robert Gehrke, *Feds May Sue Utah over Law Aimed at Protecting Prescription Drug Records*, Salt Lake Trib. (July 2, 2015), http://www.sltrib.com/news/2688175-155/feds-may-sue-utah-over-law?fullpage=1 ................................................................................ 4, 5

U.S. Dep't of Justice/Drug Enforcement Admin. Subpoena to Utah Controlled Substance Database (June 16, 2015), https://www.scribd.com/document/319355947/DEA-database-subpoena-letter ................... 13

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the IAFF Local 1696,

Equality Utah, and the American Civil Liberties Union of Utah, certify that they have no parent

corporation or publicly-traded stock.


July 28, 2016                                    Respectfully submitted,

                                                  /s/ John Mejia
                                                 John Mejia, USB No. 13965
                                                 ACLU of Utah Foundation
                                                 355 North 300 West
                                                 Salt Lake City, UT 84103
                                                 jmejia@acluutah.org
                                                 (801) 521-9862

## RELIEF SOUGHT AND GROUNDS FOR MOTION

Pursuant to Federal Rule of Civil Procedure 24(a), Salt Lake County Firefighters IAFF Local 1696, Equality Utah, the American Civil Liberties Union of Utah, John Doe 1, and John Doe 2 (collectively, "Movants") move for leave to intervene as of right as Respondents in this action in order to protect their constitutional rights to be free of unreasonable searches.[1] In the alternative, Movants request permission to intervene under Federal Rule of Civil Procedure 24(b).[2]

Movants are individuals or represent individuals whose protected health information and constitutional rights are directly at issue in this action. Intervention is appropriate to ensure that Movants' constitutional rights will not be compromised in the ongoing dispute between Petitioner, the Drug Enforcement Administration ("DEA"), and Respondents, the Utah Department of Commerce and Utah Division of Occupational and Professional Licensing ("DOPL") (collectively, "Utah").

The Court should grant Movants' motion to intervene pursuant to Federal Rule of Civil Procedure 24(a) for the following reasons:

1. this motion is timely;

2. movants' fundamental rights are at stake;

---

[1] Respondent Utah consents to this motion. Petitioner Drug Enforcement Administration indicates that it will oppose Movants' motion to intervene.

[2] Federal Rule of Civil Procedure 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Given the posture of this case, Movants believe that a "pleading" as defined by Federal Rule of Civil Procedure 7(a) is not the most appropriate means to respond to the DEA's petition. Out of an abundance of caution, Movants attach a Proposed Answer. Movants intend, however, to file a proposed opposition to the DEA's petition on the same schedule as Utah per this Court's Scheduling Order. *See* ECF No. 16.

3. disposition of this action will impair their ability to protect those rights; and

4. movants have unique, personal interests in the information that is the subject of this action that are different from the parties' interests.

In the alternative, the Court should grant Movants' motion for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

## FACTUAL BACKGROUND

In 1995, the Utah legislature created the Utah Controlled Substance Database ("UCSD"), an electronic database maintained by the DOPL that records information about "every prescription for a controlled substance dispensed in the state to any individual other than an inpatient in a licensed health care facility."[3] Utah Code Ann. § 58-37f-201(5)(a). The UCSD began operating in 1996. *See* Office of Nat'l Drug Control Policy, *Utah Drug Control Update*, 2, https://www.whitehouse.gov/sites/default/files/docs/state_profile_-_utah_0.pdf (last visited July 27, 2016). After dispensing a scheduled prescription drug in Utah, pharmacists are required to electronically report to the UCSD the name, date of birth, gender, and street address of the patient; positive identification for the patient, including the identifying numbers on the patient's identification; the name of the prescribing practitioner; and name of the drug and the strength,

