DAVID N. WOLF (6688)
Assistant Utah Attorney General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@utah.gov

*Counsel for Respondents*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>                   Petitioner,<br><br>v.<br><br>UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING,<br><br>                   Respondents. | **RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS ISSUED BY THE DRUG ENFORCEMENT ADMINISTRATION**<br><br><br>Case No. 2:16-cv-611-DN<br><br>Judge David Nuffer |

The Utah Department of Commerce and the Utah Division of Occupational & Professional Licensing ("Respondents") submit their Opposition to Petitioner's Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration.

## I.    INTRODUCTION

The Utah Division of Occupational & Professional Licensing ("DOPL") maintains an electronic database that contains information about prescriptions for controlled substances

dispensed to individuals in the State of Utah.  As part of an ongoing criminal investigation, the

Drug Enforcement Administration ("DEA") seeks access to Utah's controlled substance database

(the "Database") through its administrative subpoena power.  Utah law allows the DEA to access

the Database provided it has obtained a valid warrant regarding an individual suspected of an

offense related to a controlled substance.  Demonstrating probable cause to obtain a warrant is

not burdensome.  Nevertheless, the DEA has chosen not to obtain a warrant in this case.

DOPL acknowledges that the Database may contain information that may be relevant to

the DEA's investigation.  However, DOPL cannot comply with the administrative subpoenas

unless the DEA obtains a warrant or equivalent court order.  Any person who improperly

accesses or knowingly or intentionally releases Database information in violation of the Utah

Controlled Substance Database Act is guilty of a 3rd degree felony.[1] Therefore, if DOPL's

employees complied with the DEA's subpoenas seeking access to information on the Database,

in the absence of a search warrant, they would be guilty of violating Utah law. Arguably,

because of Utah's Controlled Substance Act, forcing release of the information without first

obtaining a warrant would also subject DEA investigators to criminal liability. Respondents will,

of course, comply with a valid order from this Court requiring it to comply with the subpoenas.

But if the Court determines that Respondents are required to comply with the DEA's

administrative subpoenas, the Court's order must clearly and fully immunize the State, its

agencies, officials, officers, directors, employees and agents from any and all liability for

providing information that is protected from disclosure under a state statute.

---

[1] *See* Utah Code § 58-37f-601.

The DEA contends that a warrant is not necessary to access the Database because 21 U.S.C. § 876 preempts Utah's warrant requirement.  Accordingly, the DEA seeks an order from the Court requiring DOPL to comply with the DEA's administrative subpoenas.  However, a subpoena that violates the Fourth Amendment cannot serve as the basis to preempt a state law.

## II.   FACTS

1.   The Database is maintained by DOPL and contains information about "every prescription for a controlled substance dispensed in the state to any individual other than an inpatient in a licensed health care facility."[2]

2.   The Database was established by the Utah State Legislature in 1995.[3]  Utah was one of the first states to establish a prescription data monitoring program or "PDMP" as they are generically referred to around the country.[4]  Forty-nine states either currently have a PDMP or are in the process of establishing one.[5]

3.   Of the states that currently have a PDMP, at least eleven states have enacted legislation prohibiting law enforcement from accessing records in those states' prescription monitoring programs unless the government gets a warrant or otherwise demonstrates probable cause.[6]

---

[2] Utah Code § 58-37f-201(5).

[3] Sims Decl. ¶ 5, attached as Ex. A; The Database is governed by the Utah Controlled Substance Database Act, *see* Utah Code § 58-37f-101 through 801, and the associated administrative rules. *See* Utah Admin. Code r.156-37-101 through 801.

[4] Sims Decl. ¶ 5.

[5] *Id.*

[6] Ala. Code § 20-2-214(7); Alaska Stat. § 17.30.200(d)(5); Ark. Code Ann. §20-7-606(b)(2)(A);  Ga. Code Ann.  §  16-13-60(c)(3);  Minn. Stat. § 152.126(6)(b)(7); Mont. Code Ann. §§ 37-7-1506(1)(e), 46-4-301(3); N.H. Rev. Stat. Ann. § 318-B:35(I)(b)(3); Or. Rev. Stat. § 431.966(2)(a)(C); R.I. Gen. Laws § 21-28-3.32(a)(3); Utah Code § 58-37f-301(2)(k).

