BENJAMIN C. MIZER, Principal Deputy Assistant Attorney General
JOHN W. HUBER, United States Attorney
DANIEL D. PRICE, Assistant United States Attorney (Utah Bar No. 2646)
JACQUELINE COLEMAN SNEAD, Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel: (202) 616-8475
*Attorneys for Petitioner*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION, <br><br> Petitioner, <br> v. <br><br> UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING, <br><br> Respondents. | CASE NO. 2:16-cv-611-DN-DBP <br><br> **PETITIONER'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE** <br><br> Chief Judge David Nuffer <br><br> Magistrate Judge Dustin B. Pead |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iv

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 4

    1.    DEA'S AUTHORITY TO ISSUE ADMINISTRATIVE SUBPOENAS TO
        INVESTIGATE THE ILLEGAL DIVERSION OF CONTROLLED
        SUBSTANCES ............................................................................................ 4

    2.    DEA'S ADMINISTRATIVE SUBPOENA ........................................................ 6

    3.    PROCEDURAL HISTORY ............................................................................ 6

ARGUMENT ........................................................................................................ 8

    I.    PROPOSED INTERVENORS FAIL TO MEET THE REQUIREMENTS FOR
        INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2) .................................. 8

        A.    Proposed Intervenors Have Not Established an Interest in CSD
            Prescription Records of DEA Registrant #1 Sufficient to Intervene
            in an Administrative Subpoena Enforcement Proceeding ......................... 8

        B.    Proposed Intervenors' Assertions of Impairment Based on the
            Remote Possibility that Prescription Records Relating to Them Might
            Be Subpoenaed in the Future Are Too Speculative to Support
            Intervention ............................................................................................ 13

    II.    PERMISSIVE INTERVENTION ALSO SHOULD BE DENIED ....................... 14

        A.    Proposed Intervenors' Fourth Amendment Claim Involves No Common
            Question of Law or Fact with This Action ............................................... 15

        B.    DEA's Investigative Efforts Will Be Prejudiced If Third Parties with No
            Interest in the Subpoenaed Records Are Allowed to Intervene ................ 17

    III.    PROPOSED INTERVENORS' LACK OF STANDING INDEPENDENTLY
         WARRANTS DENIAL OF THEIR MOTION TO INTERVENE ....................... 18

        A.    Proposed Intervenors Cannot Rely on Piggyback Standing .................... 18

        B.    Proposed Intervenors' Asserted Injury Is Too Speculative to Support
            Standing .................................................................................................. 19

IV.   INTERVENTION SHOULD ALSO BE DENIED BECAUSE PROPOSED
      INTEVENORS' FOURTH AMENDMENT CLAIMS ARE FUTILE ...............22

      A.   Proposed Intervenors Lack Fourth Amendment Standing to Challenge
           DEA's Administrative Subpoena Seeking CSD Prescription Records of
           DEA Registrant #1 ...............................................................................22

      B.   Proposed Intervenors' Fourth Amendment Challenge Would Fail as a
           Matter of Law .......................................................................................24

CONCLUSION.................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007) ........................................................ 25

*Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*,
     715 F.3d 631 (7th Cir. 2013) ............................................................. 26, 27, 28

*Brown v. United States*, 411 U.S. 223 (1973) ..................................................... 10, 22

*City of Chicago v. FEMA*, 660 F.3d 980 (7th Cir. 2011) ........................................... 18

*City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071 (10th Cir. 2009) ................. 18

*City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015) ................................................ 24

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ............................... 14, 19, 20, 21

*Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*,
     100 F.3d 837, 843 (10th Cir. 1996) ............................................................... 8, 9

*Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016) ...................................... 19

*COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215 (10th Cir. 2016) ........................................ 20

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) .......................................... 19

*Doe v. United States*, 253 F.3d 256 (6th Cir. 2001) ......................................... 17, 24, 25

*Donaldson v. United States*, 400 U.S. 517 (1971) ...................................... 9, 10, 12, 17

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) ................................................... 24

*EEOC v. Century I, L.C.*, 142 F.R.D. 494 (D. Kan. 1992) ..................................... 22, 23

*EEOC v. Farmer's Pride, Inc.*, No. 12-MC-148, 2014 WL 1053482 (E.D. Pa. Mar. 18, 2014) . 12

*FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977) .................................................. 17

*Gonzales v. Raich*, 545 U.S. 1 (2005) .................................................................... 4

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) .............................. 20

*In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000) ....................... 24, 25-26, 27

*Kane Cty. v. United States*, 597 F.3d 1129 (10th Cir. 2010) ...................................... 15

*Katz v. United States*, 389 U.S. 347 (1967) ............................................................... 15

*Kirby v. Coastal Sales Assocs.*, 199 F.R.D. 111 (S.D.N.Y. 2001) ............................... 22

*Lucero v. City of Albuquerque*, 140 F.R.D. 455 (D.N.M. 1992) ........................... 22, 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ........................................ 20

*Massachusetts v. EPA*, 549 U.S. 497 (2007) .............................................................. 16

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ......................................................... 16

*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996) ...................................................... 18

*Murphy v. State*, 115 Wash. App. 297, 62 P.3d 533 (2003) ....................................... 28

*Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*,
    578 F.2d 1341 (10th Cir. 1978) ............................................................................... 9

*Okla. Press Publishing Co. v. Walling,* 327 U.S. 186 (1946) ..................................... 24

*Or. PDMP v. DEA*, 998 F. Supp. 2d 957 (D. Or. 2014),
    *appeal pending*, No. 14-35402 (9th Cir. docketed May 9, 2014) ........................... 12, 13

*Rakas v. Illinois*, 439 U.S. 128 (1978) ...................................................................... 10

*Resolution Trust Corp. v. Greif*, 906 F. Supp. 1446 (D. Kan. 1995) ........................... 25

*San Juan Cty. v. United States*, 503 F.3d 1163 (10th Cir. 2007) (en banc) ............. 8, 9, 10, 13-14

*Shelby Cty. v. Holder*, 133 S. Ct. 2612 (2013) .......................................................... 16

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ................................................. 16

*South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986 (8th Cir. 2012) ........................ 16

*State ex rel. Sullivan v. Lujan*, 969 F.2d 877 (10th Cir. 1992) ................................... 16

*State v. Russo*, 259 Conn. 436, 790 A.2d 1132 (2002) ............................................... 28

*State v. Welch*, 160 Vt. 70, 624 A.2d 1105 (1992) ..................................................... 28

*United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749 (9th Cir. 1993) ....... 12

*United States ex rel. Terraciano v. Montanye*, 493 F.2d 682 (2d Cir. 1974) ............................. 28

*United States v. Acklen*, 690 F.2d 70 (6th Cir. 1982) ................................................. 28

*United States v. Gonsalves*, 435 F.3d 64 (1st Cir. 2006) ........................................... 28

*United States v. Jones*, 132 S. Ct. 945, 950 (2012) .......................................... 10, 23

*United States v. Mich. Dep't of Cmty. Health*,
   No. 10-mc-109, 2011 WL 2412602 (W.D. Mich. June 9, 2011) ............. 11-12, 13, 15, 23

*United States v. Miller*, 425 U.S. 435 (1976) ...................................................... 11, 27

*United States v. Moffett*, 84 F.3d 1291 (10th Cir. 1996) .......................................... 11, 23

*United States v. Moore*, 423 U.S. 122 (1975) ........................................................... 5

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ............................................ 24

