BENJAMIN C. MIZER, Principal Deputy Assistant Attorney General
JOHN W. HUBER, United States Attorney
DANIEL D. PRICE, Assistant United States Attorney (Utah Bar No. 2646)
JACQUELINE COLEMAN SNEAD, Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.   20530
Tel: (202) 616-8475
*Attorneys for Petitioner*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>                    Petitioner,<br><br>        v.<br><br>UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING,<br><br>                    Respondents. | CASE NO. 2:16-cv-611-DN-DBP<br><br><br>**RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF NOVEMBER 7, 2016**<br><br>Chief Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................................................................iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND .....................................................................................................................4

      1.     DEA'S ADMINISTRATIVE SUBPOENA ............................................................4

      2.     DEA'S PETITION TO ENFORCE ......................................................................5

      2.     PROCEEDINGS ON MOTION TO INTERVENE ...............................................6

STANDARD OF REVIEW ......................................................................................................7

ARGUMENT .......................................................................................................................... 8

     I.     THE MAGISTRATE JUDGE'S FAILURE TO ADDRESS MOVANTS'
            STANDING AND TO DENY INTERVENTION ON THAT BASIS WAS
            CONTRARY TO LAW ......................................................................................... 8

           A.     Movants Cannot Piggyback on State Respondents' Standing Because
                  State Respondents Also Lack Standing to Raise a Fourth Amendment
                  Defense ................................................................................................... 9

           B.     Movants Lack Standing to Assert the Fourth Amendment Rights of
                  Themselves or Their Members ............................................................... 14

     II.    THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE
            CRITERIA FOR PERMISSIVE INTERVENTION ARE SATISFIED ............. 16

CONCLUSION...................................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006)  ...................................................... 11

*Brown v. United States*, 411 U.S. 223 (1973) ........................................................................... 10

*Catlin v. Salt Lake City Sch. Dist.,*
    No. 2:08-cv-362, 2009 WL 4233793 (D. Utah Nov. 23, 2009) ........................................ 8

*City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071 (10th Cir. 2009) ................ 8, 9

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013)  ....................................................... 14, 15

*Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016)  ....................................... 8

*COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215 (10th Cir. 2016) ........................................ 14

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ......................................................... 8

*Diamond v. Charles*, 476 U.S. 54, 63-64 (1986)  ......................................................................... 9

*Doe v. Nevada Crossing, Inc.,* 920 F. Supp. 164 (D. Utah 1996) ................................................. 8

*Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, 945 F. Supp. 220 (D. Kan. 1996)  ................... 12

*EEOC v. UPS, Inc.,* 587 F.3d 136 (2d Cir. 2009) ...................................................................... 16

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167 (2000)  ..................... 8

*FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977)  ................................................................ 16

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)  ............................................ 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)  ....................................................... 10

*Massachusetts v. EPA*, 549 U.S. 497 (2007)  ............................................................................ 11

*Massachusetts v. Mellon*, 262 U.S. 447 (1923)  ........................................................................ 11

*Minnesota v. Carter,* 525 U.S. 83, 88–95 (1998)  ...................................................................... 18

*Ohio v. Thomas,* 173 U.S. 276 (1899)  ...................................................................................... 13

*Rakas v. Illinois*, 439 U.S. 128 (1978) ............................................................................ 10, 13, 17

*San Juan Cty. v. United States*, 503 F.3d 1163 (10th Cir. 2007) (en banc) ............................... 16

*Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464 (10th Cir. 1993) .......................................... 10

*SCO Grp., Inc. v. Novell, Inc.*, 692 F. Supp. 2d 1287 (D. Utah 2010) ....................................... 12

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ................................................................. 10

*South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986 (8th Cir. 2012) ....................................... 10

*State ex rel. Sullivan v. Lujan*, 969 F.2d 877 (10th Cir. 1992) .................................................. 11

*United States v. Jones*, 132 S. Ct. 945, 950 (2012) ............................................................. 10, 13

*United States v. Miller*, 425 U.S. 435 (1976) ........................................................................... 13

*United States v. Moffett*, 84 F.3d 1291 (10th Cir. 1996) ..................................................... 13, 17

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ....................................................... 5, 6, 9

*United States v. Zadeh*, 820 F.3d 746 (5th Cir. 2016) ............................................................... 5

*Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253 (4th Cir. 2011) ......................................... 13

*Wyoming ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008) ................................. 12

*Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1227 (10th Cir. 2012) ................................. 11

## **Statutes**

Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.* .................................................... 1

