BENJAMIN C. MIZER, Principal Deputy Assistant Attorney General
JOHN W. HUBER, United States Attorney
DANIEL D. PRICE, Assistant United States Attorney (Utah Bar No. 2646)
JACQUELINE COLEMAN SNEAD, Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.   20530
Tel: (202) 616-8475
*Attorneys for Petitioner*

_____

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>Petitioner,<br>v.<br><br>UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING,<br><br>Respondents. | CASE NO. 2:16-cv-611-DN-DBP<br><br>**EVIDENTIARY OBJECTIONS**<br><br>Chief Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>Petitioner,<br>v.<br><br>AMERICAN CIVIL LIBERTIES UNION et al.,<br><br>Respondent-Intervenors. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

EVIDENTIARY OBJECTIONS .............................................................................. 1

I.  THE LIMITED NATURE OF ADMINISTRATIVE SUBPOENA ENFORCMENT
    PROCEEDING WEIGHS AGAINST CONSIDERATION OF EXTRINSIC EVIDENCE,
    PARTICULARLY WHERE NO FACTUAL DISPUTE HAS BEEN IDENTIFIED ...... 1

II. THE DECLARATIONS OF RESPONDENT-INTERVENORS' PROPOSED EXPERTS
    ARE INADMISSIBLE UNDER FED. R. EVID. 401, 402, 702, AND 703 .................... 3

    A.  Statements Regarding the Sensitivity of Specific Prescription Information Are
        Not Relevant or Reliable Because None of the Purported Experts Have Reviewed
        the Subpoenaed CSD Records at Issue in This Action .......................................... 3

    B.  Opinions Regarding the Impact of Disclosure of Prescription Information to Law
        Enforcement Officers Are Speculative, Unreliable, and Not Relevant to Any
        Factual Dispute in This Case ................................................................................... 5

    C.  Opinions Regarding Statutory Interpretation, Legislative History, and Other
        Issues of Law, Including Whether a Reasonable Expectation of Privacy Exists,
        Are Not Proper Subjects of Expert Testimony ...................................................... 6

    D.  Statements and Opinions Regarding Medical Confidentiality Generally Are Not
        Relevant to the Legal Issue of Whether an Individual Has a Reasonable
        Expectation of Privacy in CSD Prescription Records or Whether DEA's
        Administrative Subpoena Should Be Enforced ...................................................... 8

    E.  Other Miscellaneous Opinions Are Conclusory, Vague, Without Support, and
        Irrelevant ................................................................................................................. 9

III. EXHIBITS G-J, L, AND N-P CONSIST OF NEWSPAPER ARTICLES AND OTHER
     REPORTS THAT ARE NOT RELEVANT AND ARE INADMISSIBLE HEARSAY
     UNDER RULES 401, 402, 801, AND 802 ...................................................................... 9

IV.  THE DRUG SUMMARIES INCLUDED IN EXHIBIT C HAVE NOT BEEN SHOWN
     TO BE RELEVANT TO THIS ACTION AND ARE INADMISSIBLE UNDER RULES
     401 AND 402 ................................................................................................................. 12

V.   THE ADMINISTRATIVE SUBPOENA REPRODUCED IN EXHIBIT M IS
     IRRELEVANT AND INADMISSIBLE ........................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Am. Airlines Inc. v. Platinum World Travel*, 717 F. Supp. 1454 (D. Utah 1989) .......................... 6

*Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apts., LLC*,
    No. 10-CV-02516, 2014 WL 4651643 (D. Colo. Sept. 18, 2014) ................................. 12

*Bammerlin v. Navistar Int'l Transp. Corp.,* 30 F.3d 898 (7th Cir.1994) ...................................... 6

*Baumholser v. Amax Coal Co.,* 630 F.2d 550 (7th Cir. 1980) ..................................................... 12

*Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015) ................................................ 8

*Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C. Cir. 1997) .......................... 6

