IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,**<br><br>*Petitioner*,<br><br>v.<br><br>**UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING,**<br><br>*Respondents.* | **Case No. 2:16-cv-00611-DN-DBP**<br><br>**REPORT AND RECOMMENDATION**<br><br>**District Judge David Nuffer**<br><br>**Magistrate Judge Dustin B. Pead** |
| **UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,**<br><br>*Petitioner*,<br><br>v.<br><br>**IAFF LOCAL 1696, EQUALITY UTAH, AMERICAN CIVIL LIBERTIES UNION OF UTAH, JOHN DOE 1, and JOHN DOE 2,**<br><br>*Respondents-Intervenors.* | |

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B). (ECF No. 28.) This case involves a dispute over the Utah Department of Commerce and Utah Division of Occupational & Professional Licensing's ("State Respondents") duty to respond to an administrative subpoena issued by the Drug Enforcement Administration ("DEA"). The Court previously granted IAFF Local 1696, Equality Utah, the American Civil Liberties Union of Utah,

John Doe 1 and John Doe 2's (collectively, "ACLU") Motion to Intervene. (ECF No. 19.) DEA objected. (ECF No. 50.) The District Court overruled this objection on February 16, 2017. (ECF No. 59.) The case is presently before the court on DEA's "Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration." (ECF No. 2.) The court has reviewed the parties' briefs and heard oral argument on March 9, 2017.

## BACKGROUND

On or about November 12, 2015, DEA served a subpoena on State Respondents. The subpoena sought records contained in the Utah Controlled Substance Database (the "CSD"). (ECF No. 25 at 2.) The CSD contains records about "every prescription for controlled substance dispensed in the state to any individual other than an inpatient in a licensed health care facility." (*Id.*) The definition of "controlled substance" for purposes of the CSD is functionally identical to the federal Controlled Substances Act, which divides drugs into five schedules depending on their medical utility and their relative potential for abuse. (*See id.* at 2–3.) The November 12 subpoena commands production of all prescription records related to a single physician for the period January 8, 2015, to the present. (*Id.* at 10.) The subpoena also states that DEA seeks identifying information for the physician's patients, stating that "de-identified information cannot reasonably be used." (*Id.*) State Respondents did not respond to the subpoena, citing a 2015 amendment to the Utah Code that purports to require federal law enforcement agencies to obtain a valid search warrant to access information in the CSD. (ECF No. 7 at 3–4.) Utah Code Annotated § 58-37f-301(2)(m)[1] states, in relevant part, that CSD records may only be made available to federal law enforcement officers "pursuant to a valid search warrant."

---

[1] The provision was renumbered in 2016. *See* 2016 Utah Laws Ch. 238 (S.B. 136). Some of the briefing refers to its prior location: Utah Code Annotated § 58-37f-301(2)(k).

## ANALYSIS

### I.  DEA is entitled to enforcement of its administrative subpoena

Well-settled Supreme Court precedent allows federal agencies to use administrative subpoenas to obtain records. In response to Fourth Amendment challenges, the Court applies the so-called reasonable relevance test to determine whether a given subpoena passes Fourth Amendment muster. The Tenth Circuit applied the same reasonable relevance test to an administrative subpoena demanding inspection and copying of patient records in a private physician's office. Accordingly, the subpoena in this case must be enforced because DEA easily satisfies the reasonable relevance test.

Additionally, ACLU and State Respondents overlook an important fact in this case. DEA seeks here to obtain records from a state database created and used to further regulatory and law-enforcement interests. Prior to 2015 this database allowed relatively unfettered access to state and federal law enforcement. At any time it could return to this structure. At oral argument, ACLU conceded that the database itself is constitutional under Supreme Court precedent.

#### a.  Parties' arguments

DEA argues the court has a limited role when reviewing a petition to enforce an administrative subpoena under *Oklahoma Press Publishing Company v. Walling*, 327 U.S. 186 (1946), and its progeny. (ECF No. 7.) DEA concludes it is entitled to enforcement of the November 12, 2015, subpoena because it satisfies the reasonable relevance test set forth in *Oklahoma Press*. DEA further contends that State Respondents asserted basis for not complying with the subpoena–a change in state law that purports to require federal law enforcement to obtain a warrant to access CSD records–does not justify the refusal to comply with the subpoena. DEA argues the Utah provision must yield to the DEA's federal subpoena power by operation of

the Supremacy Clause of the U.S. Constitution. Finally, in its reply, DEA argues State Respondents and ACLU lack Fourth Amendment "standing" to raise certain challenges to enforcement of DEA's subpoena. (ECF No. 51 at 7–13.[2])