---

[3] "Controlled substances" means a drug or substance included in Schedules I–V of the federal Controlled Substances Act or included in Schedules I–V of Utah Code Ann. § 58-37-4. *See* Utah Code Ann. § 58-37-2(f)(i). The Controlled Substances Act creates five categories of controlled substances, divided into Schedules I–V. *See* Drug Enforcement Administration, Office of Diversion Control, Controlled Substance Schedules, http://www.deadiversion.usdoj.gov/schedules/#define. Federal Schedule I drugs "have no currently accepted medical use in the United States, a lack of accepted safety for use under medical supervision, and a high potential for abuse," and are not available for prescription. *Id.* Drugs in the federal Schedules II–V and state Schedules I–V include a wide variety of frequently prescribed psychiatric drugs, narcotic painkillers, and non-narcotic drugs. For examples, see *id.*

quantity, and dosage dispensed. *See* Utah Code Ann. § 58-37f-203(3); Utah Admin. Code R156-37f-203(1)(a). There is no statutory or regulatory limit on the duration of retention of the information in the UCSD. As of September 2012, there were more than 47 million prescription records in the database, with more than five million records uploaded to the UCSD in the preceding year. *See* Marvin H. Sims, CSD Administrator, *Utah's Controlled Substance Database Program* (Sept. 2012), http://www.pdmpassist.org/pdf/PPTs/West2012/3_Sims_NewInitiatives.pdf.

Controlled substances are used to treat a wide range of serious medical conditions, including weight loss associated with AIDS, anxiety disorders, post-traumatic stress disorder, panic disorders, alcohol addiction withdrawal symptoms, opiate addiction testosterone deficiency, chronic and acute pain, seizure disorders, narcolepsy, insomnia, Attention Deficit Hyperactivity Disorder ("ADHD"), and migraines. *See, e.g.*, Linda Simoni-Wastila & Christopher Tompkins, *Balancing Diversion Control and Medical Necessity: The Case Of Prescription Drugs with Abuse Potential*, 36 Substance Use & Misuse 1275, 1288 (2001). Because certain medications are particularly associated with these conditions, a prescription for a Schedule II–V medication will often reveal a patient's underlying medical condition. Thus, information about an individual's prescriptions in the UCSD can reveal a great deal of sensitive medical information.

In recognition of Utah residents' privacy interest in their prescription records, and in response to revelations of law enforcement access to UCSD records without judicial oversight, the Utah legislature amended the UCSD statute in March 2015 to more strictly limit access to information in the database. *See* Office of the Utah Legislative Auditor General, *A Review of the*

*Use of the Controlled Substance Database by Law Enforcement*, 2 (Dec. 15, 2015),

https://le.utah.gov/audit/15_eilr.pdf; Dennis Romboy, *Unwarranted Drug Database Search*

*Prompts New Utah Law*, *Lawsuits*, Deseret News (Apr. 23, 2015),

http://www.deseretnews.com/article/865627152/Unwarranted-drug-database-search-prompts-

new-Utah-law-lawsuits.html?pg=all. The DOPL is now prohibited from disclosing information

in the database to law enforcement agencies unless presented with a "valid search warrant . . .

related to: (i) one or more controlled substances; and (ii) a specific person who is a subject of the

investigation." Utah Code Ann. § 58-37f-301(2)(m); *see also* Utah Admin. Code R156-37f-

301(4)(a) ("Federal, state and local law enforcement authorities and state and local prosecutors

requesting information from the Database . . . must provide a valid search warrant authorized by

the courts").

      Notwithstanding the requirement of a warrant based on probable cause under Utah law,

the DEA has attempted to obtain protected health information from the UCSD using

administrative subpoenas pursuant to 21 U.S.C. § 876. *See* Pet. ¶ 9; Robert Gehrke, *Feds May*

*Sue Utah over Law Aimed at Protecting Prescription Drug Records*, Salt Lake Trib. (July 2,

2015), http://www.sltrib.com/news/2688175-155/feds-may-sue-utah-over-law?fullpage=1.

Section 876 permits certain federal law enforcement officials to issue and serve subpoenas

seeking records "relevant or material" to a controlled substances investigation. 21 U.S.C.

§ 876(a). The subpoenas are issued without any requirement of probable cause and without first

being presented to a court, and are judicially enforceable if the recipient declines to honor them.

*Id.* § 876(c).

Since the enactment of the UCSD warrant requirement in 2015, the State of Utah has refused to comply with the DEA's § 876 subpoenas (including the November 12, 2015 subpoena at issue in this action) on the basis that complying with them would violate Utah law. Pet. ¶ 11; Gehrke, *supra*. The DEA takes the position that federal law preempts Utah's requirement of a probable cause warrant. Pet. ¶ 12. The DEA petitioned this Court on June 14, 2016 to enforce the November 12 subpoena. Movants seek to intervene in that dispute in order to oppose the DEA's petition as unlawful under the Fourth Amendment.