4.   In addition, Vermont bars access to prescription records in its prescription monitoring program by law enforcement directly or on request.[7] And Maine and Nebraska's prescription drug monitoring program statutes make no provision for law enforcement access.[8]

5.   The Database contains: data of every prescription for a controlled substance dispensed in Utah to any individual, other than an inpatient in a licensed health care facility; data reported to DOPL regarding poison or overdose; data reported to DOPL regarding convictions for driving under the influence of a controlled substance or impaired driving; and data reported to DOPL regarding certain violations of the Utah Controlled Substances Act.[9]

6.   The Database assists prescribing practitioners and pharmacists in identifying individuals who seek controlled substances from more than one source.[10] The Database also serves as a tool for law enforcement authorities in investigating and prosecuting drug-related offenses.[11]

7.   Pharmacies and dispensing medical practitioners are required to report the following information to the Database regarding all controlled substances, Schedules II through V:[12] name of prescribing practitioner; date prescription issued by prescribing practitioner; name of patient; identification of patient (usually driver license number); date prescription dispensed by pharmacy; name of controlled substance; quantity prescribed; quantity dispensed; strength of

---

[7] Vt. Stat. Ann. tit. 18, § 4284.
[8] Me. Rev. Stat. tit. 22, § 7250(4); Neb. Rev. Stat. § 71-2455.
[9] Utah Code § 58-37f-201(5).
[10] Sims Decl. ¶ 6.
[11] *Id.*; *see* Utah Code § 58-37f-201(6).
[12] 21 U.S.C. § 801 *et seq.,* classifies drugs into five schedules. Schedule I consists of substances for which, there is a high potential for abuse and no currently accepted medical use. Schedules II–V include drugs with an accepted medical use and with progressively lower potentials for abuse.

controlled substance; dosage quantity and frequency as prescribed; name of pharmacy; name of pharmacist dispensing; NDC identifying number of controlled substance.[13]

8.  Drugs listed as controlled substances and tracked by the Database include a number of frequently prescribed medications used to treat a wide range of serious medical conditions, including anxiety disorders, panic disorders, post-traumatic stress disorder, weight loss associated with AIDS, nausea and weight loss in cancer patients undergoing chemotherapy, alcohol addiction withdrawal symptoms, opiate addiction, testosterone deficiency, gender identity disorder/gender dysphoria, chronic and acute pain, seizure disorders, narcolepsy, insomnia, and attention deficit hyperactivity disorder.[14]

9.  Out-of-state pharmacies that possess a Utah controlled substance license and dispense a controlled substance to Utah residents must also report to the Database.[15]

10. There are more than 70 million prescription records in the Database, with approximately 5.2 million prescription records uploaded to the system annually.[16]

11. Prescribing practitioners are not required to report any information to the Database, unless they seek to dispense controlled substances from their office.[17] However, they are required to be registered to use the Database.[18]

---

[13] *See* Utah Code § 58-37f-203.
[14] Sims Decl. ¶ 7.
[15] *Id.* ¶ 15.
[16] *Id.* ¶ 8.
[17] *Id.* ¶ 9; a list of drugs categorized as controlled substances under the federal Controlled Substances Act is available on the Drug Enforcement Administration website. Office of Diversion Control, Drug Enforcement Administration, Controlled Substances by CSA Schedule (Feb. 8, 2016), http://www.deadiversion.usdoj.gov/schedules/orangebook/e_cs_sched.pdf.
[18] Sims Decl. ¶ 9.

12. Prescribing practitioners and pharmacists are not required to access the Database before prescribing or dispensing a controlled substance, but they are encouraged by the Division to do so in educational training sessions.[19]

13. Prescription monitoring information uploaded to the Database constitutes "protected health information" and is not subject to disclosure except in limited circumstances.[20]

14. With limited exceptions, the information on the Database "is not subject to discovery, subpoena, or similar compulsory process in any civil, judicial, administrative, or legislative proceeding, nor shall any individual or organization with lawful access to the data be compelled to testify with regard to the data."[21]

15. In addition to prescribing practitioners and pharmacists, the following categories of individuals are authorized access to Database information:

- DOPL personnel conducting investigations of violations of controlled substance laws;

- DOPL personnel analyzing controlled substance information as part of their duties;

- Utah Department of Health employees assigned to conduct scientific studies regarding use or abuse of controlled substances;

- Persons conducting scientific studies of use or abuse of controlled substances in collaboration with the Utah Department of Health;

- Certain managed care organization employees investigating persons improperly obtaining controlled substances;

---

[19] *Id.* ¶ 10.
[20] 45 C.F.R. 160.103 (definition of "protected health information"); 45 C.F.R. 164.502(a) (rules for uses and disclosures of protected health information); *see also* Utah Code § 63G-2-302(1)(b) (stating that records containing information on individuals' medical history, diagnosis, or treatment are "private" under GRAMA).
[21] Utah Code § 58-37f-302.