*United States v. Nechy*, 827 F.2d 1161 (7th Cir. 1987) ............................................. 28

*United States v. Powell*, 379 U.S. 48 (1964) .................................................... 24, 25

*United States v. Seslar*, 996 F.2d 1058 (10th Cir. 1993) ......................................... 28

*United States v. Sturm, Ruger & Co.*, 84 F.3d 1 (1st Cir. 1996) ................................ 26

*United States v. Valdez Hocker*, 333 F.3d 1206 (10th Cir. 2003) ............................... 11

*United States v. Whispering Oaks Residential Care Facility, LLC*,
   673 F.3d 813 (8th Cir. 2012) ..................................................................... 25

*United States v. Zadeh*,
   No. 15-10195, -- F.3d --, 2016 WL 1612754 (5th Cir. Apr. 21, 2016) ...................... 26

## **Statutes**

Privacy Act, 5 U.S.C. § 552a ......................................................................... 28

18 U.S.C. § 3486 ......................................................................................... 24

Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*.................................... 1

21 U.S.C. § 811 ............................................................................................. 5

21 U.S.C. § 812 ................................................................................................ 5

21 U.S.C. § 822 ................................................................................................ 5

21 U.S.C. § 841 ................................................................................................ 5

21 U.S.C. § 842 ................................................................................................ 5

21 U.S.C. § 876 ......................................................................................... *passim*

21 U.S.C. § 880 ................................................................................................ 6

21 U.S.C. § 882 ................................................................................................ 6

Utah Code Ann. § 58-37-10 ...........................................................................21

Utah Code Ann. § 58-37f-203 ........................................................................28

Utah Code Ann. § 58-37f-301 ....................................................................... 17

Utah Code Ann. § 58-38-6 ............................................................................. 28

## **Regulations**

21 C.F.R. §§ 1301.01 *et seq.* ......................................................................... 6

21 C.F.R. § 1301.11 ......................................................................................... 5

21 C.F.R. §§ 1316.01 -.13 ............................................................................... 6

21 C.F.R. §§ 1316.31 - .34, 1316.41 -.68 ...................................................... 6

28 C.F.R. § 0.100 ............................................................................................ 5

28 C.F.R. § 0.101 ............................................................................................ 5

45 C.F.R. § 164.512 ....................................................................................... 28

45 C.F.R. § 164.528 ....................................................................................... 28

## **Secondary Sources**

7C Charles Alan Wright et al., Federal Practice and Procedure § 1914 (3d ed. 2007) ............... 22

## INTRODUCTION

Petitioner the United States Department of Justice, Drug Enforcement Administration ("DEA") hereby submits this memorandum in opposition to the Motion to Intervene filed by the American Civil Liberties Union ("ACLU"), a state firefighters union, Equality Utah, and two unidentified individuals (collectively, "Proposed Intervenors"). [Doc. 19.]

DEA initiated this proceeding in order to enforce an administrative subpoena for controlled substance prescription records relating to a specific medical provider, DEA Registrant #1, pursuant to its authority to investigate violations of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.* DEA requested DEA Registrant #1's prescription records from Utah's Controlled Substance Database ("CSD") pursuant to 21 U.S.C. § 876, which grants express statutory authority to DEA to use administrative subpoenas for investigative purposes. As DEA has explained in support of its enforcement petition, the requested records relate to an ongoing DEA investigation. Specifically, DEA is investigating whether DEA Registrant #1 has been providing prescriptions, for purposes of further illegal sales, to members of a criminal organization with ties to overseas entities. In its memorandum in support of its petition, DEA explained that its administrative subpoena should be enforced under the applicable standard because it was issued pursuant to statutory authorization, sought information relevant to its ongoing investigation, and was limited in scope. *See* DEA Pet'n Mem. [Doc. 7.]

In their Motion to Intervene, Proposed Intervenors seek to become parties to the case, either as of right pursuant to Rule 24(a)(2), or on a permissive basis pursuant to Rule 24(b), in order to argue that the Fourth Amendment requires DEA to obtain a warrant based on probable cause before gaining access to CSD prescription records. Intervention should be denied, however, because Proposed Intervenors fail to satisfy intervention requirements under either

Rule 24(a)(2) or 24(b). First, Proposed Intervenors may not intervene as of right because they have no interest in the "property or transaction that is the subject of th[is] action," Fed. R. Civ. P. 24(a)(2)— the CSD prescription records that DEA requested in its subpoena. The limited nature of an administrative subpoena enforcement proceeding weighs heavily against recognizing a "right" to intervention here. The only issue raised in this proceeding is whether a single administrative subpoena, seeking prescription records relating to a specific medical provider over a limited period of time, should be enforced. Proposed Intervenors claim no proprietary interest in the subpoenaed records, which are held in a state database. Moreover, it is well settled that Fourth Amendment rights are personal and may not be asserted vicariously. Proposed Intervenors claim no expectation of privacy in the subpoenaed records that could support their assertion of Fourth Amendment rights in this proceeding; rather, they rely solely on the speculative notion that their own privacy interests might be affected at some future time. Intervention as of right is thus inappropriate under the circumstances of this case.

Second, permissive intervention also should be denied because Proposed Intervenors' Fourth Amendment challenge shares no "common question of law or fact" with this action, Fed. R. Civ. P. 24(b)(1)(B). The fact that Proposed Intervenors assert no expectation of privacy in the subpoenaed records weighs against permissive intervention. Given their inability to make the threshold showing necessary to assert a Fourth Amendment challenge, they have identified no common question of law or fact. Indeed, even if Proposed Intervenors could assert a Fourth Amendment claim, Respondents—as state agencies that have no Fourth Amendment rights—may not. Moreover, allowing intervention in the narrow context of a subpoena enforcement proceeding would result in prejudice to DEA—a required consideration for

2

permissive intervention, *see* Fed. R. Civ. P. 24(b)(3)—because it would interfere with DEA's ongoing investigation of possible illegal diversion of controlled substances. If intervention were allowed, Proposed Intervenors' participation could cause unwarranted delay in the adjudication of DEA's petition for enforcement of its administrative subpoena, and in the completion of DEA's investigation of DEA Registrant #1.

Even apart from Proposed Intervenors' failure to satisfy the requirements of Rule 24(a)(2) or 24(b), the Court should deny intervention because Proposed Intervenors lack standing to challenge the administrative subpoena at issue. Proposed Intervenors' sole basis for their asserted claim is the speculative possibility that, at some future time, in the course of some future investigation, DEA might serve an administrative subpoena seeking CSD prescription records concerning them. Their asserted injury is far too speculative to support standing. Proposed Intervenors also may not rely on Respondents' standing, under the "piggyback doctrine" because standing must be satisfied for each claim asserted, and Respondents, as state agencies, may not assert a Fourth Amendment challenge to the subpoena at issue in this case, much less to the hypothetical subpoenas that Proposed Intervenors speculate may be served in the future.

Finally, intervention should be denied because any Fourth Amendment challenge that Proposed Intervenors might seek to raise here would fail as a matter of law, and intervention is therefore futile. Not only does the absence of a reasonable expectation of privacy in the subpoenaed records preclude intervention under Rule 24, it also clearly deprives Proposed Intervenors of Fourth Amendment standing to challenge DEA's subpoena in this proceeding. Any Fourth Amendment challenge they sought to raise in this case therefore would have to be rejected.