21 U.S.C. § 876 .................................................................................................................. *passim*

21 U.S.C. § 878 .......................................................................................................................... 4

28 U.S.C. § 636 ........................................................................................................................ 7-8

Utah Code Ann. § 58-37-10 ........................................................................................................15

Utah Code Ann. § 58-37f-301 ............................................................................................. 5, 9, 11

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(a), Petitioner the United States Department of Justice, Drug Enforcement Administration ("DEA"), hereby lodges its objections to the November 7, 2016 Order of the magistrate judge [Doc. 47], granting the motion to intervene [Doc. 19] filed by movants the American Civil Liberties Union, Equality Utah, IAFF Local 1696, and two unnamed individuals ("Movants"). In granting permissive intervention, the magistrate judge took the unprecedented step of allowing a group of organizations and individuals to intervene in an administrative subpoena enforcement proceeding despite their claiming no interest in the specific records that DEA subpoenaed—namely, prescription records in Utah's Controlled Substance Database ("CSD"), relating to a single provider whom DEA suspects of issuing prescriptions, in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, to members of a criminal organization with overseas ties. The magistrate judge's ruling should be set aside as clearly erroneous and contrary to law because it failed to address Movants' Article III standing to raise a Fourth Amendment challenge to DEA's subpoena, and because its conclusion that Movants satisfy the criteria for permissive intervention is incorrect as a matter of law.

First, the magistrate judge erred in failing to address Movants' Article III standing. Federal courts are required to ensure that a case presents an Article III case or controversy before considering the merits, and that obligation extends to ensuring that, when an outside party seeks to intervene, at least one party before the court has standing to assert the claim or defense that the proposed intervenor seeks to raise. Here, Movants sought to piggyback on the standing of the existing Respondents-- the Utah Department of Commerce and Utah Division of Professional and Occupational Licensing ("State Respondents")—to raise their Fourth Amendment defense,

but State Respondents themselves lack standing to raise a Fourth Amendment defense. As state agencies, State Respondents are not "persons" with Fourth Amendment rights, nor may they invoke the Fourth Amendment rights of Utah citizens vicariously, as *parens patriae* standing is unavailable for states' claims against the Federal Government.

Because State Respondents do not contest the administrative subpoena on any ground other than the Fourth Amendment, and because they lack standing to assert that defense, there is no genuine case or controversy between State Respondents and DEA. Accordingly, as a prerequisite to intervention, Movants must establish their own standing, but they cannot do so here because their asserted injury is purely speculative. Movants make no attempt to show that DEA is likely to initiate an investigation that concerns them, or that such an investigation would include an administrative subpoena seeking CSD records containing prescription information relating to them, and there is no basis for concluding that such a prospect is certainly impending. The magistrate judge erred by failing to undertake an analysis of standing and further erred in failing to deny intervention for lack of standing.

Second, the magistrate judge erred in finding the criteria for permissive intervention under Rule 24(b) satisfied. To the extent permissive intervention is discretionary, the magistrate judge erred in failing to consider the well-established authority emphasizing the strictly limited nature of administrative subpoena enforcement proceedings. Due to the important role that administrative subpoenas play as a tool to gather information in ongoing investigations, such proceedings are limited to determining that the challenged subpoena satisfies the "reasonable relevance" test. The fact that Movants assert no interest in the subpoenaed records at issue here should be dispositive in favor of denying intervention.

2

Moreover, Movants fail to meet the mandatory requirement for permissive intervention under Rule 24(b)—that there be a common issue of law or fact between Movants' asserted Fourth Amendment defense and any defense that State Respondents properly have asserted. Again, because State Respondents may not assert the Fourth Amendment rights of individuals against the Federal Government, there was no Fourth Amendment issue properly before the Court prior to intervention. As a result, there is no corresponding State Respondents' Fourth Amendment defense with which Movants' proposed Fourth Amendment defense could share a common issue of law or fact.

In addition, even if State Respondents could assert Fourth Amendment interests on behalf of the individuals whose prescription information appears in the subpoenaed records at issue, Movants' attempt to assert an expectation of privacy in prescription records in some generalized, abstract sense does not comport with the personal, individualized nature of a Fourth Amendment analysis and therefore cannot present a common issue of law or fact. The analysis that would be required here, given the nature of DEA's investigation, would recognize that the subpoenaed records are believed to pertain to individuals suspected of receiving prescriptions issued in violation of the CSA and of engaging in further illegal sales of the prescribed controlled substances. Such individuals could not claim a reasonable expectation of privacy in such prescription information relating to them. Therefore Movants' asserted defense based on the alleged sensitive nature of prescription information generally is based on unfounded assumptions inapplicable in this case. Movants have failed to show that the issues they seek to raise have anything in common with the records actually at issue in this proceeding. Accordingly, the magistrate judge's Order granting intervention should be set aside, and the Motion to Intervene

should be denied.