*Clements-Jeffrey v. City of Springfield*,
    No. 3:09-CV-84, 2011 WL 3207363 (S.D. Ohio July 27, 2011) ...................................... 7

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .................................................. 3, 4

*Donaldson v. United States*, 400 U.S. 517 (1971) ....................................................................... 2

*EEOC v. UPS, Inc.*, 587 F.3d 136 (2d Cir. 2009) ........................................................................ 1

*Friend v. Am. Nat'l & Cas. Co.,*
    No. 1:15CV79DAK, 2016 WL 4098583 (D. Utah July 28, 2016) ................................... 6

*Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533 (10th Cir. 1996) .................... 11

*In re Ocean Bank*, 481 F. Supp. 2d 892 (N.D. Ill. 2007) ............................................................ 6

*Johnson v. Bush*, No. 00-3542-CIV, 2002 WL 34355953 (S.D. Fla. Apr. 19, 2002) ................... 7

*Mayor of City of Phila. v. Educ. Equality League*, 415 U.S. 605 (1974) ..................................... 9

*McGill v. Corr. Healthcare Companies, Inc.,*
    No. 13-CV-01080, 2014 WL 6513185 (D. Colo. Nov. 20, 2014) ................................... 10

*Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154 (D.C. Cir. 1995) ........................... 10

*New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646 (10th Cir. 1989) ........................ 9-10

*N.E.W. v. Kennard*, 952 F. Supp. 714 (D. Utah 1997) .............................................................. 10

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983) .......................................................... 6

*San Juan Cty. v. United States*, 503 F.3d 1163 (10th Cir. 2007) (en banc) .................................. 2

*United States v. Chapman*, No. 15-2143, 2016 WL 6205744 (10th Cir. Oct. 24, 2016) .............. 3

*United States v. Nacchio*, 555 F.3d 1234 (10th Cir. 2009) ........................................................... 5

*United States v. Zadeh*, 820 F.3d 746 (5th Cir. 2016) .................................................................. 1

**Statutes**

Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*.................................................... 11

21 U.S.C. § 876 ............................................................................................................................... 1

Utah Code Ann. § 58-37f-301 ...................................................................................................... 10

Utah Code Ann. § 58-38-10 ........................................................................................................... 5

Utah Code Ann. § 58-38-6 ............................................................................................................. 5

Utah Code Ann. § 58-38-10 ........................................................................................................... 5

Compiled Statutes of Utah 1907 § 1727 ....................................................................................... 5

Compiled Laws of the State of Utah 1917 §§ 4420-4421 ............................................................. 5

Revised Statutes of Utah 1933 § 79-12-24 ................................................................................... 5

Utah Code Ann. §§ 79-10a-1, -8, -21 (1943) ................................................................................ 5

## EVIDENTIARY OBJECTIONS

Pursuant to DUCivR 7-1(b)(1)(B), Petitioner the United States Department of Justice, Drug Enforcement Administration ("DEA") submits the following evidentiary objections to the Declaration of Deborah C. Peel [Doc. 25-1], the Declaration of Mark A. Rothstein [Doc. 25-2], the Declaration of Robert Baker [Doc. 25-3], and other proposed evidence [Docs. 25-6; 25-10 to -12; 25-15; 25-16, at 7; 25-17 to -19] submitted by respondent-intervenors the American Civil Liberties Union, Equality Utah, IAFF Local 1696, and two unnamed individuals ("Respondent-Intervenors") in opposition to DEA's Petition to Enforce an administrative subpoena served upon the Utah Department of Commerce and the Utah Division of Occupational and Professional Licensing ("DOPL") (collectively, "State Respondents") pursuant to 21 U.S.C. § 876(c).