State Respondents assert that the subpoena violates the Fourth Amendment and thus the laws requiring enforcement of the subpoena are not entitled to operation of the Supremacy Clause in the circumstances presented. (ECF No. 24 at 1–2.) They argue that Utah citizens have a subjective and reasonable expectation that CSD records will remain private. (*Id.*) To support their argument, State Respondents cite a recent case in the District of Oregon that declined to enforce a DEA subpoena for similar records from Oregon's CSD equivalent. (*Id.* at 2–3.) State respondents argue they have Article III standing based on their sovereign interest in creating and enforcing a legal code. (ECF No. 48.) Finally, State Respondents argue that public policy supports a warrant requirement for DEA to obtain CSD records. (ECF No. 24 at 7–10.)

ACLU's arguments are similar to State Respondents' arguments. ACLU adds that Utah citizens' expectation of privacy in the CSD records is reasonable, notwithstanding the reality that the information is already in government hands. (ECF No. 12–21.) ACLU also argues that the lack of notice "to the subject of the search" violates the Fourth Amendment. (*Id.* at 21–22.)

### b. Applicable law

The Supreme Court long ago answered the question of the Fourth Amendment's applicability to administrative subpoenas seeking business and banking records, even where the businesses at issue are members of the press subject to First Amendment protections. In *Oklahoma Press Pub. Co. v. Walling*, the Court stated:

---

[2] All citations to documents in the docket will refer to page numbers ascribed by the parties, rather than the numbers added by the court's electronic docketing system.

> The short answer to the Fourth Amendment objections is that the records in these cases present no question of actual search and seizure, but raise only the question whether orders of court for the production of specified records have been validly made; and no sufficient showing appears to justify setting them aside.
>
> …
>
> Congress has authorized the Administrator, rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the District Court in enforcing it. No constitutional provision forbids Congress to do this. On the contrary, its authority would seem clearly to be comprehended in the 'necessary and proper' clause, as incidental to both its general legislative and its investigative powers.

327 U.S. 186, 195, 214 (1946) (footnotes omitted). *Oklahoma Press* petitioners resisted subpoenas for records related to possible violations of the Fair Labor Standards Act. "Petitioners, newspaper publishing corporations, maintain[ed] that the Act is not applicable to them, for constitutional and other reasons, and insist[ed] that the question of coverage must be adjudicated before the subpoenas may be enforced." *Id.* at 189. The Court rejected the publisher petitioner's argument and affirmed enforcement of the subpoenas without requiring any demonstration of probable cause. *See id.* at 216–17. The Court continued this trend and consistently applied what is now called the reasonable relevance test, which has been settled law for decades:

> It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (quoting *See v. City of Seattle*, 387 U.S. 541 (1967)); *see Oklahoma Press* at 216–17. Like *Oklahoma Press*, *Donovan* involved an administrative subpoena seeking business records. *See Donovan* at 411.

Next, the court turns to the Fourth Amendment standard applicable to medical records demanded by administrative subpoena. Fortunately, the rule is simple: nothing changes. The court is aware of only one Tenth Circuit case addressing application of the Fourth Amendment to an administrative subpoena used to obtain medical records: *Becker v. Kroll*, 494 F.3d 904, 916–17 (10th Cir. 2007). State Respondents gloss over *Becker*. (*See* ECF No. 24 at xi nn.42–43.) ACLU fails to even cite it.[3]

The physician Plaintiff in *Becker* brought a claim under 42 U.S.C. § 1983 against Utah Medicaid fraud investigators. She alleged the investigators violated her Fourth Amendment rights by copying her patients' medical records pursuant to an administrative subpoena that was not supported by probable cause. *See Becker* at 909–10, 916. The Tenth Circuit concluded that the use of a subpoena to obtain medical records, including "billing records for forty-seven randomly-selected patients", did not violate Dr. Becker's Fourth Amendment rights. *Id.* at 909, 916–917. The court came to this conclusion because "[u]nder Fourth Amendment law, an investigatory or administrative subpoena is not subject to the same probable cause requirements as a search warrant." *Id.* at 916. Instead, the court only scrutinized the subpoena under the reasonable relevance test, which the court found had been satisfied. *See id.* 916–17. "That the subpoena was issued administratively with potential criminal ramifications does not change the analysis." *Id.* at 917. In short, the only Tenth Circuit case to directly address an administrative subpoena seeking medical records suggests that the Fourth Amendment only requires that the subpoena pass muster under the reasonable relevance test.