The information contained in the UCSD and requested by the DEA implicates the fundamental rights of Utah residents and physicians practicing in Utah, including Movants. If the DEA were to obtain further prescription records from the UCSD without obtaining a warrant based on probable cause, it would be able to learn what Schedule II–V medications individuals are taking and, by extension, the nature of their underlying medical conditions. This uncovering of highly sensitive and deeply personal information would violate the reasonable expectation of privacy that doctors and patients have in their protected health information. Movants and their members have prescriptions that are recorded in the UCSD, and are particularly distressed by the prospect of that information being turned over to the DEA without a search warrant. For example:

- Salt Lake County Firefighters IAFF Local 1696 ("Local 1696") is a union representing firefighters and paramedics in Salt Lake County, Utah. Because of the physical demands and dangers of firefighting, firefighters are at high risk of injury, including strains, sprains, and muscular pain. Treatment of such injuries often requires pain medication prescribed by a physician, including opioids that are tracked in the UCSD. Before the enactment of the UCSD warrant requirement, members of Local 1696 suffered violations of their privacy and erroneous prosecutions on the basis of searches conducted by Utah law enforcement without probable cause or individualized suspicion. If the DEA were allowed to obtain prescription records from the UCSD without a warrant, Local 1696's members

would fear unjustified access to their sensitive medical information, unnecessary scrutiny by law enforcement agents, and groundless prosecution. Robertson Decl. ¶¶ 3–22.

- Equality Utah works to secure equal rights and protections for lesbian, gay, bisexual and transgender Utahns and their families. Many transgender men are prescribed hormone replacement therapy in the form of testosterone, which is a Schedule III drug under the federal Controlled Substances Act. Information about the quantity and frequency of a patient's testosterone prescriptions is private and highly sensitive because it can reveal not only that the person is transitioning from female to male sex, but also the stage of their transition. Equality Utah therefore, seeks to prevent the DEA from gaining access to that information without a warrant. Williams Decl. ¶¶ 3–11.

- The American Civil Liberties Union of Utah ("ACLU of Utah") seeks to intervene as a respondent on behalf of its members. Members of the ACLU of Utah include Utahns who fill prescriptions for medications that are recorded in the UCSD. Members also include licensed Utah physicians who write prescriptions for medications that are recorded in the UCSD and who have an interest in maintaining the privacy of their patients' records. The ACLU of Utah represents those members in asserting their privacy rights in this action. McCreary Decl. ¶¶ 3–8.

- John Doe 1[4] is an attorney in private practice in Utah. John Doe 1 takes Adderall, Dexedrine, and Desoxyn—all Schedule II drugs—to treat his ADHD. He considers his prescription records and information about his medical diagnosis and treatment to be private, and is distressed by the possibility that the DEA may access his prescription records contained in the UCSD without a warrant. Doe 1 Decl. ¶¶ 3–22.

- John Doe 2, an attorney, has taken clonazepam, a Schedule IV drug, to treat his depression and anxiety in the past. He has also taken Adderall to treat his ADHD, and hydrocodone, a schedule II drug, to treat pain after surgery. He considers information about his prescriptions and the information about his mental health that they reveal to be private, and is distressed by the prospect of the DEA gaining access to that information without a warrant. Doe 2 Decl. ¶¶ 3–30.

The DEA's practice of requesting prescription records from the UCSD without a warrant

violates Movants' and other Utahns' reasonable expectations of privacy. If the DEA is permitted

---

[4] Use of pseudonymous names or gender pronouns does not signify that Movants identify as male or female.

to obtain protected health information from the UCSD using an administrative subpoena in this action, it will expose Movants' records to warrantless search in the future. If this happens, Movants will have to seriously consider whether there are steps they can take to avoid the DEA's easily accessing their prescription records and will incur costs to protect their privacy. Doe 1 Decl. ¶ 22; Doe 2 Decl. ¶ 31. Furthermore, Movants may be chilled from obtaining necessary medical treatment. Robertson Decl. ¶ 22; Williams Decl. ¶ 11. Movants seek to intervene in this action to protect their constitutional rights to be free of unreasonable searches.