- Certain employees of prescribing practitioners or entities that employ prescribing practitioners;

- Certain pharmacy employees;

- Federal, state, and local law enforcement authorities, including state and local prosecutors, **who have obtained a valid warrant** regarding an individual suspected of an offense related to controlled substances;

- Department of Health Office of Internal Audit and Program Integrity Medicaid fraud investigators;

- The subject of the Database information;

- The Inspector General or designee of the Utah Office of Inspector General of Medicaid Services;

- Certain physicians on Worker's Compensation panels or offering second opinions on treatment regarding worker's compensation claims.[22]

16. Most prescribing practitioners and pharmacists access the Database either through an online account they establish with the Database, or through a direct request (fax, mail, email, telephone) to Database personnel.[23]

17. Any person with an online account must agree to limit their search of Database information to those purposes set forth in statute.[24]

18. Online access to the Database can only search information within the past year. Older Database information is obtainable through a request to Database personnel.[25]

19. Out-of-state prescribing practitioners and pharmacists may also obtain information from the Database.[26]

---

[22] *See* Utah Code § 58-37f-301.
[23] Sims Decl. ¶ 11.
[24] *Id.* ¶ 12.
[25] *Id.* ¶ 13.

20. Failure of a reporting entity to timely report controlled substance information to the Database can result in civil liability of up to $1,000 per prescription not reported, and is grounds to revoke, suspend, or restrict the license of the pharmacy and pharmacist who failed to report the information.[27]

21. Any person who improperly accesses or knowingly or intentionally releases Database information in violation of the Utah Controlled Substance Database Act is guilty of a 3rd degree felony.[28]

22. Therefore, if Database personnel complied with a federal administrative subpoena seeking access to information on the Database, in the absence of a search warrant, they would be guilty of violating Utah law.[29]

23. Marvin H. Sims ("Sims") is a DOPL employee and the Database manager.[30]

24. On June 17, 2015, the Drug Enforcement Administration, United States Department of Justice ("DEA") emailed to Sims the subpoena attached as Exhibit B.[31]

25. In response, Mr. Sims explained that, pursuant to Utah law, he could not provide the DEA with the information it sought unless the DEA obtained a warrant.[32]

26. On October 30, 2015 the DEA served an identical subpoena on Mr. Sims.[33]

---

[26] *Id.* ¶ 14.
[27] *See* Utah Code § 58-37f-602.
[28] *See id.* § 58-37f-601.
[29] *See id.*
[30] Sims Decl. ¶ 2.
[31] *Id.* ¶ 3 (Respondents have redacted the identifying information contained in the subpoena to avoid compromising, impeding, or otherwise interfering with any federal law enforcement investigation which may be ongoing.).
[32] Letter from counsel, Ex. A-1.
[33] *Id.* ¶ 4.

27. On November 12, 2015, the DEA served an identical subpoena on Utah Department of Commerce Executive Director, Francine A. Giani and Mark Steinagel, DOPL Director.[34]

28. Respondents renewed their explanation as to why Respondents could not comply with the subpoenas.

29. All four of the subpoenas issued by the DEA seek identical information contained on the Database about the subject of an ongoing criminal investigation.

30. The subpoenas command Mr. Sims, Ms. Giani, and Mr. Steinagel to appear before a DEA officer to give testimony and to produce a full controlled substance report relating to an individual, including: the first and last name; date of birth; address; prescription number; the name of the controlled substance to include strength and dosage form; quantity dispensed; date filled; number of days for which the prescription is written for; dispensing pharmacy; and pharmacy phone number.[35]

31. During the 2015 General Session, the Utah Legislature passed Senate Bill 119 ("S.B. 119").[36]

32. S.B. 119 became effective on May 12, 2015.  S.B. 119 modified the Controlled Substance Database Act regarding use of the information in the Database.[37]

33. The Utah Legislature amended the Controlled Substance Database Act to more strictly limit access to the Database in recognition of Utah residents' privacy interests in their

---

[34] Doc. 7, p. 3.
[35] Subpoena, Ex. B.
[36] Prescription Database Revisions, 2015 General Session (August 1, 2016, 5:49 p.m.) http://le.utah.gov/~2015/bills/static/SB0119.html
[37] *Id.*

prescription records and in response to incidents of law enforcement accessing records on the Database without judicial oversight.[38]

34. Law enforcement's Database access is now limited such that a warrant is required for federal, state, and local law enforcement agencies, and state and local prosecutors, who are engaged in an investigation related to a specific person and one or more controlled substances.[39]

35. In this case, federal investigators with the DEA have issued subpoenas seeking information from the Database related to one or more controlled substances and have identified the specific person under investigation.[40]

36. However, the DEA has not provided a valid search warrant accompanying its subpoenas. Therefore, the subpoenas do not comply with Utah law.[41]

37. Moreover, any person who knowingly releases Database information other than as prescribed by law is guilty of a third degree felony.[42]

38. Accordingly, Respondents were and remain unable to comply with the DEA's subpoenas without violating Utah law and subjecting themselves to potential criminal penalties.