3

Moreover, Proposed Intervenors' assertion that DEA must obtain a warrant in order to access CSD prescription records is contrary to Supreme Court and Tenth Circuit precedent and would necessarily fail as a matter of law. There is no genuine dispute that federal agencies may undertake investigations in furtherance of their statutory missions, and that, in the course of such an investigation, when authorized by statute, they may seek information through an administrative subpoena, without a warrant and without probable cause. Indeed, the very point of an administrative subpoena is to allow an agency to investigate whether there is a violation of law or not, before probable cause is developed. Proposed Intervenors' Fourth Amendment challenge therefore is futile. Accordingly, the Motion to Intervene should be denied.

## BACKGROUND

1.     **DEA'S AUTHORITY TO ISSUE ADMINISTRATIVE SUBPOENAS TO INVESTIGATE THE ILLEGAL DIVERSION OF CONTROLLED SUBSTANCES**

DEA was established by Executive Order 11727, and the Attorney General has delegated to it functions relating to or arising from investigations of "matters concerning drugs," 28 C.F.R. § 0.100, as well as the responsibility for developing and implementing "a concentrated program throughout the Federal Government for the enforcement of Federal drug laws and for cooperation with State and local governments in the enforcement of their drug abuse laws," *id.* § 0.101(a). DEA is therefore the federal agency charged with primary responsibility for enforcing and administering the requirements of the CSA.

In the CSA, "Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Gonzales v. Raich*, 545 U.S. 1, 13 (2005). The CSA categorizes controlled substances into five schedules, based on "their accepted medical uses, the potential for

abuse, and their psychological and physical effects on the body." *Id.* (citing 21 U.S.C. §§ 811, 812). Drugs in Schedules II-V have a currently accepted medical use and may be dispensed for such use with a prescription, subject to certain limitations and restrictions. *See* 21 U.S.C. § 812. In enacting the CSA, "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels." *United States v. Moore*, 423 U.S. 122, 135 (1975). Accordingly, those who seek to manufacture, distribute, or dispense controlled substances with CSA-authorized uses must first obtain a registration. 21 U.S.C. § 822; 21 C.F.R. § 1301.11(a). The CSA imposes criminal penalties on those, including registrants, who manufacture, distribute, or dispense controlled substances except as authorized by the CSA. 21 U.S.C. §§ 841-842. Indeed, Congress "was aware that registrants, who have the greatest access to controlled substances and therefore the greatest opportunity for diversion, were responsible for a large part of the illegal drug traffic." *Moore*, 423 U.S. at 135.

DEA's functions include the implementation, regulation, and enforcement of registration requirements for manufacturers, distributors, and dispensers of controlled substances. *See* 21 C.F.R. §§ 1301.01 *et seq.* DEA thus administers the CSA's registration process as well as the process for suspending or revoking registrations that have been issued. *See id.* In connection with its responsibilities under the CSA, DEA is also authorized to conduct administrative inspections of controlled premises, 21 U.S.C. §§ 880, 882(f); 21 C.F.R. §§ 1316.01 -.13; and to conduct administrative hearings, 21 C.F.R. §§ 1316.31 - .34, 1316.41 -.68. DEA is also authorized to issue an administrative subpoena to "require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which [it] finds relevant or material to" an investigation under the CSA. 21 U.S.C. § 876(a).

2.      **DEA'S ADMINISTRATIVE SUBPOENA**

In May 2015, DEA initiated an investigation into the prescribing practices of DEA

Registrant #1, a medical provider in the Salt Lake metropolitan area. Churchwell Decl. ¶¶ 3-4.

Based on its investigation, DEA suspects that DEA Registrant #1 has provided controlled

substance prescriptions, in violation of the CSA, to individuals who, in turn, sell the controlled

substances illegally, and who may be members of a criminal organization with overseas ties. *Id.*

¶ 5. On November 12, 2015, DEA served an administrative subpoena, issued pursuant to 21

U.S.C. § 876, on Francine A. Giani, Executive Director of the Utah Department of Commerce,

and Mark Steinagel, Director of DOPL, seeking information in the Utah CSD. Churchwell Decl.

¶ 7. DEA relies on the Utah CSD program, as it does on similar Prescription Database

Monitoring Programs ("PDMPs") in other states, as a principle investigative resource. *Id.* ¶ 6.

Here, DEA's subpoena specifically sought all prescription records in the Utah CSD associated

with DEA Registrant #1 for the period beginning January 8, 2015, to the present. *Id.* ¶ 7. To date,

the Utah Department of Commerce and DOPL have failed to comply with DEA's administrative

subpoena. *Id.* ¶ 9.

3.      **PROCEDURAL HISTORY**

DEA filed a Petition to enforce the November 12, 2015 DEA administrative subpoenas

on June 14, 2016. [Doc. 2.] At the same time, DEA filed a Request for an Order to Show Cause.

[Doc. 9.] Respondents the Utah Department of Commerce and DOPL filed a memorandum in

opposition to DEA's Petition on August 5, 2016. [Doc. 24.] Meanwhile, the ACLU filed a

Motion to Intervene, on behalf of itself, the Salt Lake County Firefighters IAFF Local 1696

("Firefighters union"), Equality Utah, and two unnamed individuals (collectively "Proposed

6

Intervenors"), on July 28, 2016. [Doc. 19.] The Firefighters union asserts that some of its members receive prescriptions in Utah. Declaration of Jeremy Robertson [Doc. 19-1] ¶ 7. The union's declarant also described an incident where Utah law enforcement officials—not federal law enforcement—abused their access to CSD records relating to union members. *Id.* ¶¶ 11-17. Equality Utah identifies itself as an advocacy organization and does not indicate that it has individual members with prescription information in CSD. Declaration of Troy Williams [Doc. 19-2] ¶ 3. Rather, Equality Utah's declarant indicates that transgender individuals in Utah obtain prescriptions as part of the process of transitioning to the male gender. Id. ¶ 6. ACLU of Utah asserts that it is a membership organization and that some of its members fill or write prescriptions in Utah. Declaration of Karen McCreary [Doc. 19-3] ¶¶ 6-7. John Doe 1 and John Doe 2, two unidentified individuals, assert that they fill prescriptions in Utah. Declaration of John Doe 1 [Doc. 19-4] ¶ 7; Declaration of John Doe 2 [Doc. 19-5] ¶ 5. None of the Proposed Intervenors asserts any connection with DEA Registrant #1 or that prescription records relating to them would be included in a response to the DEA administrative subpoena at issue in this proceeding.

Proposed Intervenors assert that they are entitled to intervene as of right under Fed. R. Civ. P. 24(a) or, in the alternative, that the Court should, in its discretion, grant them leave to intervene under Fed. R. Civ. P. 24(b). The Court has stayed DEA's deadline to file a reply responding to Respondents' opposition memorandum pending a decision on Proposed Intervenors' Motion to Intervene. [Doc. 29.]

## ARGUMENT

**I.    PROPOSED INTERVENORS FAIL TO MEET THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2)**

Proposed Intervenors seek to intervene as of right under Rule 24(a)(2), which allows for intervention when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Here, these requirements are not satisfied because Proposed Intervenors claim no cognizable interest relating to the administrative subpoena at issue in this proceeding, and their assertion that their interests will be impaired by this action is wholly speculative.