## BACKGROUND

1.      **DEA'S ADMINISTRATIVE SUBPOENA**

In May 2015, DEA initiated an investigation into the prescription practices of DEA Registrant #1, a medical provider in the Salt Lake metropolitan area who was registered to prescribe controlled substances that have been approved for medical use in accord with CSA requirements. Declaration of Diversion Investigator Robert Churchwell ("Churchwell Decl.") ¶¶ 3-4. [Doc. 8.] Based on its investigation, DEA suspects that DEA Registrant #1 has provided controlled substance prescriptions, in violation of the CSA, to individuals who, in turn, sell the controlled substances illegally, and who may be members of a criminal organization with overseas ties. *Id.* ¶ 5.

In connection with DEA's responsibility for enforcing and administering the requirements of the CSA, DEA personnel are authorized to use various law enforcement tools in aid of their investigations into possible CSA violations. *See* 21 U.S.C. § 878. Congress specifically authorized DEA to issue an administrative subpoena to "require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which [it] finds relevant or material to" such an investigation. 21 U.S.C. § 876(a). On November 12, 2015, pursuant to its authority under § 876, DEA served an administrative subpoena on Francine A. Giani, Executive Director of the Utah Department of Commerce, and Mark Steinagel, Director of DOPL, seeking prescription records in the Utah CSD associated with DEA Registrant #1, for the period beginning January 8, 2015, to the present. Churchwell Decl. ¶ 7.

4

2.      **DEA'S PETITION TO ENFORCE**

State Respondents did not comply with the subpoena, citing a state law, Utah Code Ann.

§ 58-37f-301(2)(m), which purports to require federal law enforcement officers to obtain a search

warrant in order to access CSD records. Thereafter, DEA filed a Petition to enforce its

administrative subpoena on June 14, 2016. [Doc. 2.] In support of its Petition, DEA submitted a

memorandum explaining that courts play a "strictly limited role" when reviewing a petition to

enforce an administrative subpoena. DEA Pet'n Mem. at 4 [Doc. 7] (quoting *United States v.*

*Zadeh*, 820 F.3d 746, 750 (5th Cir. 2016)).

DEA further explained that its subpoena was enforceable under the well-established

"reasonable relevance" test, which requires that "[1] the inquiry is within the authority of the

agency, [2] the demand is not too indefinite, and [3] the information sought is reasonably relevant"

to the authorized inquiry, *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). DEA Pet'n

Mem. at 4-7. Specifically, DEA explained that it was authorized under 21 U.S.C. § 876(a) to seek

records that it deemed relevant to an investigation through administrative subpoenas; that the

administrative subpoena at issue sought specific CSD records relating to a single medical provider

over a specified duration of time; and that the information sought through the subpoena was

reasonably relevant to DEA's investigation of potential CSA violations by DEA Registrant #1.

DEA Pet'n Mem. at 4-7. DEA also explained that the Utah law purporting to require law

enforcement officers to obtain search warrants in order to access CSD records was preempted by

21 U.S.C. § 876, insofar as it stood as an obstacle to DEA's exercise of its authority under that

provision to seek CSD records through administrative subpoenas. DEA Pet'n Mem. at 7-11.

State Respondents filed a memorandum in opposition to DEA's Petition on August 5,

2016. *See* State Opp. [Doc. 24.] State Respondents did not contest DEA's compliance with the reasonable relevance test of *Morton Salt Co. See id.* Nor did State Respondents identify any basis to hold that § 876 did *not* preempt the conflicting Utah Code provision insofar as that provision would prohibit DEA from obtaining CSD records using an administrative subpoena—provided that § 876 was constitutional. The sole argument raised by State Respondents in their opposition was that DEA's administrative subpoena "violate[s] the Fourth Amendment as applied to the [CSD] because of the private nature of the records contained in the [CSD]." State Opp. at 1.[1]

### 3.     PROCEEDINGS ON MOTION TO INTERVENE

On July 28, 2016, the ACLU filed a Motion to Intervene in the subpoena enforcement proceedings, on behalf of itself, the Salt Lake County Firefighters IAFF Local 1696 ("Firefighters union"), Equality Utah, and two unnamed individuals (collectively "Movants"). [Doc. 19.] Movants claim no interest in the CSD records that DEA sought in its administrative subpoena. *See* Order of Nov. 7, 2016, at 2-3. However, Movants assert that because they or their members have filled prescriptions in the State of Utah, the CSD likely contains records relating to them. Movants further argue that because the Court's ruling in this action may affect how future DEA administrative subpoenas seeking CSD records are handled, they have an interest in opposing DEA's Petition in this action on Fourth Amendment grounds.