## I. THE LIMITED NATURE OF ADMINISTRATIVE SUBPOENA ENFORCMENT PROCEEDING WEIGHS AGAINST CONSIDERATION OF EXTRINSIC EVIDENCE, PARTICULARLY WHERE NO FACTUAL DISPUTE HAS BEEN IDENTIFIED

As an initial matter, the 445 pages of purported evidence, including the three declarations by putative experts, that Respondent-Intervenors have attached to their Memorandum in Opposition to DEA's Petition to Enforce, *see* Doc. 25-1 to 25-19, are inappropriate in light of the limited nature of this administrative subpoena enforcement proceeding. *Cf. United States v. Zadeh*, 820 F.3d 746, 750 (5th Cir. 2016) (courts play a "strictly limited role" in administrative subpoena enforcement); *EEOC v. UPS, Inc*., 587 F.3d 136, 139 (2d Cir. 2009) ("district court's role in a proceeding to enforce an administrative subpoena is extremely limited" (internal quotation omitted)). The Local Rules of this Court make clear that discovery is not normally contemplated in an action to enforce an administrative subpoena. *See* DUCivR 16.1(a)(1)(A)(vii) (exempting actions to enforce administrative subpoenas from the scheduling requirements of

Rule 16, which focus primarily on discovery); *see also San Juan Cty. v. United States*, 503 F.3d

1163, 1191 (10th Cir. 2007) (en banc) (discussing Supreme Court's recognition that Rule 81(a)(3),

which makes the Federal Rules of Civil Procedure applicable to administrative subpoena

enforcement proceedings, "was not intended to impair a summary enforcement proceeding" so

long as the rights of the subpoenaed party are protected, and that courts are "expressly permit[ted]"

to limit application of the Rules in enforcement proceedings (quoting *Donaldson v. United States*,

400 U.S. 517, 528-29 (1971))). Moreover, the terms of Respondent-Intervenors' intervention

preclude their participation in any discovery that might be authorized. Order of Nov. 7, 2016, at 6.

While these limitations do not directly address the submission of declarations and exhibits

attached to a brief, they do indicate a recognition that administrative subpoena enforcement

proceedings are not likely to involve disputes of fact. Indeed, nowhere in Respondent-Intervenors'

brief do they identify a factual dispute raised by DEA's Petition to Enforce its administrative

subpoena that their proposed evidentiary submissions are intended to address.

Respondent-Intervenors' submissions are inappropriate for this reason alone. The

submission of declarations from purported experts is particularly inappropriate in this context. In

the absence of discovery, DEA has no opportunity to depose these individuals.[1] Specific

objections to the admissibility of Respondent-Intervenors' evidentiary submissions under the

Federal Rules of Evidence are set forth below.

---

[1] The prospect of deposing purported experts whose testimony has no connection to the specific CSD records at issue in this proceeding, or of presenting countervailing testimony of other experts, threatens to take this limited proceeding, which was filed in order to enforce a single DEA administrative subpoena, well beyond its intended scope. DEA therefore does not seek to depose Respondent-Intervenors' purported experts at this time. However, DEA reserves the right to depose these individuals, and to present countervailing evidence, including expert testimony, should the Court hold that the declarations of Respondent-Intervenors' purported experts are admissible.

## II.     THE DECLARATIONS OF RESPONDENT-INTERVENORS' PROPOSED EXPERTS ARE INADMISSIBLE UNDER FED. R. EVID. 401, 402, 702, AND 703

Respondent-Intervenors' submitted evidence includes the declarations of three purported experts: Dr. Deborah Peel; Mark Rothstein; and Dr. Robert Baker. Under Rule 702(a), expert testimony may be admissible if it will "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).[2] However, before admitting expert testimony, the district court must ensure that the proposed testimony "1) has 'a reliable basis in the knowledge and experience of [the expert's] discipline,' and 2) is 'relevant to the task at hand.'" *United States v. Chapman*, No. 15-2143, 2016 WL 6205744, at *3 (10th Cir. Oct. 24, 2016) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). The testimony set forth in the declarations of Dr. Peel, Mr. Rothstein, and Dr. Baker is inadmissible for a number of reasons, as set forth below.