---

[3] ACLU's failure is particularly troubling because DEA did not cite this case in their opening brief. Also, *Becker* is the third result returned in a Westlaw search for "fourth amendment administrative subpoena" in the Tenth Circuit.

### c. Application of the Fourth Amendment

As set forth in *Becker*, the Fourth Amendment only requires a court reviewing an administrative subpoena seeking medical records to consider whether the subpoena passes muster under the reasonable relevance test. "The Fourth Amendment requires only that a subpoena be 'sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.'" *Id.* at 916 (quoting *See v. City of Seattle*, 387 U.S. 541 (1967)). DEA contends that its subpoena meets the reasonable relevance test. State Respondents and the ACLU do not argue otherwise. (*See* ECF No. 24 at ii; ECF No. 25 at 13.[4])

The court finds that DEA's subpoena satisfies the reasonable relevance test. DEA is authorized to investigate potential illegal distribution of controlled substances, as it seeks to do here. *See* 21 U.S.C. §§ 871–90; *United States v. Moffett*, 84 F.3d 1291, 1293 (10th Cir. 1996). The subpoena is sufficiently particular because it requests prescription and dispensing data for a single medical provider for a definite time period: "January 8, 2015 to the present." (ECF No. 7 at 5.) Finally, the request is indisputably relevant to the DEA's investigation into suspected illegal distribution of controlled substances. The prescription and dispensing data tend to make it more or less likely that the provider at issue improperly distributed or prescribed drugs. Thus, the November 15 subpoena satisfies the reasonable relevance test.

---

[4] ACLU attempted to change its position at oral argument, suggesting that the subpoena here does not meet the reasonable relevance test. This argument has been waived. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011); (ECF No. 25 at 13) ("The question here is not whether the DEA's subpoena is overbroad or overly burdensome").

1. <u>Prescription records are not entitled to heightened protection over billing records</u>

One could attempt to distinguish *Becker* on the grounds that DEA here seeks prescription records rather than billing records.[5] The court finds this distinction makes no practical difference. First, case law does not seem to treat prescription records as deserving of increased protection over other medical records. Even the case most helpful to State Respondents and the ACLU treats prescription records as merely a subset of medical records. *See Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 998 F. Supp. 2d 957, 964 (D. Or. 2014) ("Medical records, of which prescription records form a not insignificant part, have long been treated with confidentiality.") (hereinafter *Oregon PDMP*). If anything, the applicable legal framework suggests prescription drugs are highly regulated, and thus less deserving of privacy. *See Whalen v. Roe*, 429 U.S. 589, 603 n.30 (1977) ("It is, of course, well settled that the State has broad police powers in regulating the administration of drugs by the health professions.") Prescription records are subject to regulatory disclosures, including the CSD and its equivalents in other states. Likewise, the materials State Respondents submit to demonstrate that patients consider medical records private refer to medical records generally, suggesting no particular concerns for prescription records over other treatment records. (*E.g.*, ECF No. 24 at 9 n.84).

Similarly, while the Supreme Court has not addressed the exact question at issue here, it has discussed the constitutionality of prescription drug databases. In *Whalen* the Supreme Court upheld the regulatory scheme requiring mandatory reporting of prescriptions in New York, even though information in prescription databases could be disclosed to regulators and eventually to

---

[5] State Respondents and ACLU made no such argument in their briefs. The District Court may find these arguments forfeited. The undersigned discusses them because the District Court may find it helpful during its review of this Report and Recommendation.

courts in judicial proceedings. *See* 429 U.S. at 595–605. The Court unfortunately did not address administrative subpoenas explicitly, but it did note that the statute at issue allowed for sharing drug database information with other governmental entities. *See id.* at 595 n.12 (quoting statute that allowed disclosure of database information to "an agency, [or] department of government . . . authorized to regulate, license or otherwise supervise a person who is authorized by this article to deal in controlled substances, or in the course of any investigation or proceeding by or before such agency, department or board"). The court did not express concern with this inter-agency sharing. Likewise, the Court was unconcerned by eventual judicial disclosure of database information. (*See id.* at 601–02.) (stating "the remote possibility that judicial supervision of the evidentiary use of particular items of stored information will provide inadequate protection against unwarranted disclosures is surely not a sufficient reason for invalidating the entire patient-identification program.") Accordingly, while the Supreme Court did not address the issue before this court, it did uphold a prescription drug database in another state, notwithstanding provisions that allowed sharing of that information with regulators.