## ARGUMENT

### I.   Movants are entitled to intervene as of right.

Movants are entitled to intervene as of right because their motion is timely; their fundamental rights are at stake; disposition of this lawsuit without them may impair their ability to protect those rights; and the existing parties do not adequately represent their interests.

Rule 24(a) entitles anyone to intervene in a lawsuit upon a timely motion if that person "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In the Tenth Circuit, courts interpret the rule broadly in favor of intervention. *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005) ("The Tenth Circuit generally follows a liberal view in allowing intervention under Rule 24(a)."); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001). This liberal policy in favor of intervention is intended to give effect to the 1966 changes to Rule 24(a), which "refocus[ed] the rule on the practical effect of litigation on a prospective intervenor rather than legal

7

technicalities, and thereby expand[ed] the circumstances in which intervention as of right would be appropriate." *San Juan Cty. v. United States*, 503 F.3d 1163, 1188 (10th Cir. 2007) (en banc).

To effectuate its liberal intervention policy, the Tenth Circuit has adopted a four-part test:

> an applicant may intervene as of right if: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impair[ed] or impede[d]; and (4) the applicant's interest is [not] adequately represented by existing parties.

*Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (alterations in original) (quotation marks omitted). Movants satisfy each requirement.[5]

## A.    The motion to intervene is timely.

The Tenth Circuit primarily weighs three factors in determining timeliness: "[(1)] the length of time since the [movant] knew of [its] interests in the case; [(2)] prejudice to the existing parties; [and (3)] prejudice to the [movant]." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (alterations in original). The most important consideration among these is prejudice to the existing parties. *See Clinton*, 255 F.3d at 1250 ("The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention where no one would be hurt and greater justice could be attained." (quotation marks omitted)). In addition, the Tenth Circuit considers whether there are any unusual circumstances. *Id.*; *see Romero v. Bd. of Cty. Comm'rs for the Cty. of Curry*, 313 F.R.D. 133, 138 (D.N.M. 2016) ("'Unusual circumstances' refers to those circumstances that would

---

[5] In the Tenth Circuit, intervenors need not demonstrate standing so long as the original parties to the lawsuit satisfy Article III's standing requirements. *San Juan Cty.*, 503 F.3d at 1172. Because it is undisputed that a case or controversy creating standing exists between the DEA and Utah, Movants need only satisfy Rule 24's intervention criteria in order to join this case.

excuse the untimely filing of a motion to intervene."). Timeliness analysis is "contextual," and should be "assessed in light of all the circumstances." *Clinton*, 255 F.3d at 1250.

This motion is timely because the litigation is still in its infancy, no party will be prejudiced by intervention at this time, and Movants have deferred intervening only long enough to ascertain whether their intervention would be necessary to protect their rights and to prepare their filings. Movants file this motion to intervene eight days before Respondents' deadline to respond to the DEA's petition. Permitting Movants to intervene to protect their interests at this stage will, thus, not prejudice the State of Utah or the DEA. *See Clinton*, 255 F.3d at 1251 (finding intervention timely where "no scheduling order has been issued, no trial date set, and no cut-off date for motions set"); *Tudor Ins. Co. v. 1st Nat. Title Ins. Agency, LLC*, 281 F.R.D. 513, 515 (D. Utah 2012) (finding a motion to intervene timely because the case was "in the early stages of litigation"). Movants intend to file a proposed opposition the DEA's petition on the same schedule as Utah, so as to avoid delaying proceedings in this case. *See supra* note 2.

> **B.      Movants have Fourth Amendment interests in ensuring that their prescription records are not disclosed to law enforcement without a warrant based on probable cause.**

Movants have Fourth Amendment interests at stake in this action. The Tenth Circuit's interest test requires a "practical judgment" as to whether the would-be intervenor has "an interest that could be adversely affected by the litigation," weighing "the strength of the interest and the potential risk of injury to that interest." *San Juan Cty.*, 503 F.3d at 1199.[6] The test is

---

[6] The flexible interest test adopted by the en banc court in *San Juan County v. United States* displaces the more stringent test sometimes applied by courts in this circuit requiring the intervenor's interest to be "direct, substantial, and legally protectable." 503 F.3d at 1192–93 (describing that inquiry as "problematic," "malleable," and "miss[ing] the point"); *see Clinton*, 255 F.3d at 1251. Nonetheless, Movants' interests in this case would satisfy even that older test.