## III.    LEGAL STANDARD

An administrative subpoena is not self-executing and is therefore technically not a "search."[43] It is at most a constructive search, amounting to no more than a simple direction to

---

[38] *See* Office of the Utah Legislative Auditor General, *A Review of the Use of the Controlled Substance Database by Law Enforcement*, 2 (Dec. 15, 2015), https://le.utah.gov/audit/15_eilr.pdf; Dennis Romboy, *Unwarranted Drug Database Search Prompts New Utah Law*, *Lawsuits*, Deseret News (Apr. 23, 2015), http://www.deseretnews.com/article/865627152/Unwarranted-drug-database-search-promptsnew-Utah-law-lawsuits.html?pg=all.
[39] Utah Code § 58-37f-301(2)(m).
[40] Subpoena, Ex. B (name redacted).
[41] Utah Code § 58-37f-301(2)(m).
[42] *Id.* § 58-37f-601(1)(a)(i)

produce documents, subject to judicial review and enforcement. Thus, unlike the subject of an

actual search, the subject of an administrative subpoena has an opportunity to challenge the

subpoena before yielding the information. In the course of that resistance, the Fourth

Amendment is available to the challenger as a defense against enforcement of the subpoena.[44] An

administrative subpoena issued under § 876 can be challenged on Fourth Amendment grounds, if

it can be demonstrated that a legitimate expectation of privacy attaches to the records sought by

the subpoena.[45]

Several courts, including the Tenth Circuit, have concluded that "[u]nder Fourth

Amendment law, an investigatory or administrative subpoena is not subject to the same probable

cause requirements as a search warrant."[46]  "The Fourth Amendment requires only that a

subpoena be 'sufficiently limited in scope, relevant in purpose, and specific in directive so that

compliance will not be unreasonably burdensome.'"[47]  However, none of these cases involved

---

[43] *See Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d 1192, 1200 (10th Cir. 1999) (administrative subpoena issued by the Mineral Management Service is not self-executing); *United States v. Michigan Dep't of Cmty. Health*, No. 1:10-MC-109, 2011 WL 2412602, at *6 (W.D. Mich. June 9, 2011) (DEA administrative subpoena not self-executing).

[44] *United States v. Sturm, Ruger & Company, Inc.,* 84 F.3d 1, 3–4 (1st Cir.1996) (addressing enforcement of an administrative subpoena issued by the Occupational Safety and Health Administration) (internal citations omitted).

[45] *Id. See also United States v. Plunk*, 153 F.3d 1011, 1020, *amended by* 161 F.3d 1195 (9th Cir.1998), *abrogated on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n. 7 (9th Cir. 2000).

[46] *Becker v. Kroll*, 494 F.3d 904, 916 (10th Cir. 2007) (citing *See v. City of Seattle*, 387 U.S. 541, 544 (1967); *United States v. Reno*, 522 F.2d 572, 575 (10th Cir. 1975).

[47] *Becker* 494 F.3d at 916 (quoting *City of Seattle* 387 U.S. at 544); *see also Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to "Custodian of Records,"* 697 F.2d 277, 281 (10th Cir. 1983) (holding a subpoena in a criminal investigation "is not unreasonable under the Fourth Amendment if it: (1) commands the production only of things relevant to the investigation; (2) specifies the items with reasonable particularity; and (3) covers only a reasonable period of time"); *Doe v. United States (In re Admin. Subpoena),*253 F.3d 256, 263–65 (6th Cir. 2001) (holding that an administrative subpoena in a health care fraud investigation by

access to the sensitive and protected information contained in the Database.  The gist of the

Fourth Amendment's protections as applied to administrative subpoenas is "that the disclosure

sought shall not be unreasonable."[48]

In a very similar case involving the federal government's use of a subpoena to access

records in a PDMP, an Oregon federal district court held that the "expectation of privacy in . . .

prescription information is objectively reasonable" and that law enforcement's "use of

administrative subpoenas [instead of warrants] to obtain prescription records from [a state

PDMP] violates the Fourth Amendment."[49] This Court should likewise evaluate Utah's law

requiring a warrant for law enforcement to access sensitive and private medical records under a

traditional Fourth Amendment analysis.  If the Court determines that the Fourth Amendment

requires the DEA to obtain a warrant prior to accessing the Database, the Court need not reach

the preemption issue.