**A.    Proposed Intervenors Have Not Established an Interest in CSD Prescription Records of DEA Registrant #1 Sufficient to Intervene in an Administrative Subpoena Enforcement Proceeding**

Proposed Intervenors claim no interest in the CSD prescription records of DEA Registrant #1 that DEA requested in the administrative subpoena at issue. Rather, Proposed Intervenors argue that they have "Fourth Amendment interests at stake in this action" because they or their members have filled prescriptions in Utah, and because the CSD therefore likely contains records relating to those prescriptions. ACLU Br. at 9-10. In Proposed Intervenors' view, this satisfies the "minimal" interest necessary to intervene as of right under Rule 24(a)(2). *Id.* at 10. However, the cases that Proposed Intervenors cite for this proposition—*San Juan Cty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc), and *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 843 (10th Cir. 1996)—do not support finding an interest here, for two reasons.

First, under both *San Juan Cty.* and *Coal. of Arizona*, the context of this proceeding—a subpoena enforcement action—is significant. As the Tenth Circuit explained in both cases, "[t]he nature of the litigation" between the original parties directly bears on the showing of interest that is required by a third party seeking to intervene. *San Juan Cty.*, 503 F.3d at 1199 (explaining that Rule 24(a)(2) "is not a mechanical rule" but instead "requires courts to exercise judgment based on the specific circumstances of the case"); *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth*, 100 F.3d at 843 (holding that an owl researcher had established a sufficient interest for intervention as of right in a challenge to Fish and Wildlife Service's endangered species listing decision, but distinguishing that context from "traditional intervention" where a more focused interest would be required).

The significance of context is clear from the Tenth Circuit's discussion of the Supreme Court's decision in *Donaldson v. United States*, 400 U.S. 517 (1971). In *Donaldson*, the Supreme Court held that, in the context of an IRS summons proceeding, a taxpayer could not intervene as of right because, even though he was the subject of an IRS investigation, he had no "significantly protectable interest"—such as a proprietary interest or a privilege—in the third party business records that had been requested through the IRS summons. *Donaldson*, 400 U.S. at 542. In *San Juan Cty.*, the court distinguished the narrow context of *Donaldson* when holding that environmental organizations could intervene as of right in a county's quiet title action against the federal government based on their asserted interests in preventing vehicular traffic on the property at issue. *San Juan Cty.*, 503 F.3d at 1191-92 ("it is appropriate to keep in mind the special context of *Donaldson*"); *see also Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1344 (10th Cir. 1978) (distinguishing *Donaldson* based on the "narrowness" of the IRS

summons enforcement proceeding, and holding, in contrast, that a mining organization and a private mining company could intervene as of right in a case brought by an environmental organization claiming that the federal government could not issue a license for the operation of uranium mills without preparing an environmental impact statement).

Here, unlike *San Juan Cty.*, the context of an administrative subpoena enforcement proceeding is closely analogous to the IRS summons enforcement proceeding in *Donaldson*. *See Donaldson*, 400 U.S. at 523-25 (describing nature of IRS summons as administrative investigative tool authorized by statute and enforceable by courts). Both are narrow proceedings in which a federal agency seeks to enforce a specific request for records related to a specific investigation that the agency is conducting. As in *Donaldson*, the narrowness of such a proceeding weighs heavily against allowing intervention as of right when the proposed intervenor lacks a direct interest in the requested records at issue. *See id.* at 542.

Second, Proposed Intervenors cannot plausibly claim to have Fourth Amendment interests "at stake" in this administrative subpoena enforcement proceeding when they assert no reasonable expectation of privacy in the subpoenaed CSD prescription records. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223, 230 (1973). Under the Fourth Amendment, a person may allege that a government "search" implicates the Fourth Amendment only where the search violates that person's "reasonable expectation of privacy." *United States v. Jones*, 132 S. Ct. 945, 950 (2012). Whether a search might implicate someone else's privacy interests is not relevant. *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person[] . . . has not had any of

10

his Fourth Amendment rights infringed"); *United States v. Valdez Hocker*, 333 F.3d 1206, 1208

(10th Cir. 2003) (holding that a defendant lacked standing to raise a Fourth Amendment challenge

to the search of a car unless he could establish a possessory interest in the car that would afford him

a legitimate expectation of privacy). The Tenth Circuit has expressly recognized that an individual

may not challenge a DEA administrative subpoena on Fourth Amendment grounds unless the

individual has established a reasonable expectation of privacy in the subpoenaed evidence. *United*

*States v. Moffett*, 84 F.3d 1291, 1293 (10th Cir. 1996) (denying motion to suppress when defendant

conceded he lacked a reasonable expectation of privacy in Amtrak train manifest); *cf. United*

*States v. Miller*, 425 U.S. 435, 444-46 (1976) (bank depositor could not challenge subpoenas

issued to bank because he had no expectation of privacy in subpoenaed records).

  These two factors—the narrowness of the subpoena enforcement context and the personal

nature of Fourth Amendment rights—led another court to deny intervention in a case similar to this

one, where an organization and unidentified individuals sought to intervene in a DEA petition to

enforce an administrative subpoena issued under 21 U.S.C. § 876. *See United States v. Mich. Dep't*

*of Cmty. Health*, No. 10-mc-109, 2011 WL 2412602, at *7, 9 (W.D. Mich. June 9, 2011). In

reaching its conclusion, the court emphasized the narrow context of an administrative subpoena

enforcement proceeding, recognizing that, "[b]y its very nature, a proceeding to enforce an

administrative subpoena presents limited legal and factual issues." *Id.* at *6. Specifically, an

administrative subpoena "is directed at a single entity or person and seeks to obtain specific

information relevant to an investigation." *Id.* "Given the limited issues addressed during a

proceeding to enforce an administrative subpoena, an applicant seeking to intervene" in such a

proceeding "faces a substantial burden to establish [a significantly protectable interest]." *Id.* at *5.

Indeed, a "judicial proceeding to enforce the subpoena typically involves only the government agency seeking to enforce the subpoena and the person or entity in possession of the records." *Id.*

The court further explained that, while the "target" of a DEA administrative subpoena (the person whose information is contained in records held by a third party) may sometimes challenge the subpoena issued on Fourth Amendment grounds, standing to do so is not "automatic" and instead requires the target to "demonstrate a legitimate expectation of privacy attached to the records" at issue. *Id.* The court held that the would-be intervenors' assertion of a protectable interest in that case "hinge[d] on [their] contention that they have a reasonable expectation of privacy that has been placed in jeopardy by this administrative subpoena," but that "[t]his is simply not the case" because they failed to establish that any information relating to them was at issue. *Id.* at 7. The court therefore denied intervention as of right. *Id.* at *8.[1]

Proposed Intervenors ignore the significance of these factors under Tenth Circuit and other authority and cite no instance where a court allowed intervention as of right in a subpoena enforcement context by someone who lacked a reasonable expectation of privacy in the subpoenaed records. Proposed Intervenors instead rely heavily on a District of Oregon decision, *Or. PDMP v. DEA*, 998 F. Supp. 2d 957 (D. Or. 2014), *appeal pending* No. 14-35402 (9th Cir.), where ACLU and several individuals were allowed to intervene. That case, however, is inapposite. In that case, the state PDMP brought a civil action seeking a declaratory judgment clarifying its

---

[1] Other courts have rejected motions to intervene in the context of administrative subpoena enforcement proceedings for similar reasons. *E.g.*, *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (recognizing that, under *Donaldson*, "there is no intervention as a matter of right for taxpayers in subpoena enforcement proceedings against a third party"); *EEOC v. Farmer's Pride, Inc.*, No. 12-MC-148, 2014 WL 1053482, at *2–3 (E.D. Pa. Mar. 18, 2014) (denying motion to intervene in proceeding to enforce EEOC administrative subpoena because movant lacked a legal interest in EEOC's timely investigation).