DEA opposed the Motion to Intervene on grounds that (1) Movants failed to satisfy the criteria for intervention as of right under Rule 24(a)(1); (2) Movants failed to satisfy the criteria for permissive intervention under Rule 24(b); (3) Movants lacked standing to raise the Fourth

---

[1] Following the magistrate judge's ruling on intervention and pursuant to the parties' agreed-upon briefing schedule, State Respondents also filed a supplemental memorandum addressing their standing to raise the Fourth Amendment defense asserted in their original opposition brief. State Supp. Br. [Doc. 48.]

Amendment arguments they sought to raise; and (4) Movants' proposed objections to DEA's subpoena on Fourth Amendment grounds were futile on the merits. [Doc. 31.]

Following a hearing, the magistrate judge denied intervention as of right under Rule 24(a) but granted permissive intervention under Rule 24(b). Order of Nov. 7, 2016, at 2-3. [Doc. 47.] The magistrate judge held that "Movants assert a claim or defense that shares a common question of law or fact with a claim or defense asserted by the Respondents—that the Fourth Amendment protects UCSD records." *Id.* at 4. The magistrate judge further concluded that Movants "are uniquely situated to make arguments, contribute to the underlying legal issues and inform the Court on privacy related matters." *Id.* The magistrate judge did not address the issue of Movants' standing.

## STANDARD OF REVIEW

Rule 72(a) provides, in relevant part, that "[a] party may serve and file objections to [a magistrate judge's] order [on a pretrial matter not dispositive of a party's claim or defense] within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (a district judge "may reconsider any pretrial matter" that has been decided by a designated magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"). If a party does not appeal a magistrate judge's order through this procedure, issues may be deemed waived for purposes of any later appeal from final judgment. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").

Here, the Court referred this case to the magistrate judge pursuant to 28 U.S.C.

§ 636(b)(1)(B), to handle the case "up to and including R&R on all dispositive matters." Am. Dkt. Text Order of Aug. 12, 2016 [Doc. 28]. "Under the rules of this court a matter referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B) also includes all matters properly considered under 28 U.S.C. § 636(b)(1)(A)." *Doe v. Nevada Crossing, Inc.,* 920 F. Supp. 164, 166 (D. Utah 1996); *see* DUCivR 72-2(c). Thus, a magistrate judge's orders on nondispositive matters, pursuant to such a referral, are subject to objections under Rule 72(a). *See Doe*, 920 F. Supp. at 165-66; *see also Catlin v. Salt Lake City Sch. Dist.,* No. 2:08-cv-362, 2009 WL 4233793, at *1 (D. Utah Nov. 23, 2009) (recognizing that a magistrate judge's order on a nondispositive matter, pursuant to a § 636(b)(1)(B) referral, was subject to objections under Rule 72(a)).

## ARGUMENT

### I.   THE MAGISTRATE JUDGE'S FAILURE TO ADDRESS MOVANTS' STANDING AND TO DENY INTERVENTION ON THAT BASIS WAS CONTRARY TO LAW

A court has "'an obligation to assure [itself]' of litigants' standing under Article III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180 (2000)). In addition, standing must be established separately "for each claim [a party] seeks to press." *Id.* at 335 (2006); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 551 (10th Cir. 2016) (recognizing that standing to assert a constitutional challenge to a statute did not suffice to challenge the same statute under the Americans with Disabilities Act). A movant seeking to intervene in an existing case may be able to rely on "piggyback" standing if an existing party on the same side of the case already has standing to raise the same claim. *City of Colo. Springs v. Climax Molybdenum Co.,* 587 F.3d 1071, 1079 (10th Cir. 2009). However, where there is no case or controversy with the original party on the

8

intervenor's side of the case, an intervenor must establish its own standing. *See Diamond v. Charles*, 476 U.S. 54, 63-64 (1986) (dismissing intervenor's appeal for lack of standing).