### A.     Statements Regarding the Sensitivity of Specific Prescription Information Are Not Relevant or Reliable Because None of the Purported Experts Have Reviewed the Subpoenaed CSD Records at Issue in This Action

Numerous statements in the declarations of Dr. Peel and Mr. Rothstein are inadmissible because they express opinions regarding prescriptions for specific controlled substances, but they identify no basis to assert that the CSD records requested by DEA's administrative subpoena contain information regarding such prescriptions. Under Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

---

[2] Rule 702 states that an individual who "is qualified as an expert by knowledge, skill, experience, training, or education" may provide expert testimony if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

3

(b) the fact is of consequence in determining the action." Fed. R. Evid. 401. An expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. However, the expert must "reliably appl[y]" his expertise "to the facts of the case." Fed. R. Civ. 702(d). In other words, there must be a sufficient "fit" between the proposed expert testimony and the facts of the case. *Daubert*, 509 U.S. at 591.

Here, neither Dr. Peel nor Mr. Rothstein claims to have seen the CSD records requested by the DEA administrative subpoena at issue in this action, nor do they claim to have learned the content of those records in some other manner. Peel Decl. ¶ 2; Rothstein Decl. ¶ 2; Baker ¶ . In addition, neither Dr. Peel nor Mr. Rothstein claims to be familiar with the medical conditions or diagnoses of individuals whose prescription information appears in the subpoenaed records. Opinions regarding prescriptions for controlled substances that were not prescribed by DEA Registrant #1 during the time period identified in DEA's subpoena are not relevant to this action, and the fact that the putative experts have no idea what the contents of the subpoenaed records actually are renders their opinions unreliable. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (internal quotation omitted)).

The following categories of statements are inadmissible on this basis:

- Statements that in "some" or "many" instances, the disclosure of prescription information will identify an underlying medical condition. Peel Decl. ¶ 3; Rothstein Decl. ¶ 10.

- Statements that "many" medical conditions treated with controlled substances are sensitive. Peel Decl. ¶¶ 4, 5, 6.

- Statements identifying specific examples of prescriptions or medical conditions that are asserted to be particularly sensitive. Peel Decl. ¶¶ 5, 6, 14, 15.

4

- Opinions regarding alleged "public health crises" in opioid pain medications and pain treatment. Peel Decl. ¶¶ 8, 9, 18.

   **B.    Opinions Regarding the Impact of Disclosure of Prescription Information to Law Enforcement Officers Are Speculative, Unreliable, and Not Relevant to Any Factual Dispute in This Case**

The declarations of Dr. Peel and Mr. Rothstein also contain speculative and unreliable opinions regarding the supposed harms caused by warrantless, "easy," or "[n]eedlessly expansive" law enforcement access to prescription information. Peel Decl. ¶¶ 17, 18, 19; Rothstein Decl. ¶ 9. Rule 702(b) requires that expert testimony be based on "sufficient facts or data." However, neither Dr. Peel nor Mr. Rothstein identifies a methodology that led them to identify the specified harms. Dr. Peel cites her "experience as a practicing physician" and her "expertise in medical privacy issues," without further explanation. Peel Decl. ¶ 17.[3] Mr. Rothstein cites no basis for his conclusion. Rothstein Decl. ¶ 9. Neither putative expert identifies any specific research, studies, or evidence supporting their assertions. Nor do they make any effort to reconcile their assertions of harm with the fact that law enforcement officers have long had warrantless access to prescription information.[4] Indeed, despite the fact that Utah added a warrant requirement for access to CSD records in 2015, Utah law continues to allow law enforcement officers to use administrative subpoenas to gain access to prescription records directly from a pharmacy. Utah Code Ann. § 58-38-10(3)(d). The opinions of Dr. Peel and Mr. Rothstein on this issue appear to be pure

---

[3] When an expert witness relies "solely on experience," the witness "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