Next, the harm asserted by State Respondents and ACLU is equivalent whether billing or prescription records are disclosed. ACLU's and State Respondents' primary concern with disclosure appears to be that DEA might "learn . . . the nature of [patients'] underlying medical conditions" from the list of prescriptions patients are taking. (ECF No. 25 at 10.) Billing records appear to pose a comparable risk to prescription records because billing records contain specific treatments provided by a physician, from which the reader can likewise learn of underlying medical conditions. The medical bills in *Becker* contained not bare invoices, but also listed services provided. *See Becker*, 494 F.3d at 909 n.1 (indicating that the investigation involved

review of whether Dr. Becker had been "billing the government for a more expensive medical service than the service actually provided the Medicaid patient.").[6]

Thus, while the court does not seek to create a hierarchy of relative privacy of medical records, it is satisfied that the prescription records in the CSD are not entitled to heightened protection over the billing records at issue in *Becker*.

2. Counterarguments made by State Respondents and ACLU

State Respondents and the ACLU make several arguments that the Fourth Amendment requires a more rigorous standard be applied to administrative subpoenas seeking prescription records from a state agency. The court disagrees.

A. *Oregon PDMP*

State Respondents and ACLU claim the advantage of *Oregon PDMP*, mentioned earlier. *See* 998 F. Supp. 2d 957. This case has superficial appeal. In *Oregon PDMP*, the state of Oregon brought a declaratory action to determine its rights in responding to DEA's administrative subpoenas for records contained in Oregon's version of the CSD. *Id.* at 959. Similar to Utah, Oregon law prohibited dissemination of its drug database information except "[p]ursuant to a valid court order based on probable cause." *Id.* at 960.[7] The District of Oregon found that the subpoena for prescription records violated the Fourth Amendment because patients and a physician who intervened had a reasonable expectation of privacy in records contained in the database. *Id.* at 959, 967. This court does not follow *Oregon PDMP* because it relies on

---

[6] During oral argument, counsel for State Respondents indicated he had special knowledge of the *Becker* investigation and represented the records contained no patient information. The court does not consider the unsworn arguments of counsel, which tend to contradict *Becker*. *Becker* indicates investigators "removed and copied dozens of patient records." *Id.* at 910.

[7] The Oregon statute also required the order be "issued at the request of a federal, state or local law enforcement agency engaged in an authorized drug-related investigation involving a person to whom the requested information pertains." *Id.* at 960.

authorities that are contrary to Tenth Circuit law and because the Fourth Amendment requires only satisfaction of the reasonable relevance standard.

> i. Oregon PDMP relies on authorities that do not have any analogue in the Tenth Circuit

First, *Oregon PDMP* relies on Second and Ninth Circuit authority that is contrary to Tenth Circuit precedent. Only the Second Circuit case cited in *Oregon PDMP* actually addresses an administrative subpoena. *See In re Gimbel*, 77 F.3d 593, 599 (2d Cir. 1996). The Ninth Circuit case examined whether an employee had a reasonable expectation of privacy in his work computer. *See United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007). Thus, the court will focus its analysis here on *Gimbel*, in which the Second Circuit discusses a modified version of the reasonable relevance standard. Under the modified reasonable relevance standard, a subpoena respondent may invoke greater protection if the respondent can show an atypical "reasonable expectation of privacy of a greater magnitude." *Gimbel* at 599. The *Gimbel* court provides an example of an FDIC subpoena seeking personal financial records of family members of directors of a failed bank. *Id.* The *Gimbel* court noted that these family members enjoyed a heightened expectation of privacy and thus greater entitlement to protection because they had not voluntarily engaged in activities the FDIC regulates, unlike the directors of FDIC entities. *Id.*