"'highly fact-specific'" and "'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Coal. of Ariz.*, 100 F.3d at 841. Thus, a potential intervenor's burden is minimal. *See San Juan Cty.*, 503 F.3d at 1195 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."); *Romero*, 313 F.R.D. at 138 (D.N.M. 2016) ("The threshold for finding the requisite legal protectable interest is not high."). Moreover, the Tenth Circuit maintains a "practice of considering the public interests at stake when weighing the equities" and "relaxe[s]" the requirements for intervention "in cases raising significant public interests." *San Juan Cty.*, 503 F.3d at 1201.

Movants satisfy this prong. The outcome of this action will affect the protections afforded to the prescription records of Movants and other patients and physicians in Utah. Movants have a Fourth Amendment right to prevent that information from being obtained by law enforcement without a probable cause warrant. Courts have recognized the privacy interest in medical records under the Constitution. *See, e.g.*, *Kerns v. Bader*, 663 F.3d 1173, 1184 (10th Cir. 2011) ("[A] patient has a privacy interest in medical records held by a third party medical services provider."); *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005) ("[W]e have no difficulty concluding that protection of a right to privacy in a person's prescription drug records, which contain intimate facts of a personal nature, is sufficiently similar to other areas already protected within the ambit of privacy."); *Herring v. Keenan*, 218 F.3d 1171, 1173 (10th Cir. 2000) ("[T]here is a constitutional right to privacy that protects an individual from the disclosure of information concerning a person's health."); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004) ("[A]ll provision of medical services in private physicians' offices carries with it

a high expectation of privacy for both physician and patient."); *State v. Skinner*, 10 So. 3d 1212, 1218 (La. 2009) ("[W]e find that the right to privacy in one's medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable. Therefore, . . . we hold a warrant is required to conduct an investigatory search of medical and/or prescription records."); 1 Wayne LaFave, *Search and Seizure* § 2.7(d) & n.147 (5th ed. 2015) (citing cases recognizing reasonable expectation of privacy in medical records); *cf. Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011) ("It may be assumed that, for many reasons, physicians have an interest in keeping their prescription decisions confidential."); *Whalen v. Roe*, 429 U.S. 589, 599 (1977) (discussing right to privacy in medical records under Fourteenth Amendment). In a case similar in most respects to this one, a court in the District of Oregon has held that "the DEA's use of administrative subpoenas to obtain prescription records from the [prescription drug monitoring program] violates the Fourth Amendment" because people have a reasonable expectation of privacy in those records. *Or. Prescription Drug Monitoring Program v. U.S. DEA*, 998 F. Supp. 2d 957, 966–67 (D. Or. 2014), *appeal pending*, No. 14-35402 (9th Cir.).

In addition, Utah law creates a legally protectable interest in the privacy of prescription records by providing persons with prescription records in the UCSD with a civil cause of action for disclosures in violation of the UCSD's access restrictions, including the requirement of a search warrant. Utah Code Ann. § 58-37f-601(1). Movants are direct beneficiaries of the privacy protections included in Utah Code Ann. § 58-37f-301, and their interests will be impaired if the warrant requirement imposed by that statute is declared preempted by federal law.

Movants' allegations illustrate why the Fourth Amendment protects the privacy of their prescription records. Movants' prescription records reveal sensitive information about the