---

the U.S. Attorney General need not be supported by probable cause--applying "reasonable
relevance" test); *United States v. Smith,* 484 F.2d 8, 11 (10th Cir.1973), (holding that an
administrative summons issued by the IRS in the initial stages of a tax fraud investigation did not
violate the Fourth Amendment); *United States v. Bailey (In re Subpoena Duces Tecum),* 228 F.3d
341, 347–49 (4th Cir. 2000) (holding probable cause required for warrants but not subpoenas
because warrants are "immedia[te] and intrusive[ ]" whereas the subpoenaed party has an
opportunity to challenge a subpoena before complying with it).
[48] *Reich v. Montana Sulphur & Chemical Co.*, 32 F.3d 440, 448 (9th Cir. 1994).
[49] *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 998 F. Supp. 2d
957, 966-67 (D. Or. 2014).

## IV.    ARGUMENT

Federal acts that do not accord with the constitutional design are not enshrined as the supreme Law of the Land.[50] Here, the DEA's administrative subpoenas violate the Fourth Amendment as applied to the Database because of the private nature of the records contained in the Database. Accordingly, the DEA's federal subpoena power does not trump Utah's warrant requirement, and this Court should decline to enforce the DEA's administrative subpoenas seeking information from the Database.

### A.    THE FOURTH AMENDMENT REQUIRES THE DEA TO OBTAIN A WARRANT TO SEARCH PRIVATE MEDICAL RECORDS.

The Fourth Amendment guards against searches and seizures of items or places in which a person has a reasonable expectation of privacy.[51] The Fourth Amendment protects people, not places, and to invoke the protections of the Fourth Amendment, a person must first show that they have "an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"[52]

In this case, the citizens of Utah have a reasonable expectation of privacy in the information contained on the Database. The Database identifies medical conditions treated by Schedule II–IV drugs. Patients, doctors, and the State of Utah consider that information to be

---

[50] *Alden v. Maine*, 527 U.S. 706, 731 (1999) ("Appeal to the Supremacy Clause alone merely raises the question whether a law is a valid exercise of the national power."); *see also Marbury v. Madison*, 5 U.S. 137, 180 (1803) ("in declaring what shall be the supreme law of the land, the Constitution itself is first mentioned . . . .").

[51] *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007); *In re Gimbel*, 77 F.3d 593, 599 (2d Cir. 1996) (holding that the Fourth Amendment does not allow the use of an administrative subpoena where "a subpoena respondent maintains a reasonable expectation of privacy in the materials sought by the subpoena").

[52] *Katz*, 389 U.S. at 361 (Harlan, J., concurring).

private. That expectation of privacy has been accepted as reasonable. Privacy protections for medical records exist in both Utah and federal law.[53] And the Tenth Circuit has recognized privacy rights related to prescription drug records and health records.[54]

The majority of states protect medical information confidentiality, and many states specifically require a warrant or probable cause to access records in a state prescription drug monitoring program. Including Utah, at least eleven states have enacted legislation prohibiting law enforcement from accessing records in those states' PDMPs unless the government gets a warrant or otherwise demonstrates probable cause.[55] Vermont bars access to prescription records in its PDMP by law enforcement directly or on request.[56] Maine and Nebraska's PDMP statutes make no provision for law enforcement access.[57]

In a case similar to this one, a federal court in the District of Oregon held that "the DEA's use of administrative subpoenas to obtain prescription records from the [prescription drug

---

[53] *See, e.g.*, Health Insurance Portability and Accountability Act, Privacy Rule, 45 C.F.R. § 164.512 (providing protections for "protected health information"); Utah Code § 63G-2-302(1)(b) (stating that records containing information on individuals' medical history, diagnosis, or treatment are "private" under GRAMA).

[54] *See, e.g.*, *Kerns v. Bader*, 663 F.3d 1173, 1184 (10th Cir. 2011) (privacy interest in medical records held by a third party medical services provider); *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005) (right to privacy in a person's prescription drug records); *Herring v. Keenan*, 218 F.3d 1171, 1173 (10th Cir. 2000) (privacy right for a person's health information).

[55] Ala. Code § 20-2-214(7); Alaska Stat. §17.30.200(d)(5); Ga. Code Ann. § 16-13-60(c)(3); Iowa Code § 124.553(1)(c); Kan. Stat. Ann. § 65-1685 (c)(4); Minn. Stat. § 152.126(b)(8); Mont. Code Ann. §§ 37-7-1506(1)(e), 46-4-301(3); N.H. Rev. Stat. Ann. § 318-B:35(I)(b)(3); Or. Rev. Stat. § 431A.865 (2)(a)(D); R.I. Gen. Laws § 21-28-3.32(a)(4); Utah Code Ann. § 58-37f-301(2)(k).