obligation, as a general matter, to comply with DEA administrative subpoenas in light of a conflicting state law. *Id.* at 959. The court in that case therefore relied on the proposed intervenors' assertion of an expectation of privacy in their own prescription records, and the fact that such records were contained in the state PDMP. *Id.* at 964.[2]

This case is analogous to *Mich. Dep't of Cmty. Health* rather than to *Or. PDMP*. Similar to *Mich. Dep't of Cmty. Health*, and unlike *Or. PDMP*, this proceeding is limited to consideration of whether a single DEA administrative subpoena, seeking specific CSD prescription records of DEA Registrant #1, should be enforced. However, Proposed Intervenors do not assert a proprietary interest in the subpoenaed records, nor do they claim to have a reasonable expectation of privacy in the subpoenaed records. Accordingly, they have no "interest relating to the property or transaction that is the subject of th[is] action," Fed. R. Civ. P. 24(a)(2). The motion to intervene as of right should be denied on this basis alone.

**B.      Proposed Intervenors' Assertions of Impairment Based on the Remote Possibility that Prescription Records Relating to Them Might Be Subpoenaed in the Future Are Too Speculative to Support Intervention**

For similar reasons, Proposed Intervenors fail to establish that their interests will be impaired by this proceeding. While Proposed Intervenors suggest that a decision enforcing the DEA administrative subpoena here will allow CSD prescription records relating to them to be disclosed in the future, the Tenth Circuit in *San Juan Cty.* made clear that an intervenor "cannot rely on an interest that is wholly remote and speculative" in order to show impairment. *San Juan*

---

[2] The Government disagrees with the court's decision in *Or. PDMP* to allow intervention, as explained in its briefing on appeal in the Ninth Circuit. However, even if the district court's decision in that case is upheld, this case presents a different procedural context in a different Circuit, and intervention in this case still would not be appropriate for the reasons explained herein.

13

*Cty.*, 503 F.3d at 1203. Proposed Intervenors' asserted impairment relies on a chain of possibilities—including the possibility that their prescription records might be relevant to a DEA investigation at some point in the future, and that DEA might seek those records from the CSD through an administrative subpoena—that is purely speculative. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147-48 (2013) (recognizing that the plaintiffs' assertion in that case that their communications would be intercepted by a government surveillance program "at some point in the future" was "highly speculative"). Moreover, to the extent a Fourth Amendment challenge to such imagined future subpoenas is cognizable, Proposed Intervenors could seek declaratory or injunctive relief through a separate lawsuit.[3] They could also move to suppress evidence obtained through such subpoenas if an enforcement action were ever taken against them. Proposed Intervenors' Motion to Intervene as of right under Rule 24(a)(2) thus should be denied.[4]

## II.    PERMISSIVE INTERVENTION ALSO SHOULD BE DENIED

Proposed Intervenors ask the Court in the alternative to grant permissive intervention under Rule 24(b). However, permissive intervention also should be denied. In order to be eligible for permissive intervention, a potential intervenor must "show that it 'has a claim or defense that

---

[3] Under *Clapper*, the speculative nature of Proposed Intervenors' asserted injuries would deprive them of standing to raise such claims in a separate lawsuit. However, the likelihood that their claims, if brought separately, would be dismissed does not weigh in favor of allowing the Proposed Intervenors to circumvent jurisdictional requirements through intervention. Rather, as discussed below, Proposed Intervenors' lack of standing independently warrants denial of their Motion to Intervene.

[4] DEA does not dispute the timeliness of Proposed Intervenors' Motion. Because neither Respondents nor Proposed Intervenors have a legitimate Fourth Amendment interest in the subpoenaed CSD prescription records at issue, Proposed Intervenors can raise no valid objection to the adequacy of Respondents' representation. However, to the extent Respondents are permitted to assert a defense on Fourth Amendment grounds, based on the asserted privacy interests of Utah citizens, Proposed Intervenors—who themselves are or represent Utah citizens—have failed to demonstrate that Respondents' representation of such interests would be inadequate.

shares with the main action a common question of law or fact.'" *Kane Cty. v. United States*, 597

F.3d 1129, 1135 (10th Cir. 2010) (quoting Fed. R. Civ. P. 24(b)(1)(B)). A court must also consider

"whether the intervention will unduly delay or prejudice the adjudication of the original parties'

rights." *Id.* (quoting Fed. R. Civ. P. 24(b)(3)). "The grant of permissive intervention lies within the

discretion of the district court." *Id.* The applicable factors weigh heavily against permissive

intervention in this case.

> **A.      Proposed Intervenors' Fourth Amendment Claim Involves No Common
> Question of Law or Fact with This Action**

Proposed Intervenors assert that their proposed Fourth Amendment defense "shares with

the main action a common question of law—whether the Fourth Amendment requires law

enforcement to obtain a valid warrant before accessing protected health records in the []CSD."

ACLU Br. at 16. However, as explained above, any Fourth Amendment claim here depends not on

the nature of the object to be searched, in the abstract, but on a specific claimant's reasonable

expectation of privacy in that object. *Cf. Mich. Dep't of Cmty. Health*, 2011 WL 2412602, at *7

("The essence of the right to privacy is one's expectation of it." (citing *Katz v. United States*, 389

U.S. 347 (1967))). Thus, in order to resolve a claim that DEA's administrative subpoena violates

the Fourth Amendment, the Court must first address the threshold question of whether the party

asserting that claim has a reasonable expectation of privacy in the records at issue. As the court in

*Mich. Dep't of Cmty. Health* explained when rejecting permissive intervention in that case,

Proposed Intervenors "are not targets of the investigation" and "have no reasonable expectation of

privacy [in the subpoenaed records] under the facts of this case." *Id.* at *9. They therefore "do not

have a claim or defense that shares a common question of law or fact with the main action . . .

which involves the narrow issue of whether to enforce an administrative subpoena." *Id.* Indeed,

they have no Fourth Amendment claim at all with respect to the subpoenaed CSD prescription records at issue here.

Moreover, Proposed Intervenors' proposed Fourth Amendment defense also presents no "common question of law or fact" because Respondents are clearly precluded from asserting such a defense themselves. The Fourth Amendment protects the "rights of the people," U.S. Const. amend. IV, but Respondents are state agencies, not "people," and thus cannot assert Fourth Amendment rights. *Cf. South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986, 990–91 (8th Cir. 2012) ("The State is not a 'person' within the meaning of the Fifth Amendment's Due Process Clause." (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 323–24 (1966))). Indeed, it is well established that a state may not invoke the constitutional rights of its citizens *parens patriae* in order to avoid compliance with a federal statute. *See Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923) ("[I]t is no part of [a state's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government."); *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (observing that *Mellon* "prohibits" allowing a state "'to protect her citizens from the operation of federal statutes'"); *Katzenbach*, 383 U.S. at 324 (concluding South Carolina lacked standing as *parens patriae* to invoke the Due Process Clause or the Bill of Attainder Clause against the federal government), *abrogated on other grounds by Shelby Cty. v. Holder*, 133 S. Ct. 2612 (2013); *State ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882–83 (10th Cir. 1992) (holding State of Wyoming could not challenge the Secretary of Interior's land exchange on the basis that the exchange violated the rights of Wyoming citizens).[5] Permissive intervention therefore should be

---

[5] As indicated above, the Court has stayed DEA's deadline to file a reply responding to Respondents' Memorandum in Opposition. DEA therefore will not address the substance of Respondents' arguments here. However, in its reply, DEA will explain that Respondents' claim in

denied for failure to demonstrate a common question of law or fact.