The magistrate judge therefore had an obligation—which it failed to meet—to consider Movants' standing to raise their proposed Fourth Amendment defense as an initial matter when determining whether to allow intervention. As discussed below, Movants here cannot properly rely on piggyback standing, nor can they establish standing independently. The Court therefore should conclude that the failure to deny intervention for lack of standing was contrary to law.

### A.   Movants Cannot Piggyback on State Respondents' Standing Because State Respondents Also Lack Standing to Raise a Fourth Amendment Defense

Movants cannot rely on piggyback standing to assert a Fourth Amendment defense in this case. *Cf. City of Colo. Springs*, 587 F.3d at 1079. State Respondents effectively concede that DEA's administrative subpoena complies with all requirements of the "reasonable relevance" test that governs enforceability of administrative subpoenas. *See Morton Salt Co.*, 338 U.S. at 652. State Respondents also do not dispute that Utah Code Ann. § 58-37f-301(2)(m), by purporting to impose a warrant requirement on federal law enforcement officers seeking to access CSD records, conflicts with 21 U.S.C. § 876, which authorizes DEA to obtain records deemed relevant to an investigation through an administrative subpoena.

Rather, the sole defense that State Respondents have advanced in opposition to DEA's subpoena is the claim that such subpoenas "violate the Fourth Amendment as applied to the [CSD] because of the private nature of the records in the [CSD]." State Opp. at 1. For the reasons identified below, however, State Respondents lack Article III standing to raise that issue.

First, State Respondents lack standing to assert a Fourth Amendment defense on their own behalf because they can identify no cognizable injury in fact for purposes of such a defense. An

"injury in fact," for purposes of Article III standing, is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation and citation omitted). Here, State Respondents have no "legally protected interest" under the Fourth Amendment. Indeed, the lack of such an interest is manifest in the Fourth Amendment text, which protects the "rights of the people." U.S. Const. amend. IV. State Respondents are not "people" within the meaning of the Constitution. *Cf. South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986, 990–91 (8th Cir. 2012) ("The State is not a 'person' within the meaning of the Fifth Amendment's Due Process Clause." (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 323–24 (1966))). State Respondents thus lack Article III standing to invoke the Fourth Amendment on their own behalf.[2]

Second, State Respondents cannot invoke the Fourth Amendment on behalf of Utah citizens. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223, 230 (1973). Thus, only a person whose reasonable expectation of privacy has been invaded may challenge that invasion on Fourth Amendment grounds. *See United States v. Jones*, 132 S. Ct. 945, 950 (2012).

Although in some circumstances, a state may assert "*parens patriae*" standing to raise a claim on behalf of its citizens, *see Satsky v. Paramount Commc'ns, Inc.,* 7 F.3d 1464, 1469 (10th Cir. 1993), State Respondents may not do so here. Rather, the Supreme Court has held that a state

---

[2] The Supreme Court has recognized that, when people invoke Fourth Amendment rights, the question of whether they have a "legally protected interest," for purposes of Article III standing, is intertwined with whether they have a legitimate expectation of privacy at stake under substantive Fourth Amendment law. *See Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978). Here, however, State Respondents lack Article III standing for reasons that require no substantive Fourth Amendment analysis. The determination of State Respondents' standing should not be deferred, particularly given that this determination controls whether Movants must establish standing independently.

may not assert *parens patriae* standing in order to challenge a federal statute's alleged violation of state citizens' rights. *See Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923) ("[I]t is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the Federal Government. In that field it is the United States, and not the State, which represents them as *parens patriae*."); *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (*Mellon* "prohibits" allowing a state "to protect her citizens from the operation of federal statutes"). The Tenth Circuit therefore held that the State of Wyoming could not challenge a federal land exchange on the basis that the exchange violated the rights of Wyoming citizens. *State ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882–83 (10th Cir. 1992); *see also Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1227 (10th Cir. 2012) (state conceded it lacked *parens patriae* standing to challenge federal regulation restricting snowmobile use in national parks). Similarly here, State Respondents cannot rely on *parens patriae* standing to challenge DEA's administrative subpoena based on an alleged violation of its citizens' Fourth Amendment rights.[3]

Third, the existence of a state law that conflicts with the plain terms of § 876 does not confer standing for State Respondents to raise an "as-applied" Fourth Amendment defense. As indicated above, State Respondents do not deny that the warrant requirement in Utah Code Ann. § 58-37f-301(2)(m) conflicts with DEA's authority under § 876 to seek records through an