[4] As discussed further below, Utah law has provided for warrantless inspection of prescription records since 1907. Compiled Statutes of Utah 1907 § 1727; Compiled Laws of the State of Utah 1917 §§ 4420-4421; Revised Statutes of Utah 1933 § 79-12-24; Utah Code Ann. §§ 79-10a-1, -8, -21 (1943); Utah Code Ann. §§ 58-38-6(4)(vii), (7)(m)-(n); 58-38-10(3)(d).

speculation that is not plausible, given the history of law enforcement access. Moreover,

Respondent-Intervenors have not explained the relevance of these opinions to any disputed issue

of fact.[5]  These opinions therefore are inadmissible under Rule 702.

### C.  Opinions Regarding Statutory Interpretation, Legislative History, and Other Issues of Law, Including Whether a Reasonable Expectation of Privacy Exists, Are Not Proper Subjects of Expert Testimony

The declarations contain inadmissible opinions and characterizations regarding issues of

law. The meaning of the law "is not a question of fact, to be resolved by the [factfinder] after a

battle of experts," but is instead "a question of law, to be resolved by the court." *Bammerlin v.*

*Navistar Int'l Transp. Corp.,* 30 F.3d 898, 900 (7th Cir.1994). Thus, "[i]t is well established that an

expert's 'legal conclusions are inadmissible and of no effect.'" *Friend v. Am. Nat'l & Cas. Co.,*

No. 1:15CV79DAK, 2016 WL 4098583, at *5 (D. Utah July 28, 2016) (quoting *Am. Airlines Inc.*

*v. Platinum World Travel*, 717 F. Supp. 1454, 1456 n.1 (D. Utah 1989)); *accord Burkhart v. Wash.*

*Metro. Area Transit Auth*., 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists

of legal conclusions cannot properly assist the trier of fact . . . and thus it is not 'otherwise

admissible.'" (quoting Fed. R. Evid. 702)); *Owen v. Kerr-McGee Corp*., 698 F.2d 236, 240 (5th

Cir. 1983) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the

evidence both invades the court's province and is irrelevant.").

Similarly, an expert's attempt to explain a legislature's intent or the meaning of statutory

language is not admissible. *In re Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007) ("courts

should not consider testimony on the intended meaning of statutory language unless it is true

---

[5]  Respondent-Intervenors did not cite these opinions in support of any point made in their brief other than the ultimate legal conclusion regarding a reasonable expectation of privacy. *See* Respondent-Intervenors' Br. at 14 n.39.

legislative history"); *cf. Johnson v. Bush*, No. 00-3542-CIV, 2002 WL 34355953, at *1 (S.D. Fla. Apr. 19, 2002) (rejecting putative expert testimony that would "present the legislative history of [a statutory provision] and opine on its legal effect" because "[t]his sort of an examination is well within the core competence of lawyers and Courts" and should be presented "in the form of legal argument" rather than expert testimony). At least one court has rejected proposed expert testimony regarding whether plaintiffs had a reasonable expectation of privacy in certain records because that question "is a question of law to be decided by the Court," making an expert's "'opinion' on this topic absolutely irrelevant." *Clements-Jeffrey v. City of Springfield*, No. 3:09-CV-84, 2011 WL 3207363, at *2 (S.D. Ohio July 27, 2011).

Here, Respondent-Intervenors' putative experts improperly characterize the intent of legislatures and other governmental entities regarding specific legislation or programs; otherwise attempt to describe legislation; opine on what qualifies as a constitutional right; and purport to describe historical expectations of privacy. These statements are inadmissible opinions on legal issues and are not relevant to any disputed factual issue in this action. The following opinions are inadmissible on this basis:

- Opinions regarding the alleged intent of legislatures or other government components with respect to legislation or government programs. Peel Decl. ¶¶ 10, 11, 12, 15; Rothstein Decl. ¶ 12 (describing states' intent with respect to their Prescription Drug Monitoring Programs ("PDMPs") as well as purporting to describe DEA's "intent" in seeking PDMP information through administrative subpoenas).