This court does not follow the rule in *Gimbel* applied by the District of Oregon because it is at odds with Tenth Circuit precedent. First, *Gimbel* is inconsistent with *Becker*. Also, *Gimbel* adds an element to the reasonable relevance test that has never been adopted or applied in the Tenth Circuit. No party cites binding authority that allows a subpoena recipient, or a person whose records are sought by a subpoena, to invoke protection beyond the standard reasonable relevance test. Perhaps more importantly, the court finds the modification of the reasonable relevance test simply unnecessary because the interests discussed in *Gimbel* could have been

protected using the existing reasonable relevance test. That test requires a subpoena to be limited in scope and sufficiently relevant. If a subpoena seeks records from a third party that are too broad or not sufficiently connected to the regulatory interest, the subpoena can be quashed or modified on that basis. Thus, the existing scope and relevance factors can protect the interests of collateral targets, if appropriate. Thus, rather than adopt an approach that complicates the standard applied to administrative subpoenas, the court opts to examine such subpoenas using long-established Supreme Court precedent along with Tenth Circuit precedent.

> ii.   The court will not follow *Oregon PDMP*'s decision to deviate from the Fourth Amendment analysis ordinarily applied to administrative subpoenas

Next, the District of Oregon undertakes a Fourth Amendment analysis applicable to police searches to conclude that prescription drug records are entitled to greater protection than other records sought by administrative subpoenas. (*Oregon PDMP* at 963–67.) Once again, this court feels bound to follow *Becker*. Additionally, even setting aside *Becker*, the District of Oregon's analysis appears to ignore the reality of administrative subpoenas: there is no Fourth Amendment search or seizure involved in an administrative subpoena. *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 195 (1946). "The short answer to the Fourth Amendment objections is that the records in these cases present no question of actual search and seizure, but raise only the question whether orders of court for the production of specified records have been validly made." *Id.* at 195.

In a similar vein, State Respondents argument that "the Fourth Amendment is available to the challenger as a defense against enforcement of the subpoena." (ECF No. 24 at xi.) The court agrees. The Fourth Amendment is available. Yet the case State Respondents cite, *United States v. Sturm, Ruger & Co.*, demonstrates that this statement of the law changes nothing about this case. (ECF No. 24 at xi) (citing 84 F.3d 1 (1st Cir. 1996)). After setting forth the reasonable relevance

test, the First Circuit stated: "As long as the agency satisfies these modest requirements, the subpoena is per se reasonable and Fourth Amendment concerns are deemed satisfied." *Sturm, Ruger* at 4. Thus, while the Fourth Amendment applies, it does not preclude use of an administrative subpoena, so long as that subpoena satisfies the reasonable relevance test.

Thus, the discussion regarding Fourth Amendment search-and-seizure analysis appears misplaced. The court's inquiry here centers on whether the subpoena meets Fourth Amendment scrutiny. The subpoena passes muster because it meets the prescribed criteria applicable to an administrative subpoena scrutinized under the Fourth Amendment.

### B. Third-party doctrine

Also, there is a practical problem that State Respondents and the ACLU do not meaningfully address: the records at issue are already in government hands.[8] While ACLU briefly addresses the third-party doctrine, this fails to meaningfully address the actual circumstances of this case. *See Kerns v. Bader*, 663 F.3d 1173, 1184–85 (10th Cir. 2011) (discussing "medical records held by third party care givers"). The CSD records at issue are not in the hands of any private third party. The records are in government hands. The CSD requires medical providers to disclose prescription information to the government. DEA's subpoena merely demands production of those government records to DEA. Thus, the court does not face here an attempt to extract information from a patient, a medical office, or even a private insurer.

Moreover, the CSD does not exist for any treatment purpose, but to serve governmental interests; specifically, regulatory and law enforcement interests. Patients have no control over the information in the CSD. Once in government hands, the Utah legislature determines the how and

---

[8] DEA appears to consider this a matter of standing. The court disagrees for reasons discussed below. *Infra* Part I.d. Nonetheless, the court agrees that the state of Utah enjoys no substantive Fourth Amendment claim of its own. Indeed, State Respondents do not appear to assert any Fourth Amendment claim independent of the patients and their physicians.

when CSD records are disseminated. A brief history of the law illustrates the court's point. Prior to 2015, state and federal law enforcement authorities enjoyed relatively unfettered access to CSD records. 2015 Utah Laws Ch. 326 (S.B. 119) (deleting pre-2015 statutory language that allowed warrantless access to CSD records for "federal, state, and local law enforcement authorities"). Nothing prevents Utah's Legislature from again allowing this unfettered access. In fact, effective October 2016, the Utah Legislature has once again expanded warrantless access to CSD records. *See* 2016 Utah Laws 3rd Sp. Sess. Ch. 5 (S.B. 3001) ("A probation or parole officer is not required to obtain a search warrant to access the database in accordance with Subsection (2)(n)."). Thus, the court does not address the third-party doctrine. The facts here are much less favorable for ACLU and State Respondents. ACLU's arguments are akin to a criminal defendant suggesting that the federal government must seek a warrant to obtain a defendant's records from local police. The law is otherwise.