medical conditions those prescriptions treat. *See* Williams Decl. ¶¶ 6–9; Doe 1 Decl. ¶¶ 4–21; Doe 2 Decl. ¶¶ 6–25. Movants, and the individuals they represent, take Schedule II–V medications to treat serious medical conditions including gender dysphoria, depression, anxiety, and ADHD. The UCSD contains records identifying the specific Schedule II–V medications that Movants take, the quantity dispensed, and the dates the prescriptions were filled. A transgender patient's testosterone prescription can reveal his transgender identity, along with the status and stage of his transition. Williams Decl. ¶¶ 9–10. A patient's clonazepam prescription may indicate that the person suffers or has suffered from a mental illness. Doe 2 Decl. ¶ 7. A patient's prescription for Adderall could undermine his professional and personal reputation. Doe 1 Decl. ¶¶ 20–21. These are deeply private and sensitive facts that can be embarrassing and stigmatizing if revealed to other people without consent. The Fourth Amendment's requirements of probable cause and individualized suspicion ensure that Movants do not needlessly suffer the costs and reputational harm that can result from unjustified searches. Robertson Decl. ¶¶ 9–18. Further, physicians have an interest in protecting the privacy of their prescription records in order to safeguard the doctor–patient relationship. *See Sorrell*, 564 U.S. at 575–76. Movants therefore have significant protectable rights at stake, and are entitled to intervene to defend those rights.

### C.   The disposition of this lawsuit may impair Movants' ability to protect their interests.

For related reasons, Movants would be adversely affected by the outcome of this lawsuit. To satisfy the third prong of this Circuit's test for intervention as of right—a "minimal" burden for Movants to meet, *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009)—Movants must show that "impairment of its substantial legal interest is possible if intervention is denied," or that they "would be substantially affected in a practical sense by the

determination made in an action." *Id.* That is the case here. If the Court rules that the DEA can obtain records from the UCSD merely by asserting in a subpoena that they are "relevant or material" to an ongoing investigation, *see* 21 U.S.C. § 876(a), Movants' personally identifiable medical records will be subject to disclosure. If the DEA serves a subpoena seeking Movants' protected health information from the UCSD, Movants would have no ability to challenge the subpoena, nor any assurance that a neutral magistrate would determine the constitutionality of the DEA's request. This is in part because the DEA's subpoenas direct Utah not to inform the subject of the investigation of the existence of the subpoena. *See, e.g.*, U.S. Dep't of Justice/Drug Enforcement Admin. Subpoena to Utah Controlled Substance Database (June 16, 2015), https://www.scribd.com/document/319355947/DEA-database-subpoena-letter. Indeed, unless the DEA issues a subpoena for Movants' records, indicts them, and seeks to introduce the UCSD records at trial, Movants will have no opportunity other than opposing the present petition to protect their constitutional rights. Furthermore, if Movants are not permitted to intervene, the *stare decisis* effect of the Court's judgment could impair their interests. *See Coal. of Ariz.*, 100 F.3d at 844. Because disclosure of their protected health information to law enforcement without a probable cause warrant is the very harm Movants seek to prevent, Movants should be permitted to intervene now before that issue is resolved and their constitutional rights are harmed.

**D.    The existing parties may not adequately represent Movants' interests in this litigation.**

Finally, Movants have unique interests that may not be adequately represented in this litigation unless they are permitted to intervene. Movants' burden in this regard is "minimal" and is satisfied by a showing that the representation of their interests by the existing parties "'may be' inadequate." *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984)

(quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *see also*

*Clinton*, 255 F.3d at 1254 ("The possibility that the interests of the applicant and the parties may

diverge need not be great in order to satisfy this minimal burden." (quotation marks omitted)). A

potential intervenor can demonstrate inadequate representation by "showing [(1)] collusion

between the representative and an opposing party, [(2)] that the representative has an interest

adverse to the applicant, or [(3)] that the representative failed in fulfilling his duty to represent

the applicant's interest." *Sanguine*, 736 F.2d at 1419. There are two principal reasons why

Movants' interests may be inadequately represented.

  First, Utah, as a sovereign state, necessarily serves multiple interests, and therefore may

not adequately represent Movants' particular interests. Although a presumption of adequacy

arises when the proposed intervenor shares the same ultimate objective in the case as a party, *see*

*San Juan Cty.*, 503 F.3d at 1204, this presumption is "rebutted by the fact that the public interest

the government is obligated to represent may differ from the would-be intervenor's particular

interest." *Clinton*, 255 F.3d at 1255. A showing of inadequate representation is "easily made

when the party upon which the intervenor must rely is the government, whose obligation is to

represent not only the interest of the intervenor but the public interest generally, and who may

not view that interest as coextensive with the intervenor's particular interest." *WildEarth*

*Guardians*, 573 F.3d at 996 (quoting *Clinton*, 255 F.3d. at 1254); *see also Utahns for Better*

*Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("[T]he government's

prospective task of protecting not only the interest of the public but also the private interest of

the petitioners in intervention is on its face impossible and creates the kind of conflict that

satisfies the minimal burden of showing inadequacy of representation." (quotation marks

omitted)); *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977); *cf. Trbovich*, 404 U.S. at 538–39 (where the existing party has a "duty to serve two distinct interests, which are related, but not identical," a party may intervene to ensure the vigorous representation of one of those interests). Movants are motivated solely by their interests in ensuring that their protected health information is not disclosed to law enforcement without the government making a showing of probable cause to a neutral magistrate. Movants also seek to enforce their Fourth Amendment right to notice of a search of their records, an issue Utah is not in a position to advance. Though Utah opposes the DEA's use of administrative subpoenas to request UCSD records, Utah is also concerned with defending its ability to enforce its own laws and with clarifying its legal obligations in the face of the federal government's preemption claim. Though Utah and Movants both want to protect prescription records in the UCSD from unlawful disclosure, they are driven by different, potentially conflicting interests and may press the Fourth Amendment questions with different focus and force. Movants seek only to ensure that the DEA obtains prescription records in a manner that does not violate the Fourth Amendment, and do not share Utah's interest in clarifying the application of preemption doctrine in this area.

Second, Movants are uniquely positioned to articulate the necessity that law enforcement obtain a warrant before accessing their UCSD data. Only Movants can personally provide the evidence and explain why they have a reasonable expectation of privacy in their prescription records and why they would be harmed by unconstitutional infringement on their privacy interests. *See* Robertson Decl. ¶¶ 5–22; Williams Decl. ¶¶ 9–11; Doe 1 Decl. ¶¶ 19–22; Doe 2 Decl. ¶¶ 27–30. Movants' participation, and the unique perspectives Movants would provide, are

critical to establishing why the DEA should not be able to obtain their constitutionally protected health information without a warrant, and would otherwise be absent from this action.

Because there is "sufficient doubt about the adequacy of representation," intervention is warranted. *Trbovich*, 404 U.S. at 538; *see also Or. Prescription Drug Monitoring Program v. U.S. DEA*, No. 3:12-cv-02023, slip op. at 6 (D. Or. Mar. 31, 2013), ECF No. 17 (order).

## II.    Movants are entitled to permissive intervention.

Even if Movants were not entitled to intervene as a matter of right, the Court should nonetheless allow them to intervene permissively pursuant to Rule 24(b). That rule provides:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Movants satisfy the four conditions for permissive intervention. *See Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 232 F.R.D. 392, 398 (D. Utah 2005). First, for the reasons set out above, *see supra* Part I.A, the motion is timely. Second, Movants have a presented a defense that shares with the main action a common question of law—whether the Fourth Amendment requires law enforcement to obtain a valid warrant before accessing protected health records in the UCSD. Third, as described above, *see supra* Part I.A, Movants' intervention would not unduly delay or prejudice the existing parties. And Fourth, Movants present a unique perspective because their private information and constitutional rights are directly affected by this action, *see supra* Part I.D; therefore, Movants' intervention would significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

16

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant their motion for intervention as of right pursuant to Federal Rule of Civil Procedure 24(a), or, in the alternative, their motion for permissive intervention pursuant to Rule 24(b).

July 28, 2016                                    Respectfully submitted,

                                                 /s/ John Mejia
                                                 John Mejia, USB No. 13965
                                                 Leah Farrell, USB No. 13696
                                                 ACLU of Utah Foundation
                                                 355 North 300 West
                                                 Salt Lake City, UT 84103
                                                 (801) 521-9862
                                                 jmejia@acluutah.org

                                                 /s/ Nathan Freed Wessler
                                                 Nathan Freed Wessler*
                                                 Brett Max Kaufman*
                                                 American Civil Liberties Union Foundation
                                                 125 Broad Street, 18th Floor
                                                 New York, NY 10004
                                                 (212) 549-2500
                                                 nwessler@aclu.org
                                                 *pro hac vice application pending

                                                 Counsel for Respondents–Intervenors[7]

---

[7] ACLU legal fellow Eliza Sweren-Becker, who is admitted to practice in New York State, contributed to the drafting of this brief.

17