[56] Vt. Stat. Ann. tit. 18, § 4284.

[57] Me. Rev. Stat. Ann. tit. 22, § 7250(4); Neb. Rev. Stat. § 71-2455.

monitoring program] violates the Fourth Amendment" because people have a reasonable expectation of privacy in those records."[58]

In *Ferguson v. City of Charleston*, the Supreme Court analyzed medical records under the Fourth Amendment.[59]  In that case, a state hospital was conducting drug tests of pregnant women and then providing the results of those tests to law enforcement.[60] The Supreme Court noted that the "reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent."[61] The Court found that "an intrusion on that expectation of privacy may have adverse consequences because it may deter patients from receiving needed medical care."[62] The Court concluded that the "special need" exception to the warrant requirement was inapplicable to the search because the "central and indispensable feature of the policy from its inception was the use of law enforcement to coerce patients into substance abuse treatment."[63]

In this matter, the subjective expectation of privacy in the information contained on the Database is objectively reasonable. It is more than reasonable for patients to believe that law enforcement agencies will not have access to their records without a warrant and the Utah legislature's decision to require a warrant to access the Database further legitimizes the reasonableness of this expectation of privacy. It is also troubling that the targets of the DEA's investigation receive no notice that their records have been disclosed. Without notice, these

---

[58] *Or. Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 966–67.
[59] 532 U.S. 67 (2001).
[60] *Id.* at 72-75.
[61] *Id.* at 78.
[62] *Id.* at 78 n. 14 (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)).
[63] *Id.* at 80.

individuals have no ability to offer objections and it is left to the State to assert their right to due process and to be free from unreasonable search.

The DEA argues the Fourth Amendment's strictures are relaxed in the context of administrative subpoenas, and relies on *United States v. Michigan Department of Community Health* to support its position.[64] The DEA's reliance on *Michigan Department of Community Health* is misplaced.  In *Michigan Department of Community Health*, the federal government sought access to a registry maintained by the State of Michigan that contained identifying information of individuals who had obtained a medical marijuana card.[65]  The court expressly recognized that "[t]he Fourth Amendment is available to the challenger as a defense against enforcement of the subpoena."[66] The court concluded, however, that there was no historical basis to conclude that individuals had a reasonable expectation of privacy in the use or distribution of marijuana because medical marijuana was previously illegal under Michigan law and remained illegal under federal law, and the medical marijuana cards at issue had no medical history or treatment information on them.[67]

In contrast, there is a reasonable expectation of privacy in the information the DEA seeks in this case.  Unlike marijuana use, the information on the Database is not necessarily related to illegal activities. The vast majority of the information on the Database identifies lawful conduct: pharmacists properly filling prescriptions for controlled substances. Moreover, unlike medical

---

[64] No. 1:10-MC-109, 2011 WL 2412602, at *6 (W.D. Mich. June 9, 2011).

[65] *Id.* at *3.

[66] *Id.* at *6 (citing *United States v. Sturm, Ruger & Company, Inc.,* 84 F.3d 1, 3–4 (1st Cir. 1996)).

[67] *Id.* at *7–8.

marijuana cards, patients who are prescribed controlled substances have a valid privacy expectation.

The DEA also cites *U.S. Department of Justice v. Colorado Board of Pharmacy*[68] in support of its positon that "21 U.S.C. 876 preempts conflicting state law provisions . . . ."[69] *Colorado Board of Pharmacy* is also distinguishable from the instant case.  In *Colorado Board of Pharmacy*, the Board contended that Colorado law prohibited it from "releas[ing] information from the PDMP to law enforcement officials unless the information requested is specific to an *individual* (interpreted as, "patient"), rather than to a prescriber. The Board assert[ed] that it may not respond to the subject subpoenas because they request information specific to prescribers, rather than to patients."[70] The Board did not bring a Fourth Amendment challenge.[71]  Although the Court determined, *sua sponte,* that the administrative subpoenas "meet Fourth Amendment requirements,"[72]  the warrant requirement contained in Utah law raises Fourth Amendment issues that were not present in *Colorado Board of Pharmacy.* The Utah legislature amended Utah's law with the express purpose of protecting Utah residents' privacy interests in their prescription records and in response to incidents of law enforcement accessing records on the Database without judicial oversight.[73] Accordingly, the court's conclusion that U.S.C. § 876 preempted

---

[68] 2010 WL 3547898 (D. Colo. Aug. 13, 2010).
[69] Doc. 7, p. 14.
[70] *Id.* at 2.
[71] *Id.* at 3 ("In fact, the Board does not raise privacy concerns either for itself or for the prescribers listed in the subpoenas.").
[72] *Id.*
[73] *See* Office of the Utah Legislative Auditor General, A Review of the Use of the Controlled Substance Database by Law Enforcement,  2 (Dec. 15, 2015), https://le.utah.gov/audit/15_eilr.pdf; Dennis Romboy, Unwarranted Drug Database Search Prompts New Utah Law, Lawsuits, Deseret News (Apr. 23, 2015),

Colorado's law is not applicable to the instant case.  Here, whether the DEA may access the Database without a warrant raises Fourth Amendment concerns that are separate and apart from the doctrine of preemption.