**B.      DEA's Investigative Efforts Will Be Prejudiced If Third Parties with No Interest in the Subpoenaed Records Are Allowed to Intervene**

Permissive intervention also should be denied because allowing intervention in the context of this proceeding would unduly delay or prejudice the adjudication of the DEA administrative subpoena at issue here. If allowed to intervene, Proposed Intervenors might try to assert cross-claims in an effort to expand this narrow administrative subpoena enforcement proceeding into a request for declaratory and injunctive relief purporting to reach all future DEA administrative subpoenas for CSD prescription records. Such an expansion would be inappropriate. After all, DEA served its administrative subpoena as part of an ongoing DEA investigation, and any delay could prejudice DEA's ability to continue that investigation. *See Doe v. United States*, 253 F.3d 256, 263 (6th Cir. 2001) (recognizing that "the scope of the issues which may be litigated in an [administrative subpoena] enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity" (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 872–73 (D.C. Cir. 1977) (en banc)); *see also Donaldson*, 400 U.S. at 531 (allowing intervention in an IRS summons enforcement proceeding would "unwarrantedly cast doubt upon and stultify the [IRS]'s every investigatory move"). Accordingly, permissive intervention should be denied.

---

their opposition brief that the constitutionality of 21 U.S.C. § 876 "as applied to the [CSD]," Res. Opp. [Doc. 24] at 1, must be resolved as a threshold matter before considering whether 21 U.S.C. § 876 preempts the warrant requirement in Utah Code Ann. § 58-37f-301(2)(k) is unfounded. The facial constitutionality of 21 U.S.C. § 876 is simply not at issue. Moreover, any "as-applied" challenge depends on the expectation of privacy of the claimant, and Respondents are precluded from raising a Fourth Amendment challenge for the reasons set forth above.

III.   **PROPOSED INTERVENORS' LACK OF STANDING INDEPENDENTLY**
**WARRANTS DENIAL OF THEIR MOTION TO INTERVENE**

As discussed above, Proposed Intervenors seek to intervene in this proceeding in order to

assert a Fourth Amendment defense to DEA's petition to enforce the administrative subpoena at

issue in this case. *See* ACLU Br. at 9 (asserting "Fourth Amendment interests at stake in this

action"); proposed ACLU Opp. to DEA Pet'n [Doc. 25], at iii (identifying Fourth Amendment

arguments). However, Proposed Intervenors make no effort to establish their standing to raise such

a defense. Rather, they suggest that they need not satisfy Article III standing requirements because

"it is undisputed that a case or controversy creating standing exists between the DEA and Utah."

ACLU Br. at 8 n.5. Proposed Intervenors are incorrect in their assertion under the circumstances of

this case, and their Motion to Intervene should be denied for lack of standing.

A.      **Proposed Intervenors Cannot Rely on Piggyback Standing**

Proposed Intervenors' suggestion that they need not establish Article III standing rests on

the doctrine of "piggyback" standing. Under that doctrine, a proposed intervenor need not

establish its own standing, but instead can "piggyback" on the standing of an existing party, if that

party has "sufficient standing to assert the claim at issue." *City of Colo. Springs v. Climax*

*Molybdenum Co.*, 587 F.3d 1071, 1080 (10th Cir. 2009). The piggyback doctrine does not apply

here, however, because it does not allow a proposed intervenor to raise a claim that no current

party to the case could raise itself. *See id.*; *Mausolf v. Babbitt*, 85 F.3d 1295, 1299-1301 (8th Cir.

1996) (explaining that intervenors cannot raise new claims evading Article III requirements); *City*

*of Chicago v. FEMA*, 660 F.3d 980, 985 (7th Cir. 2011) (dispensing with Article III requirements

should not result in an intervenor "turn[ing] the case in a new direction—…mak[ing] it really a

new case"). Any contrary understanding would violate the established principle that standing must

18

be established separately "for each claim [a party] seeks to press" and "for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 551 (10th Cir. 2016) (recognizing that standing to assert a constitutional challenge to a statute did not suffice to challenge the same statute under the Americans with Disabilities Act).

Here, as already discussed, Respondents may not raise a Fourth Amendment defense to enforcement of DEA's administrative subpoena because, as state agencies, they lack Fourth Amendment rights. Moreover, the existing case or controversy in this proceeding relates to the specific administrative subpoena that DEA has sought to enforce through its petition. Proposed Intervenors therefore cannot rely on Respondents' standing in order to assert Fourth Amendment claims, particularly when the only expectation of privacy they assert relates not to the subpoenaed records at issue in this action but to other CSD prescription records that, they speculate, might be subpoenaed in the future. Thus, the Court should reject Proposed Intervenors' attempt to rely on the piggyback doctrine in order to raise a claim that otherwise could not be raised in this action.

## B.   Proposed Intervenors' Asserted Injury Is Too Speculative to Support Standing

Proposed Intervenors also make no effort to establish Article III standing in their own right, nor could they. To establish standing, a party must demonstrate that it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation omitted). "[A]llegations of *possible* future injury are not sufficient"; rather, as the Supreme Court has "repeatedly reiterated," "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 133 S. Ct. at 1147 (internal quotation

omitted); *see also COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1222–23 (10th Cir. 2016) (holding plaintiff lacked standing because the asserted potential future injury was speculative and not "certainly impending").[6]

Proposed Intervenors have not established a "certainly impending" cognizable injury resulting from the DEA administrative subpoena at issue in this action, or from the hypothetical future subpoenas that, they speculate, might seek their prescription records in Utah's CSD in the course of some future DEA investigation. While they assert that they or some of their members have filled prescriptions in Utah and that their records are therefore in the CSD, they do not assert that they or their medical providers are, or are likely to be, targets of a DEA investigation, nor do they establish any certainty that DEA would seek their prescription records. Such assertions in any event would be insufficient for standing. *See, e.g.*, *Clapper*, 133 S. Ct. at 1147-48 (rejecting plaintiffs' assertion of an "objectively reasonable likelihood" that their communications would be intercepted by a government surveillance program "at some point in the future" as insufficient to demonstrate a "certainly impending" injury because the notion that the government would target them, in particular, was "highly speculative").

Proposed Intervenors' further assertion that they or their members might be "chilled" in seeking medical treatment if they knew that DEA could obtain CSD prescription records with an administrative subpoena, *see* ACLU Br. at 7, also fails to establish their standing. The contention

---

[6] Proposed Intervenors include three organizations—the Firefighters' union, Equality Utah, and ACLU. An entity may establish associational standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). None of these organizations has identified a member with standing in his or her own right. Indeed, Equality Utah apparently does not have members. Thus, the organizations also lack standing.

that Proposed Intervenors might change their behavior in the future, when there is no indication they have done so in the past, is particularly implausible here, given that before May 2015, there was no dispute that DEA could obtain CSD prescription records without a warrant, and that, even now, both DEA and Utah law enforcement can seek the same prescription records through administrative subpoenas served directly on one or more pharmacies. Churchwell Decl. ¶ 10 (observing that such an effort would be much more burdensome to DEA); Utah Code Ann. § 58-37-10(3)(d).