---

[3] Movants err in suggesting that State Respondents may assert the Fourth Amendment rights of Utah citizens under the third party standing doctrine that, for example, allows doctors or parents to assert interests of their patients or children. Mov. Reply at 11. [Doc. 35.] Movants cite no instance where a court deemed a state agency to have the "close relationship" with state citizens required to invoke standing under this doctrine. *See Aid for Women v. Foulston*, 441 F.3d 1101, 1111–12 (10th Cir. 2006). Rather, a state's assertion of its citizens' rights is governed by the *parens patriae* doctrine. Tellingly, State Respondents do not attempt to invoke the third party standing doctrine.

administrative subpoena.[4]  In light of that conflict, there is no genuine dispute that the state law is preempted. However, in their supplemental brief, State Respondents attempt to resurrect a controversy over the preemption question on the theory that DEA's use of an administrative subpoena "interfere[s]" with State Respondents' "power to create and enforce a legal code." State Supp. Br. at 3. In other words, they seek to identify the same statutory conflict that results in preemption as an injury for purposes of their as-applied Fourth Amendment challenge to § 876.

In support of this notion, State Respondents cite *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008). The circumstances in *Crank*, however, were different. There, the State of Wyoming had enacted an "expungement" procedure whereby individuals with domestic violence convictions could regain eligibility for state concealed carry permits. *Id.* at 1238-39. Wyoming sought to stop the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") from notifying firearm dealers within the state that Wyoming concealed carry permits were ineffective, based on ATF's interpretation of the state law vis-à-vis a federal statute. *Id.* at 1239. Wyoming did not seek to raise a Fourth Amendment or other constitutional claim; rather, it claimed that ATF's actions were based on erroneous statutory interpretations. In considering the State's standing, the Tenth Circuit held that Wyoming had a sovereign interest in creating and enforcing a legal code with respect to individuals within its jurisdiction, and that ATF's actions in interpreting Wyoming's law "interfere[d] with Wyoming's ability to enforce its legal code." *Id.* at 1242.

Here, in contrast, DEA has not interpreted Utah law in a manner contrary to the State's

---

[4]  State Respondents thus have conceded this issue. *See SCO Grp., Inc. v. Novell, Inc.,* 692 F. Supp. 2d 1287, 1295 (D. Utah 2010) (deeming issue conceded as a result of plaintiff's failure to respond); *see also Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, 945 F. Supp. 220, 224 (D. Kan. 1996) (plaintiff "concedes the validity of this argument by failing to respond to it").

interpretation, nor has it sought to interfere with Utah's enforcement of its legal code with respect to Utah citizens. Rather, DEA seeks to enforce its own administrative subpoena pursuant to a federal law, 21 U.S.C. § 876. The fact that DEA asserts the authority granted by Congress to serve an administrative subpoena rather than abide by a warrant requirement in state law does not affect Utah's ability to enforce its own laws because "'federal officers who are discharging their duties in a state . . . are not subject to the jurisdiction of the state'" to begin with. *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 270 (4th Cir. 2011) (quoting *Ohio v. Thomas,* 173 U.S. 276, 283 (1899)). While the statutory conflict would give State Respondents standing to challenge DEA's statutory interpretations (though they raise no such challenge here), it does not create an injury in fact with respect to their proposed as-applied Fourth Amendment challenge. Rather, an as-applied Fourth Amendment challenge, if it were available at all, would be an entirely separate potential defense to enforcement of DEA's administrative subpoena, unrelated to the statutory conflict.[5]  State

---

[5]  To the extent State Respondents seek to suggest that resolution of their proposed as-applied Fourth Amendment challenge is a necessary antecedent to resolution of the preemption issue, they are incorrect. Contrary to State Respondents' characterization, there can be no Fourth Amendment challenge to § 876 "as applied to the CSD" because "the Fourth Amendment protects people, not places." *Jones*, 132 S. Ct. at 950. Thus, any as-applied Fourth Amendment challenge to a statute authorizing searches must focus on the statute's application to a *person*, not to a state database, and must be asserted *by* that person, based on *that person's* "reasonable expectation of privacy." *Id*. The individualized nature of the analysis necessarily precludes categorical holdings based solely on the location or items searched. *See Rakas*, 439 U.S. at 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person[] . . . has not had any of his Fourth Amendment rights infringed"); *United States v. Moffett*, 84 F.3d 1291, 1293 (10th Cir. 1996) (denying motion to suppress Amtrak train manifest obtained through DEA administrative subpoena because defendant lacked reasonable expectation of privacy in manifest); *cf. United States v. Miller*, 425 U.S. 435, 444-46 (1976) (bank depositor could not challenge subpoenas issued to bank because he had no expectation of privacy in subpoenaed records). Thus, even if a person's as-applied Fourth Amendment challenge to a particular subpoena succeeded, it could not render § 876 void *ab initio*, either in whole or in part. Such a challenge therefore would have no bearing on a preemption analysis involving § 876.