- Descriptions of legislation. Peel Decl. ¶¶ 11, 12, 13, 15; Rothstein Decl. ¶ 12 (describing state and federal laws governing access to state PDMP information).

- Opinions regarding constitutional rights. Peel Decl. ¶ 18 (asserting opinion regarding what constitutes "fundamental human and civil rights"); Rothstein Decl. ¶ 13 (asserting opinion that "the legitimate ends of law enforcement do not justify the use of means violating constitutional guarantees against unreasonable searches and seizures").

- Unsupported opinions regarding historical expectations of privacy in prescription information. Baker ¶¶ 12, 19. These opinions are also inadmissible because they appear to be pure speculation, relying on unwarranted inferences based on general concerns with medical confidentiality without taking into account the history of close government regulation of and access to records regarding the distribution of controlled substances through prescriptions. *See id.*

> **D.    Statements and Opinions Regarding Medical Confidentiality Generally Are Not Relevant to the Legal Issue of Whether an Individual Has a Reasonable Expectation of Privacy in CSD Prescription Records or Whether DEA's Administrative Subpoena Should Be Enforced**

The declarations of Mr. Rothstein and Dr. Baker contain descriptions regarding the history and importance of medical confidentiality that have no relevance to any factual dispute in this case. Respondent-Intervenors cite these descriptions as "evidence" that DEA requires a warrant in order to access CSD prescriptions records. Respondent-Intervenors' Br. at 21 & n.67. However, they cite no authority for the notion that the concept of medical confidentiality, generally, has any bearing on the Fourth Amendment's warrant requirement—much less on whether the DEA administrative subpoena at issue in this case should be enforced, which is the sole issue before the Court.[6] Moreover, even if the history of confidentiality regarding *prescription* information were relevant, the putative experts provide no explanation for their assumption that physician-patient confidentiality in a general sense covers prescription information, specifically. Because prescriptions involve the distribution of controlled substances rather than simply communications regarding a person's health, prescription information has been subject to a higher level of regulation and availability for law enforcement inspection. Neither Mr. Rothstein nor Dr. Baker

---

[6] Courts have suggested that the question of whether a right is "fundamental" for purposes of a substantive due process claim may turn on whether the right is "objectively, deeply rooted in this Nation's history and tradition." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015) (internal quotation omitted). However, no substantive due process claim is at issue in this case.

acknowledges any such regulation, nor do they take it into account in their conclusions. The following statements and opinions are inadmissible on this basis:

- Statements purporting to describe the history of medical confidentiality. Rothstein Decl. ¶ 3; Baker Decl. ¶¶ 4-11, 13-19.

- Opinions about the importance of physician-patient confidentiality in general. Rothstein Decl. ¶¶ 4, 5, 6, 7, 8; Baker Decl. ¶ 15.

### E.   Other Miscellaneous Opinions Are Conclusory, Vague, Without Support, and Irrelevant

Dr. Peel's declaration contains opinions regarding the future use of PDMPs by DEA and other law enforcement agencies that are speculative, vague, and not relevant to any disputed issue of fact in this action, nor does Dr. Peel cite any support for this assertion. Peel Decl. ¶ 16. Mr. Rothstein's declaration contains an opinion that warrantless access to prescription records is "ethically indefensible," which is also vague, conclusory, unsupported and not relevant. Rothstein Decl. ¶ 11. These opinions should be held inadmissible.