### C. Policy arguments

Next, State Respondents advance certain policy arguments to suggest CSD records should only be accessed by law enforcement with a warrant supported by probable cause. Policy arguments are best addressed through legislation. Unfortunately for State Respondents, the policy questions it raises have been resolved by Congress, who declined to require DEA to obtain a warrant supported by probable cause. The Controlled Substances Act allows DEA to conduct investigations using administrative subpoenas. Congress apparently favors DEA's ability to quickly investigate suspected drug violations using administrative subpoenas over State Respondents' privacy concerns. As discussed, the Supreme Court has upheld this congressional preference for administrative subpoenas as constitutional. *Supra* Part I.b.; *see also* (ECF No. 51

at 23–25) (quoting, inter alia, *Okla. Press Publ'g Co.*, 327 U.S. at 215–16 *and Morton Salt Co.*, 338 U.S. at 642–43).

### D. Disclosure of administrative subpoenas

Finally, ACLU argues that the subpoena violates the Fourth Amendment because it instructs the recipient not to disclose the existence of the request or investigation. To support its argument, ACLU cites cases addressing search and seizure, some of which require announcement when warrants are served. (*See* ECF No. 25 at 22 nn.69–70.) Yet, as discussed above, the subpoena does not constitute a search or seizure under the Fourth Amendment. *See supra* Part I.c.2.A.ii Thus, the announcement requirement applied to warrants is inapplicable here. Unsurprisingly, ACLU offers no case that suggests an administrative agency must disclose its use of subpoenas. Further, even assuming some disclosure is required, nothing suggests the subpoena recipient, rather than DEA, should control the timing and manner of that disclosure. Accordingly, ACLU has not shown that disclosure is mandated under these circumstances.

Based on the foregoing, the court concludes that DEA's subpoena here must be enforced. State Respondents and ACLU have demonstrated no constitutional infirmity with the subpoena in this case. The subpoena passes muster under the Fourth Amendment because it does not constitute a search and the subpoena satisfies the elements of the reasonable relevance test.

### d. Standing

As an initial matter, the analysis here appears somewhat confused. State Respondents and DEA both discuss Article III standing and Fourth Amendment "standing" in their briefing as if both concepts present the same question. They do not. Cases addressing Fourth Amendment "standing" do not address Article III standing at all. Instead, Fourth Amendment "standing" is a misnomer for cases considering who might invoke substantive Fourth Amendment protection:

> Indeed, "[t]he Supreme Court has repeatedly insisted that we not use the term 'standing' as shorthand for a defendant's capacity to challenge a search." *United States v. Higgins,* 282 F.3d 1261, 1270 n. 3 (10th Cir.2002). Instead, the Supreme Court has counseled that the question of whether a defendant can show a violation of his own Fourth Amendment rights "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also Minnesota v. Carter,* 525 U.S. 83, 87, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("The Minnesota courts analyzed whether respondents had a legitimate expectation of privacy under the rubric of 'standing' doctrine, an analysis that this Court expressly rejected 20 years ago in *Rakas.*").

*United States v. Johnson*, 584 F.3d 995, 999 n.3 (10th Cir. 2009).

In reviewing the parties' briefing, there is no credible challenge to Article III standing, which affects this court's subject-matter jurisdiction to hear this case. *See, e.g.*, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014). While DEA cites cases dealing with jurisdictional standing, it appears to do so only to argue that State Respondents cannot invoke Fourth Amendment protections of parties not before the court. Indeed, it would be strange for DEA, the petitioner here, to argue the court lacks jurisdiction to hear this case. Even to the extent a party makes such an argument, the court has no trouble concluding that it has subject-matter jurisdiction to hear the petition to enforce the subpoena. *See* 21 U.S.C. § 876(c) ("In the case of contumacy by or refusal to obey a subpena issued to any person, the Attorney General may invoke the aid of any court of the United States . . . to compel compliance with the subpena.") Thus, there is no issue of jurisdictional standing.[9]