The Ninth Circuit has also evaluated whether patients and health care providers have a reasonable expectation of privacy in medical records protected by the Fourth Amendment.  In *Tucson Women's Clinic v. Eden*, the court evaluated an Arizona regulation that required abortion clinics to submit to warrantless inspections by the Arizona Department of Human Services.[74]  The court determined that the administrative search exception to the Fourth Amendment which, in some circumstances, allows warrantless searches of closely regulated businesses, was inapplicable to the searches authorized by the Arizona regulations.[75]  The court concluded that abortion services were not sufficiently regulated to fall within the exception.  *Id.*  More importantly, the court noted that "the theory behind the closely regulated industry exception is that persons engaging in such industries, and persons present in those workplaces, have a diminished expectation of privacy."  *Id.* That theory was inapplicable to abortion clinics, "where the expectation of privacy is heightened, given the fact that the clinic provides a service grounded in a fundamental constitutional liberty, and that all provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient."  *Id*. Accordingly, the court held that the statute and regulations violated the Fourth Amendment.[76]

---

http://www.deseretnews.com/article/865627152/Unwarranted-drug-database-search-promptsnew-Utah-law-lawsuits.html?pg=all. 21.

[74] 379 F.3d 531, 537 (9th Cir. 2004).

[75] *Id.* at 550.

[76] Citing *Whalen,* the Ninth Circuit balanced five factors in weighing the governmental interest in obtaining information against the individual's privacy interest and found that the searches also

Much like the information safeguarded in *Tucson Women's Clinic*, the prescription records contained in the Database are protected by a heightened privacy interest, rendering the use of administrative subpoenas unreasonable.

The DEA asserts that "[a]ll DEA personnel possess security clearances and are trained on the proper handling of sensitive information . . . . "[77] Accordingly, the DEA suggests that because the risk of public disclosure of prescription information is low, there is no violation of patients' privacy interests. DOPL does not contest the DEA's assertion that DEA personnel are properly trained to safeguard sensitive materials. However, the purpose of the Fourth Amendment is not to protect public disclosure of individuals' private information, but to protect people from government intrusion.

### B.    PUBLIC POLICY SUPPORTS THE WARRANT REQUIREMENT.

Information in the Database can reveal a great deal of private medical information beyond just the medication prescribed. Because many of these drugs are approved only for treatment of specific diseases or disorders, "[i]nformation contained in prescription records . . . may reveal other facts about what illnesses a person has."[78] A patient's prescription history can reveal her physician's confidential medical advice, her chosen course of treatment, her diagnosis, and even the stage or severity of her disorder or disease.

Thus, ensuring the confidentiality of patients' medical information is "essential to the

---

violated plaintiffs' informational privacy rights under the Fourteenth Amendment. 379 F.3d at 551-53. That balancing test is inapplicable in the context of the Fourth Amendment.

[77] Doc. 8. ¶ 14.

[78] *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005); *accord Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995) ("It is now possible from looking at an individual's prescription records to determine that person's illnesses, or even to ascertain such private facts as whether a woman is attempting to conceive a child through the use of fertility drugs.").

effective functioning of the health and public health systems. Patients are less likely to divulge sensitive information to health professionals if they are not assured that their confidences will be respected. The consequence of incomplete information is that patients may not receive adequate diagnosis and treatment of important health conditions."[79]

State courts have also recognized the adverse consequences of law enforcement gaining unlimited access to medical records: "Permitting the State unlimited access to medical records for the purposes of prosecuting the patient would have the highly oppressive effect of chilling the decision of any and all [persons] to seek medical treatment."[80] Evaluating the state's use of an administrative subpoena to obtain medical records, the court explained:

> Unlike the Fourth Amendment which requires that the State have probable cause prior to the seizure of an accused or his property, OCGA § 24–9–40(a) does not contain any express limits on the use of a subpoena to obtain a defendant's medical records for possible introduction as evidence in a criminal proceeding. Thus, the State's interpretation of this statute would authorize the disclosure of confidential information by means of a subpoena issued upon the mere filing of an indictment or accusation, if not before. In this particular case, it also would permit the prosecution to circumvent the procedural safeguards of the implied consent statute and to obtain indirectly what it did not properly obtain directly. Although such unlimited use of the subpoena power in a criminal case might well serve the State interest of law enforcement, it cannot be said to do so in a "reasonable" manner if it violates the accused's constitutional right of privacy. Not only must the State's interference with that right be reasonably necessary for law enforcement purposes, such an interference must also avoid subjecting Georgia citizens to undue oppressiveness.[81]

The Supreme Court has also recognized that violating a patient's expectation in the confidentiality of medical information "may have adverse consequences because it may deter

---

[79] Lawrence O. Gostin, *Health Information Privacy*, 80 Cornell L. Rev. 451, 490–91 (1995).
[80] *King v. State*, 535 S.E.2d 492, 496 (Ga. 2000).
[81] *Id.*

8

patients from receiving needed medical care."[82] Unsurprisingly, 93% of patients want to decide which government agencies can access their electronic health records,[83] and 88% oppose letting police see their medical records without permission.[84]

### C.   A WARRANT SERVES AN IMPORTANT PURPOSE AND IS NOT DIFFICULT TO OBTAIN.

The Fourth Amendment requires that warrants be issued based on probable cause.[85]  The test for determining whether there is sufficient probable cause to issue a warrant is "whether the *facts presented in the affidavit* would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched."[86] Warrants are presumed to be lawful, unless the warrant was based on false information or the affidavit lacked probable cause.[87] A court's review of the issuance of a search warrant is extremely deferential.[88]

In this case, the probable cause requirement is easily met.  Investigator Churchwell's Declaration clearly demonstrates that there is probable cause to believe that the Database contains information relevant to the commission of a crime.[89]  DOPL does not contend that

---

[82] *Ferguson*, 532 U.S. at 78 n. 14; *accord Whalen*, 429 U.S. at 602 ("Unquestionably, some individuals' concern for their own privacy may lead them to avoid or to postpone needed medical attention.").

[83] Patient Privacy Rights & Zogby International, *2000 Adults' Views on Privacy, Access to Health Information, and Health Information Technology* 4 (2010), http://patientprivacyrights.org/wp-content/uploads/2010/11/Zogby-Result- Illustrations.pdf.

[84] Institute for Health Freedom & Gallup Organization, *Public Attitudes Toward Medical Privacy* 9–10 (Sept. 26, 2000), http://www.forhealthfreedom.org/Gallupsurvey/IHF-Gallup.pdf.

[85] *United States v. Tisdale*, 248 F.3d 964, 971–72 (10th Cir. 2001) (internal citations and quotations omitted) (emphasis added); *see also United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996).

[86] *Id.*

[87] *See Gates*, 462 U.S. 213 (1983).

[88] *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999).

[89] *See* Doc. 8, ¶¶ 3, 5, 6.

9

Investigator Churchwell's Declaration was based on false information, nor has DOPL requested a *Franks* hearing regarding his Declaration.  Accordingly, the DEA could easily establish probable cause and obtain a warrant which would allow DOPL to provide the DEA with the requested information without violating Utah law.

The statute's search warrant requirement "serves a high function."[90] It interposes between the police and the public a neutral magistrate, who weighs the needs of law enforcement against a citizen's right of privacy.[91] The purpose of the probable cause requirement is to keep the government out of constitutionally protected areas until it has reason to believe that a crime has been or is being committed.[92] The Fourth Amendment provides protection against government overreaching by requiring that "inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."[93] Administrative subpoenas, which purport to replace search warrants, vest great discretion in the executing officers by allowing magistrates to issue orders enforcing the subpoenas without making a complete finding of probable cause. In light of this fact, the Fourth Amendment's purpose should be closely analyzed to assure that any rule adopted in this context appropriately safeguards the interests protected by the Fourth Amendment.

## V.   CONCLUSION

The Fourth Amendment requirement to obtain a warrant before accessing private prescription and health information is not preempted by the DEA's administrative subpoena

---

[90] *McDonald v. United States,* 335 U.S. 451, 455 (1948).
[91] *Id.*
[92] *See Berger v. New York,* 388 U.S. 41, 55 (1967).
[93] *Johnson v. United States,* 333 U.S. 10, 13-14 (1948).

power. That privacy right should be recognized by this Court, and Respondents respectfully ask the Court to decline to enforce the DEA's subpoenas.

        DATED: August 5, 2016.

                OFFICE OF THE UTAH ATTORNEY GENERAL

                /s/ David N. Wolf
                DAVID N. WOLF
                Assistant Utah Attorney General
                *Counsel for Respondents*