In any event, even if the allegation were plausible, the Supreme Court has explained that plaintiffs cannot "manufacture standing" by undertaking specific measures, even "as a reasonable reaction to a risk of harm," where that harm is "not certainly impending." *See Clapper*, 133 S. Ct. at 1143, 1151. In *Clapper*, the Court thus concluded that the plaintiffs could not establish standing by claiming that they had incurred costs, such as traveling to in-person meetings, in order to avoid surveillance because a contrary ruling would "water[] down the fundamental requirements of Article III." *Id.* at 1151-52. Similarly here, Proposed Intervenors cannot "manufacture standing" by suggesting that they may change their behavior due to the alleged risk that DEA might seek CSD prescription records relating to them through an administrative subpoena.

Moreover, the fact that both DEA and Utah law enforcement are already authorized to seek the same prescription records through administrative subpoenas served on pharmacies also demonstrates that any such chill is not fairly traceable to the possibility that DEA might seek such information from the CSD. *See id.* at 1143 (where the same asserted future injury might be inflicted in another way, it was not fairly traceable to the challenged statutory provision). Accordingly, Proposed Intervenors' motion to intervene should be denied because they lack

Article III standing to assert a Fourth Amendment claim.

## IV.    INTERVENTION SHOULD ALSO BE DENIED BECAUSE PROPOSED INTEVENORS' FOURTH AMENDMENT CLAIMS ARE FUTILE

Even where a court has subject matter jurisdiction over a claim and the requirements of Rule 24 are satisfied, a proposed intervention should be denied if it would be legally futile. *See, e.g., EEOC v. Century I, L.C.*, 142 F.R.D. 494, 496 (D. Kan. 1992) (striking two claims asserted by proposed intervenors because "those claims could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) under the case law of this circuit"); *Lucero v. City of Albuquerque*, 140 F.R.D. 455, 458 (D.N.M. 1992) (denying intervention as futile because proposed intervenors had no cognizable Fourteenth Amendment claim); *Kirby v. Coastal Sales Assocs.*, 199 F.R.D. 111, 118 (S.D.N.Y. 2001) (recognizing futility as basis to deny intervention); *see also* 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1914 (3d ed. 2007) ("The proposed pleading must state a good claim for relief or a good defense.").

Here, Proposed Intervenors' attempt to challenge DEA's administrative subpoena on Fourth Amendment grounds is futile for two separate reasons, discussed in turn below: First, Proposed Intervenors lack Fourth Amendment standing to raise such a challenge. Second, Proposed Intervenors' argument that a DEA administrative subpoena for CSD records requires a warrant and probable cause is contrary to Supreme Court and Tenth Circuit precedent and would necessarily fail as a matter of law.

### A.    Proposed Intervenors Lack Fourth Amendment Standing to Challenge DEA's Administrative Subpoena Seeking CSD Prescription Records of DEA Registrant #1

As already explained, in order to assert a Fourth Amendment challenge to DEA's administrative subpoena, a claimant must establish a reasonable expectation of privacy in the

subpoenaed records at issue. *Brown*, 411 U.S. at 230 (Fourth Amendment rights are personal and may not be vicariously asserted); *Jones*, 132 S. Ct. at 950 (assertion of a Fourth Amendment challenge requires the claimant to establish a reasonable expectation of privacy); *Moffett*, 84 F.3d at 1293 (DEA administrative subpoena may not be challenged on Fourth Amendment grounds unless the challenger has a reasonable expectation of privacy in the subpoenaed records). Based on this principle, the court in *Mich. Dep't of Cmty. Health* held that proposed intervenors who lacked such an expectation of privacy failed to satisfy the requirements for intervention as of right under Rule 24(a)(2) or for permissive intervention under Rule 24(b). As discussed above, this Court should follow the same analysis and conclude that Rule 24 requirements are not satisfied.

However, even apart from the Rule 24 analysis, the conclusion is inescapable that Proposed Intervenors lack Fourth Amendment standing to challenge DEA's subpoena, and intervention would therefore be futile. *See Moffett*, 84 F.3d at 1293.[7] Proposed Intervenors do not assert an expectation of privacy in the subpoenaed records at issue here. Rather, as already discussed, their concern relates to other CSD prescription records that have not been subpoenaed, and are thus not at issue in this enforcement proceeding. As already explained, such an interest simply does not suffice to assert a Fourth Amendment challenge with respect to the subpoenaed records here, and therefore the Motion to Intervene should be denied.

---

[7] As the Tenth Circuit has recognized, the question of whether a claimant has a "right (or standing) to contest the constitutionality of a search," while often referred to as "Fourth Amendment standing, "is subsumed under substantive Fourth Amendment doctrine." *Id.* However, as indicated above, courts have denied intervention when a movant's claim would be subject to dismissal for failure to state a claim as a matter of law. *E.g.*, *EEOC*, 142 F.R.D. at 496; *Lucero*, 140 F.R.D. at 458. This Court should do the same here.

**B.      Proposed Intervenors' Fourth Amendment Challenge Would Fail as a Matter of Law**

Even apart from the fact that Proposed Intervenors lack any cognizable privacy interest in this action, their Fourth Amendment argument—that DEA cannot access CSD prescription records without a warrant—necessarily fails as a matter of law because it simply ignores the nature and purpose of an administrative subpoena, as repeatedly set forth by the Supreme Court. The purpose of an administrative subpoena is investigative, and the Supreme Court has held that an agency can exercise its "power of inquisition" "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).

Accordingly, it is well established that neither probable cause nor a warrant is required for an administrative subpoena. *See City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2453 (2015) (confirming that administrative subpoenas do not require probable cause and allow for only "limited grounds on which a motion to quash can be granted"); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) ("our cases make it clear that the Secretary of Labor may issue an administrative subpoena without a warrant" (citing *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 215-16 (1946)); *United States v. Powell*, 379 U.S. 48, 57 (1964) (holding IRS administrative summons does not require probable cause because the IRS summons is analogous to the administrative subpoenas considered in *Okla. Press* and *Morton Salt*); *see also Doe*, 253 F.3d at 262–64 (holding "DOJ need not make a showing of probable cause to issue an administrative subpoena under 18 U.S.C. § 3486"); *In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000) (same).

24

Indeed, imposing a probable cause or warrant requirement in this context would result in "the virtual end to any investigatory efforts by governmental agencies" because it would create the "unacceptable paradox" of requiring the investigating agency to show probable cause before it can undertake an investigation to determine if probable cause exists. *Id.* Courts have squarely rejected such a prospect. *Id.*; *see Doe*, 253 F.3d at 263 (citing *Powell* Court's concern "that requiring the IRS to show probable cause . . . would seriously hinder the agency's ability to conduct" tax fraud investigations).