Respondents therefore cannot use the existence of a conflicting state law as a back-door means of raising a Fourth Amendment defense that they otherwise lack standing to raise. To the contrary, once it is recognized that State Respondents lack standing to raise the only defense that they have sought to raise, there is no longer any actual case or controversy between DEA and State Respondents at all. Accordingly, Movants cannot invoke piggyback standing.

### B.   Movants Lack Standing to Assert the Fourth Amendment Rights of Themselves or Their Members

In proceedings on their Motion to Intervene, Movants made no effort to establish Article III standing in their own right, nor could they. As indicated above, Movants assert no interest in the subpoenaed CSD records at issue in this action. Rather, their only interest relates to hypothetical future DEA subpoenas that, they speculate, might seek their prescription records in Utah's CSD in the course of some future DEA investigation. Such "allegations of *possible* future injury are not sufficient" to establish standing; rather, as the Supreme Court has "repeatedly reiterated," "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal quotation omitted); *see also COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1222–23 (10th Cir. 2016) (holding plaintiff lacked standing because the asserted potential future injury was speculative and not "certainly impending").

While Movants claim they or some of their members have filled prescriptions in Utah and that their records are therefore in the CSD, they neither assert that they or their medical providers are, or are likely to be, targets of a DEA investigation, nor establish that DEA will ever seek their prescription records from the CSD. Such "highly speculative" assertions in any event would not suffice to establish standing. *See, e.g.*, *Clapper*, 133 S. Ct. at 1147-48 (rejecting plaintiffs' assertion that their communications would be intercepted by a government surveillance program

14

"at some point in the future" as insufficient to demonstrate a "certainly impending" injury because the notion that the government would target them, in particular, was "highly speculative").

Movants' further assertion that they or their members might be "chilled" in seeking medical treatment if they knew that DEA could obtain CSD prescription records with an administrative subpoena, *see* Mov. Br. at 7, also fails to establish their standing. The contention that Movants might change their behavior in the future, when nothing suggests they did so in the past, is particularly implausible here, given that before May 2015, there was no dispute that DEA could obtain CSD prescription records without a warrant, and that, even now, both DEA and Utah law enforcement can seek the same prescription records through administrative subpoenas served directly on pharmacies. Churchwell Decl. ¶ 10 (though observing that such an effort would be much more burdensome to DEA); Utah Code Ann. § 58-37-10(3)(d).

In any event, even if the allegation were plausible, the Supreme Court has explained that plaintiffs cannot "manufacture standing" by undertaking specific measures, even "as a reasonable reaction to a risk of harm," where that harm is "not certainly impending." *See Clapper*, 133 S. Ct. at 1143, 1151. In *Clapper*, the Court thus concluded that the plaintiffs could not establish standing by incurring costs in order to avoid surveillance because a contrary ruling would "water[] down the fundamental requirements of Article III." *Id.* at 1151-52. Similarly here, Movants cannot "manufacture standing" by suggesting that they may change their behavior due to the alleged risk that DEA might someday subpoena CSD prescription records relating to them. Moreover, given law enforcement authority to seek the same prescription records through administrative subpoenas served on pharmacies, any such chill is not fairly traceable to the possibility that DEA might seek such information from the CSD. *See id.* at 1143 (where the same asserted future injury might be

inflicted in another way, it was not fairly traceable to the challenged statutory provision).

Accordingly, the magistrate judge's order granting Movants' motion to intervene is contrary to

law and should be set aside because neither State Respondents nor Movants have Article III

standing to assert a Fourth Amendment defense. [6]

## II.   THE MAGISTRATE JUDGE ERRED IN CONCLUDING THAT THE CRITERIA FOR PERMISSIVE INTERVENTION ARE SATISFIED

The magistrate judge's conclusion that the criteria for permissive intervention are

satisfied here is also clearly erroneous and contrary to law. As an initial matter, to the extent

permissive intervention is discretionary, the summary nature of administrative subpoena

enforcement proceedings weighs heavily against allowing intervention by those, such as

Movants, who claim no interest in the subpoenaed records. *Cf. EEOC v. UPS, Inc.,* 587 F.3d 136,

139 (2d Cir. 2009) (recognizing court's "extremely limited" role in such proceedings); *FTC v.