## III.   EXHIBITS G-J, L, AND N-P CONSIST OF NEWSPAPER ARTICLES AND OTHER REPORTS THAT ARE NOT RELEVANT AND ARE INADMISSIBLE HEARSAY UNDER RULES 401, 402, 801, AND 802

Respondent-Intervenors have submitted a number of newspaper articles and other third party reports as exhibits to their memorandum in opposition to the Petition to Enforce. See Respondent-Intervenors Br. exs. G-J, L, N-P [Docs. 25-10 to -12, 25-15, 25-17 to -19]. These articles and reports are proffered for the truth of the statements made therein and thus constitute hearsay. Fed. R. Evid. 801(c). It is well established that newspaper articles and similar materials do not qualify for any exception to the hearsay rule and therefore are inadmissible. *Mayor of City of Phila. v. Educ. Equality League*, 415 U.S. 605, 619 n.19 (1974) ("Whether the testimony reflected the newspaper account or a television report, it was nonetheless hearsay."); *New*

*England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989) (upholding trial

court's exclusion of a newspaper account as inadmissible hearsay); *N.E.W. v. Kennard*, 952 F.

Supp. 714, 716 (D. Utah 1997) ("The newspaper article [that a party submitted in support of

summary judgment] is hearsay not otherwise reliable or admissible and is stricken."); *see also*

*Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We

seriously question whether a *New York Times* article is admissible evidence of the truthfulness of

its contents."). Moreover, to the extent a newspaper article or other report purports to quote or

paraphrase statements of others, those statements are not only hearsay because they appear in

documents but also hearsay within hearsay; their authors were merely reporting what, they

assert, others told them. *McGill v. Corr. Healthcare Companies, Inc.*, No. 13-CV-01080, 2014

WL 6513185, at *1 (D. Colo. Nov. 20, 2014) ("To the extent that [a newspaper] article [about the

case] might be offered to prove the truth of any of its contents, it is inadmissible as hearsay, and its

reporting of the statements of other witnesses would be double hearsay.").

  Here, moreover, the newspaper articles are not relevant to any disputed factual issue in this

action. Exhibits G-J purport to discuss an incident in which local law enforcement officers

allegedly abused their access to the CSD; that incident allegedly served as the catalyst for the Utah

legislature's revision of Utah Code Ann. § 58-37f-301 to require law enforcement officers to

obtain a warrant in order to access CSD records. DEA was not involved in that incident, however,

nor is the Utah Legislature's motivation for its statutory amendment relevant to DEA's Petition to

Enforce its administrative subpoena. Exhibit L purports to describe the background of the current

action and includes purported statements from a state senator. To the extent any background facts

are relevant to this action, the record in this action already sets forth those facts. Descriptions in a

newspaper article, to the extent they duplicate information already in the record, are cumulative, and the content of the article is otherwise not relevant to any disputed factual issue.

The surveys contained in Exhibits N-P also constitute inadmissible hearsay. To be admissible, a survey must be "material, more probative on the issue than other evidence and . . . ha[ve] guarantees of trustworthiness." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1544 (10th Cir. 1996). Here, the surveys, and the reports within which they are contained, are not material to any disputed factual issue. Exhibit N is a report purporting to address general perceptions of privacy, with particular focus on the privacy of digital communication channels. *See* Doc. 25-17, at 13.[7] Exhibit O purports to address how privacy considerations drive patient decisions, focusing primarily on how likely it is that patients withhold information from their care provider or change care providers due to the risk or occurrence of data breaches. *See* Doc. 25-18, at 4-5. Exhibit P reports the results of a survey regarding transgender and non-conforming gender discrimination. *See* Doc. 25-19, at 9. None of these discussions or surveys relates specifically to prescription information that is collected by pharmacies and provided to the state pursuant to state law, or the prospect of federal law enforcement officers accessing such information in a state database as part of an investigation into possible violations of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq*. Moreover, nothing in these exhibits addresses the reasonable expectation of privacy of the specific individuals whose prescription information appears in the

---

[7] The report asserts that 55% of surveyed individuals consider "the state of their health and the medicines they take" to be "very sensitive" information. Doc. 25-17, at 34. However, nothing in the report indicates that the survey included a separate question on "medicines." Indeed, the detailed breakdown for that question identifies the topic generally as "health information." *Id.* at 49.

subpoenaed CSD records at issue in this action. In any event, the determination of a reasonable expectation of privacy is an issue of law.