Second, the court agrees with DEA's contention that State Respondents and ACLU have not shown they may assert the substantive Fourth Amendment rights of specific patients and the

---

[9] ACLU enjoys piggyback standing because they were allowed to intervene as respondents under Rule 24(b).The Tenth Circuit has held that "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case.'" *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007).

physician whose records will be disclosed pursuant to the subpoena. State Respondents' brief does not meaningfully challenge DEA's argument in this regard. Instead, State Respondents argue the court has sufficient Article III standing to hear this case. Accordingly, the court finds that no party to this suit may assert the substantive Fourth Amendment rights of any investigative target or any patient whose information is disclosed as a result of State Respondent's compliance with the subpoena at issue. Those individuals retain their individual rights and may assert them in an appropriate venue.

Nonetheless, the court also concludes that the substantive Fourth Amendment discussion above is still necessary. The court is called upon here to answer a Supremacy Clause question. State Respondents contend that due to constitutional infirmities of this subpoena, federal law authorizing it is not entitled to operation of the Supremacy Clause. State Respondents only attempt to establish a substantive Fourth Amendment violation to show that the subpoena is not entitled to operation of the Supremacy Clause. As such, the court must examine whether the subpoena issued here passes constitutional muster, including whether it violates the Fourth Amendment. "[T]he Supremacy Clause enshrines as 'the supreme Law of the Land' only those Federal Acts that accord with the constitutional design. *Alden v. Maine*, 527 U.S. 706, 731 (1999) "Appeal to the Supremacy Clause alone merely raises the question whether a law is a valid exercise of the national power." *Id.* Thus, the court must examine whether the DEA's subpoena violates the Fourth Amendment for purposes of the Supremacy Clause. Presumably, even DEA prefers to engage in this Fourth Amendment analysis by reference to patients and physicians not directly affected by its subpoena here, so DEA can maintain the secrecy of its investigation.

As discussed above, there is no Fourth Amendment problem here because there is no search or seizure and the reasonable relevance test is satisfied. *See supra* Part I.c.2.A.ii Also, the records here belong to the state of Utah. State Respondents do not suggest Utah enjoys any Fourth Amendment protection of its own. Even assuming Utah enjoys its own Fourth Amendment rights, or is allowed to assert third parties' rights for purposes of a Supremacy Clause analysis, anyone asserting a Fourth Amendment claim is entitled only to resist the administrative subpoena under the reasonable relevance test, which is satisfied here. *Supra* Part I.c.

For these reasons, the court finds it has subject-matter jurisdiction to hear this case. Likewise, nothing in this opinion should be read to preclude DEA's investigative target, or the patients whose information will be disclosed, from asserting any substantive Fourth Amendment rights at an appropriate time. Nonetheless, the court reaches the narrow Fourth Amendment question here so it can resolve the Supremacy Clause issue raised by State Respondents in their opposition to DEA's subpoena.

### e. Preemption

State law must yield to contrary federal provisions. *See, e.g.*, *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996) (discussing conflict between a federal law that permitted activity that state law purported to prohibit). State Respondents do not deny that the provision of the Utah Code requiring DEA to obtain a warrant conflicts with federal law. (*See* ECF no. 51 at 8 n.3.) In fact, their briefing appears to affirmatively assert that Utah law does create a conflict. (*See* ECF No. 48 at 3.)

During oral argument, State Respondents' counsel attempted to assert there was no conflict. This argument is forfeited because it was not included in State Respondents' briefing. More importantly, the argument itself is easily rejected. The federal subpoena power allows DEA to

obtain CSD records. Given the court's rejection of the Fourth Amendment challenge, the only barrier remaining to enforcement of the subpoena is the Utah statute. Thus, Utah law creates a conflict with federal law because it purports to prevent lawful compliance with the subpoena here. Accordingly, the court has little difficulty finding that Utah Code Annotated § 58-37f-301(2)(m) conflicts with 21 U.S.C. § 876 under the circumstances presented in this case. The supremacy clause gives effect to DEA's subpoena over Utah's statute.

## RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** the District Court **GRANT** DEA's Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration." (ECF No. 2.) State Respondents should be ordered to comply with DEA's subpoena immediately or face contempt sanctions.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* Fed. R. Civ. P. 72(b)(2). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 10th day of March 2017.

By the Court:

Dustin B. Pead
United States Magistrate Judge