The Tenth Circuit has held that an administrative subpoena does not violate the Fourth Amendment as long as it is "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See Becker v. Kroll*, 494 F.3d 904, 916 (10th Cir. 2007). DEA explained in support of its enforcement petition that these "reasonable relevance" factors are satisfied here. *See* DEA Pet'n Mem. at 4-6. The analysis does not change when the requested records contain private medical information. Indeed, *Becker* involved an administrative subpoena that an investigator in Utah's Medicaid Fraud Control Unit had served on the physician plaintiff, seeking medical records for forty-seven patients in connection with an investigation into potential "upcoding" of the plaintiff's Medicaid claims. *Becker*, 494 F.3d at 909, 916. The court held that the Fourth Amendment does not require an administrative subpoena to be supported by probable cause, regardless of the nature of the information sought through the subpoena. *See id.* at 916-17.[8]

---

[8] *See also Resolution Trust Corp. v. Greif*, 906 F. Supp. 1446, 1450-53 (D. Kan. 1995) (explaining that the reasonable relevance test satisfies Fourth Amendment requirements even where the information sought consists of allegedly private financial and tax information). Other Circuits have similarly applied the reasonable relevance test to medical information. *E.g.*, *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 816-19 (8th Cir. 2012)

25

Most recently, in *United States v. Zadeh*, 820 F.3d 746, 756–57 (5th Cir. 2016), the Fifth

Circuit rejected the argument that a different reasonableness standard applied to a DEA

administrative subpoena seeking medical records based on a doctor's argument that "his patients

have a reasonable expectation of privacy in medical records." *Id.* at 755. Although the court did not

question the patients' reasonable expectation of privacy, it held that the "reasonable relevance"

test remained "the appropriate standard for administrative subpoenas seeking documents." *Id.* at

757. Thus, under controlling authorities, Proposed Intervenors' asserted position that DEA must

obtain a warrant before accessing CSD prescription records is untenable and would fail as a matter

of law.

Indeed, even in the rare instances where other courts have gone beyond the reasonable

relevance test in analyzing the reasonableness of an administrative subpoena, they have not

suggested that either probable cause or a warrant was required. Instead, these courts have engaged

in a more general reasonableness analysis, weighing the government's interest against the asserted

privacy interests. *See, e.g., Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715

F.3d 631, 648-49 (7th Cir. 2013). In *Big Ridge*, the court concluded that administrative subpoenas

requiring mine operators to produce their employees' medical records did not violate the Fourth

Amendment "despite the personal nature of the medical records demanded . . . because the

government's need for the records outweighs the miners' privacy interest in the records, the

records are no longer in the miners' custody, and the Privacy Act and [agency]'s training and

---

(subpoenas issued by a U.S. Attorney's Office to residential health care facilities during a health
care fraud investigation, seeking records of goods and services provided by the facilities); *In re
Subpoena Duces Tecum*, 228 F.3d at 349-51 (subpoenas issued by U.S. Attorney's Office to
physician and healthcare corporations, seeking patient records in connection with a healthcare
fraud investigation); *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3-4 (1st Cir. 1996) (subpoena
seeking documents relating to employees' on-the-job injuries).

protocols adequately protect against unwarranted disclosure by [the agency's] agents." 715 F.3d at 652.

A similar analysis here would require the same conclusion. There is no question that DEA's investigative efforts serve the important government interest "in identifying illegal activity and in deterring future misconduct." *In re Subpoena Duces Tecum*, 228 F.3d at 351. As DEA's declarant has explained, DEA needs CSD records to further these interests because of the burden of issuing subpoenas to each and every pharmacy in the state, and the further imposition of a warrant requirement for CSD access would severely limit DEA's ability to conduct timely, effective investigations. *See* Churchwell Decl. ¶¶ 10-12.

On the other hand, any reasonable expectation of privacy in CSD prescription records is diminished, for two reasons. First, these records are held by a third party, the State of Utah. *Cf. Miller*, 425 U.S. at 443 ("the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed"); *Big Ridge, Inc.*, 715 F.3d at 649 ("Any possible Fourth Amendment right to the privacy of the miners' medical records here is limited by the fact that when MSHA sought to inspect and copy the records, they were in the custody of the mines.").

Second, Utah's collection of prescription information from pharmacists is part of the broader federal and state regulation of the legal distribution of controlled substances, which includes a significant focus on recordkeeping as a means of preventing the illegal diversion of such drugs.[9]  Because CSD prescription records are part of this heavily regulated industry, individuals'

---

[9] In addition to the federal CSA provisions discussed above, federal law includes provisions

privacy interests in these records are further diminished. *Cf. United States v. Seslar*, 996 F.2d

1058, 1061 (10th Cir. 1993) ("persons doing business in closely regulated industries have a

significantly reduced expectation of privacy."); *see also United States v. Acklen*, 690 F.2d 70, 75

(6th Cir. 1982) (pharmacists "have a reduced expectation of privacy in the records kept in

compliance with the [CSA]"); *Murphy v. State*, 115 Wash. App. 297, 312, 62 P.3d 533, 541 (2003)

( "a reasonable patient buying narcotic prescription drugs knows or should know that the State,

which outlaws the distribution and use of such drugs without a prescription, will keep careful

watch over the flow of such drugs from pharmacies to patients").[10]

   At the same time, like the federal mine inspectors in *Big Ridge*, DEA investigators are

"bound by the Privacy Act," 5 U.S.C. § 552a, "not to disclose any personal information and to take

certain precautions to keep personal information confidential." *Big Ridge, Inc.*, 715 F.3d at 650;

authorizing government access to personally identifiable health information, including for law enforcement purposes. *E.g.*, 45 C.F.R. § 164.512(f)(1)(ii)(C). Federal law also authorizes federal law enforcement to restrict disclosure of the fact that identifying health information has been sought for investigative purposes. *Id.* § 164.528(a)(2). Utah law similarly regulates recordkeeping and making such information available for law enforcement purposes. *See* Utah Code Ann. § 58-38-6(4)(vii) (conditioning license on making controlled substance records available to those authorized to inspect them), (5) (requiring records), (7)(m)-(n) (requiring licensees to make records available and allow entry into any premises for inspection); -10(3)(d) (allowing for inspection of controlled substance records pursuant to administrative subpoena), -12(1) (requiring state law enforcement to cooperate and exchange information with federal agencies charged with enforcing controlled substance laws); *id.* § 58-37f-203(3) (requiring pharmacists to submit information to CSD).

[10] Numerous courts have upheld warrantless searches of pharmacy records. *See United States v. Gonsalves*, 435 F.3d 64, 67 (1st Cir. 2006); *United States v. Nechy*, 827 F.2d 1161, 1166 (7th Cir. 1987); *United States ex rel. Terraciano v. Montanye*, 493 F.2d 682, 684 (2d Cir. 1974); *see also Murphy v. State*, 115 Wash. App. at 312, 62 P.3d 533, 541 (2003) (discussing similar decisions in *State v. Russo*, 259 Conn. 436, 790 A.2d 1132 (2002); *State v. Welch*, 160 Vt. 70, 624 A.2d 1105 (1992)). Indeed, the City of Cottonwood Heights recently filed a brief in the Tenth Circuit arguing that warrantless access to the CSD under the pre-2015 provision does not violate the Fourth Amendment because pharmacies in Utah qualify as closely regulated businesses and because individuals have a reduced expectation of privacy in records contained in the CSD. Appellees' Br., *Pyle v. Woods*, No. 15-4163, 15-4187 (10th Cir. filed May 4, 2016).

*see* Churchwell Decl. ¶ 14. Accordingly, even if this additional balancing test is applied, DEA's administrative subpoena remains reasonable under the Fourth Amendment. Proposed Intervenors' Motion to Intervene is thus futile and should be denied on that basis.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Intervene.


DATED this 31st day of August, 2016.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOHN W. HUBER
United States Attorney
DANIEL D. PRICE (Utah Bar No. 2646)
Assistant United States Attorney
JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

s/ Kathryn L. Wyer
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.   20530
Tel: (202) 616-8475
*Attorneys for Petitioner*