Texaco, Inc.,* 555 F.2d 862, 871–72 (D.C. Cir. 1977) (similar); *see also San Juan Cty. v. United

States*, 503 F.3d 1163, 1191 (10th Cir. 2007) (en banc) (recognizing that the Federal Rules of Civil

Procedure could be limited in subpoena enforcement context in light of the limited nature of such

proceedings). Significantly, neither Movants nor the magistrate judge have identified any

precedent for allowing intervention in similar circumstances.

In addition, the Order fails to identify a genuine "common question of law or fact" in

State Respondents' and Movants' asserted defenses. Fed. R. Civ. P. 24(b)(1)(B). The Order

proposes as a common issue whether "the Fourth Amendment protects UCSD records." Order at

---

[6] Of the three organizational Movants—the Firefighters' union, Equality Utah, and ACLU— none
has identified a member with standing in his or her own right, as would be required to establish
associational standing. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).
Indeed, Equality Utah apparently has no members. Thus, the organizations also lack standing.

4. However, State Respondents' Fourth Amendment defense relates to the CSD records at issue in this action, whereas Movants' defense relates to their own CSD records, which, they speculate, may be subpoenaed in the future. Because different records and different individuals are at issue in State Respondents' and Movants' respective defenses, the as-applied Fourth Amendment analysis with respect to those defenses—including the question of whether the person on whose behalf a Fourth Amendment defense is asserted has a legitimate expectation of privacy at stake—is also different. *See Rakas*, 439 U.S. at 134; *Moffett*, 84 F.3d at 1293.

As an initial matter, because State Respondents, unlike Movants and their members, are state agencies, they have no Fourth Amendment rights that *can* be violated.[7] Thus, an analysis of State Respondents' as-applied Fourth Amendment claim would have to conclude at the outset that there is no Fourth Amendment violation as applied to State Respondents, without reaching any question of law or fact that might be common to Movants' argument.

Moreover, even if State Respondents were able to raise an as-applied Fourth Amendment defense on behalf of the individuals identified in the subpoenaed CSD records at issue, any analysis of those individuals' legitimate expectation of privacy would still require individualized assessments. For example, DEA has explained its suspicion that the individuals receiving prescriptions from DEA Registrant #1 are "members of a criminal organization" who were "in turn selling the controlled substances illicitly." Churchwell Decl. ¶ 5. To the extent the CSD records relating to these individuals do not reflect valid prescriptions for genuine medical conditions, Movants' arguments regarding a legitimate expectation of privacy in prescription records, which

---

[7] Indeed, as explained above, State Respondents lack standing to assert Fourth Amendment rights on behalf of the individuals whose prescription information appears in the subpoenaed CSD records.

assume that the records reflect accurate medical information, are inapplicable. Indeed, if these individuals are obtaining prescription drugs in violation of the CSA, that fact alone likely precludes them from establishing a reasonable expectation of privacy in the subpoenaed records. *E.g., Minnesota v. Carter,* 525 U.S. 83, 88–95 (1998) (holding defendants had no legitimate expectation of privacy in premises used to conduct illegal drug transaction). In addition, Movants seek to raise issues regarding the sensitivity of specific prescriptions, but nothing in the record suggests that the subpoenaed records include any such prescriptions. In light of these differences, Movants' proposed Fourth Amendment defense does not raise common issues that could justify permissive intervention. Instead, the differences in the analyses of State Respondents' and Movants' legitimate expectations of privacy would require separate consideration that likely would cause delay and prejudice in the adjudication of this action, not to mention delay in the completion of DEA's underlying investigation. The Court should therefore conclude that the Order granting permissive intervention was in error.

## <u>CONCLUSION</u>

For the reasons stated herein, Petitioner respectfully requests that the Court set aside the magistrate judge's Order of November 7, 2016, and enter an order denying Movants' Motion to Intervene.

DATED this 21st day of November, 2016.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOHN W. HUBER
United States Attorney
DANIEL D. PRICE (Utah Bar No. 2646)
Assistant United States Attorney

18

JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

<u>s/ Kathryn L. Wyer</u>
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.   20530
Tel: (202) 616-8475
*Attorneys for Petitioner*

19