Even apart from the surveys' immateriality, Respondent-Intervenors have failed to show that they are reliable. *See Baumholser v. Amax Coal Co.,* 630 F.2d 550, 552–53 (7th Cir. 1980) ("To qualify a study or opinion poll for admission into evidence, there must be a substantial showing of reliability."); *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apts., LLC*, No. 10-CV-02516, 2014 WL 4651643, at *8 (D. Colo. Sept. 18, 2014) (holding survey evidence inadmissible because it was "not a true 'survey' that was designed and conducted by an expert"). For all these reasons, the Court should conclude that the articles, reports, and surveys are inadmissible.

## IV.  THE DRUG SUMMARIES INCLUDED IN EXHIBIT C HAVE NOT BEEN SHOWN TO BE RELEVANT TO THIS ACTION AND ARE INADMISSIBLE UNDER RULES 401 AND 402

Exhibit C consists of "drug profiles" for specific controlled substances that Respondent-Intervenors cannot establish are identified in the subpoenaed CSD records at issue in this proceeding. Specifically, the profiles concern the controlled substances Adderall, Ambien, Androderm (testosterone), Android (methyltestosterone), Ativan, Belsomra, Benzphetamine, Buprenorphine (Suboxone), Butorphanol (Stadol), Cesamet (nabilone), Clobazam (Onfi), Clonazepam, Codeine, Demerol, Diethylpropion, Doral, Fycompa (perampanel), Halcion, Hydrocodone, Librium (chlordiazepoxide), Lomotil, Lunesta, Lyrica, Marinol (dronabinol), Methadone, Morphine, Motofen, Nembutal (pentobarbital), Oxycodone, Provigil, Restoril, Ritalin, Seconal (secobarbital), Sonata, Valium, Vicodin, Vyvanse, Xanax, and Xyrem. *See* Doc. 25-6, at 2-130. Even if Respondent-Intervenors' arguments regarding the heightened sensitivity of

specific prescriptions had merit in a case where any of those specific prescriptions were at issue, there is no factual dispute relating to these specific controlled substances in this case. Given that Respondent-Intervenors have not established that the subpoenaed CSD prescription records at issue in this case include information about prescriptions for any of these controlled substances, these drug profiles are clearly not relevant. Exhibit C therefore is inadmissible.

## V.   THE ADMINISTRATIVE SUBPOENA REPRODUCED IN EXHIBIT M IS IRRELEVANT AND INADMISSIBLE

Respondent-Intervenors' Exhibit M includes a redacted copy of a DEA administrative subpoena addressed to Marvin H. Sims. Doc. 25-16, at 7.[8] However, that document is not the administrative subpoena that DEA seeks to enforce through this action. *See* Pet'n ¶ 9 [Doc. 2] (identifying the administrative subpoena at issue in this action as served on November 12, 2015 on Francine A. Giani, Executive Director of Utah Department of Commerce, and Mark Steinagel, Director of Occupational and Professional Licensing). Thus, Exhibit A to Exhibit M should be stricken from the record.

DATED this 23rd day of November, 2016.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
JOHN W. HUBER
United States Attorney
DANIEL D. PRICE (Utah Bar No. 2646)
Assistant United States Attorney
JACQUELINE COLEMAN SNEAD

---

[8] The document that Respondent-Intervenors included as Exhibit A to Exhibit M in their filing is the same document that State Respondents attached as Exhibit B to the Declaration of Marvin H. Sims [Doc. 24-3], to which DEA also objects on the same ground.

Assistant Director, Federal Programs Branch

s/ Kathryn L. Wyer
KATHRYN L. WYER (Utah Bar No. 9846)
kathryn.wyer@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.   20530
Tel: (202) 616-8475
*Attorneys for Petitioner*