John Mejia, USB No. 13965
Leah Farrell, USB No. 13696
jmejia@acluutah.org
lfarrell@acluutah.org
ACLU of Utah Foundation
355 North 300 West
Salt Lake City, UT 84103
(801) 521-9862

Nathan Freed Wessler (*pro hac vice*)
Brett Max Kaufman (*pro hac vice*)
nwessler@aclu.org
bkaufman@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

*Attorneys for Respondents–Intervenors*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>*Petitioner*,<br>v.<br><br>UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING,<br><br>*Respondents*. | Case No. 2:16-cv-611-DN<br><br>**RESPONDENTS–INTERVENORS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**<br><br>Chief Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>*Petitioner*,<br>v.<br><br>IAFF LOCAL 1696, EQUALITY UTAH, AMERICAN CIVIL LIBERTIES UNION OF UTAH, JOHN DOE 1, and JOHN DOE 2,<br><br>*Respondents–Intervenors*. | |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STANDARD OF REVIEW ....................................................................................................2

PROCEDURAL HISTORY.....................................................................................................2

ARGUMENT ........................................................................................................................3

    1.   A warrant is required for access to UCSD records, and *Becker v. Kroll* does not require a contrary conclusion. .........................................................................3

    2.   This Court should correct other analytical errors in the Report and Recommendation.......................................................................................9

CONCLUSION......................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982) ...................... 12

*Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007) .................................................................. 1, 5, 8

*Chapman v. United States*, 365 U.S. 610 (1961) ............................................................................ 4

*Couch v. United States*, 409 U.S. 322 (1973) ................................................................................. 4

*Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000) .......................................................................... 10

*Douglas v. Dobbs*, 419 F.3d 1097 (10th Cir. 2005) .................................................................... 6, 7

*F.E.R. v. Valdez*, 58 F.3d 1530 (10th Cir. 1995) ........................................................................... 7

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001) ................................................................... 10

*In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083 (9th Cir. 2016) ..................................... 11

*In re Search Warrant*, 810 F.2d 67 (3d Cir. 1987) ...................................................................... 13

*Kerns v. Bader*, 663 F.3d 1173 (10th Cir. 2011) ........................................................................... 7

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 998 F. Supp. 2d

    957 (D. Or. 2014) ........................................................................................................ 10, 11, 13

*Powers v. Ohio*, 499 U.S. 400 (1991) .......................................................................................... 12

*R v. Dixon* (1765) 97 Eng. Rep. 1047 (K.B.) ................................................................................. 5

*Riley v. California*, 134 S. Ct. 2473 (2014) ................................................................................... 9

*See v. City of Seattle*, 387 U.S. 541 (1967) .................................................................................... 4

*Smith v. Maryland*, 442 U.S. 735 (1979) ..................................................................................... 11

*Stoner v. California*, 376 U.S. 483 (1964) ...................................................................................... 4

*Thompson v. City of Chicago Bd. of Educ.*, No. 14-cv-6340, 2016 WL 362375 (N.D. Ill.

    Jan. 29, 2016) ............................................................................................................................. 4

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004) ................................................... 10

*United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999) ............................................................... 8

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) .................... 8

*United States v. Jones*, 565 U.S. 400 (2012) ................................................................................. 9

*United States v. McKinney*, 822 F.2d 946 (10th Cir. 1987) ........................................................... 6

*United States v. Miller*, 425 U.S. 435 (1976) .......................................................................... 4, 11

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) .............................................................. 4

*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980) ................................... 13

*Whalen v. Roe*, 429 U.S. 589 (1977) ......................................................................... 9, 10

**Other Authorities**

Fed. R. Civ. P. 72 ........................................................................................................... 2

Utah Code Ann. § 58-37f-301 ...................................................................................... 12

Utah Division of Occupational & Professional Licensing, *Utah Controlled Substance*

    *Database*, http://www.dopl.utah.gov/programs/csdb/ .............................................. 12

Pursuant to Federal Rule of Civil Procedure 72(b)(2), Respondents–Intervenors Salt Lake County Firefighters IAFF Local 1696, Equality Utah, American Civil Liberties Union of Utah, John Doe 1, and John Doe 2 (collectively, "Intervenors") respectfully object to the Report and Recommendation ("R&R") issued by Magistrate Judge Dustin B. Pead on March 10, 2017.[1] The R&R errs in concluding that Petitioner Drug Enforcement Administration ("DEA") does not violate the Fourth Amendment by using an administrative subpoena to access sensitive and confidential prescription records held in the Utah Controlled Substance Database ("UCSD").

## INTRODUCTION

This case raises the question of whether the DEA may obtain sensitive prescription records from a secure state database using an administrative subpoena, or whether the Fourth Amendment requires a warrant instead. The R&R errs in its conclusion that the subpoena issued by the DEA seeking confidential UCSD records is enforceable as long as it seeks information reasonably relevant to a DEA investigation. Rather, just as with private emails held by a service provider, the high expectation of privacy in prescription records in the UCSD renders use of a subpoena unreasonable and requires a warrant. The R&R's reliance on the Tenth Circuit's opinion in *Becker v. Kroll*,[2] which is distinguishable from this case, is error. In decisions both before and after *Becker*, the Tenth Circuit has made clear that whether a warrant is required for investigative access to prescription or other medical records is an open question—a question thus not settled by *Becker*. As explained in Respondents' and Intervenors' respective memoranda in opposition to the DEA's petition to enforce its administrative subpoena, because people have a reasonable expectation of privacy in these records, the Constitution requires that the DEA obtain

---

[1] Docket No. 65.
[2] 494 F.3d 904 (10th Cir. 2007).

a warrant to demand them.[3] For these and other reasons set forth below, this Court should reject the challenged portions of the R&R.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72, a litigant may object to a magistrate judge's proposed findings and recommendations by "serv[ing] and fil[ing] specific written objections" within 14 days after being served with a copy of the recommendation.[4] "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."[5] In response to proper objections, the district court "may accept, reject, or modify the recommended disposition."[6]

## PROCEDURAL HISTORY

On June 14, 2016, the DEA filed its petition to enforce an administrative subpoena with this Court.[7] The underlying subpoena, submitted to Respondents Utah Department of Commerce and Utah Division of Occupational and Professional Licensing ("Respondents"), sought months' worth of confidential UCSD records reflecting prescriptions written by a medical provider and filled by the provider's patients.[8] On July 28, 2016, Intervenors filed a motion to intervene.[9] The

---

[3] Respondents' Mem. in Opp'n to Pet'r's Pet. to Enforce Administrative Subpoenas Issued by the Drug Enforcement Admin., Docket No. 26, at 1–7; Respondents–Intervenors' Mem. in Opp'n to Pet. to Enforce Administrative Subpoenas Issued by the Drug Enforcement Admin., Docket No. 25, at 12–21.

[4] Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

[5] Fed. R. Civ. P. 72(b)(3).

[6] *Id.*

[7] Docket No. 2.

[8] *Id.* ¶¶ 8–9.

[9] Docket No. 19.

magistrate judge granted permissive intervention,[10] and this Court overruled Petitioner's objections to the order granting intervention on February 16, 2017.[11] On March 10, 2017, following briefing by the parties[12] and a hearing,[13] the magistrate judge issued the R&R recommending that the Court grant the DEA's petition to enforce the subpoena and reject Fourth Amendment arguments raised by Respondents and Intervenors.

The factual background of this matter, including information about the records contained in the UCSD and the DEA's subpoena, is set forth in detail in Intervenors' and Respondents' memoranda in opposition to the DEA's petition.[14]

## ARGUMENT

**1.    A warrant is required for access to UCSD records, and *Becker v. Kroll* does not require a contrary conclusion.**

The Report and Recommendation errs in its conclusion that "the Fourth Amendment only requires a court reviewing an administrative subpoena seeking medical records to consider whether the subpoena passes muster under the reasonable relevance test."[15] Rather, as argued in Intervenors' Memorandum in Opposition to the DEA's Petition,[16] because of the demonstrated and reasonable expectation of privacy in the sensitive records at issue here, a warrant is required instead of a subpoena.

---

[10] Docket No. 47.

[11] Docket No. 59.

[12] *See* Docket Nos. 7, 25, 26, 48, 51.

[13] *See* Docket No. 63 (minute entry).

[14] Docket No. 25 at 2–12; Docket No. 26 at iii–x.

[15] R&R, Docket No. 65, at 7.

[16] Docket No. 25.

When an administrative subpoena is proper, it is indeed issued upon a relevance standard and governed by the reasonableness test set forth in *See v. City of Seattle*,[17] and elsewhere.[18] But it is not the case that a subpoena may be used to search *any and all* records or locations. Where there is a sufficient expectation of privacy under the Fourth Amendment, use of a subpoena becomes unreasonable and a warrant is required instead. Thus, courts have upheld subpoenas against Fourth Amendment challenges only when the "necessary expectation of privacy to launch a valid Fourth Amendment claim does not exist."[19] On the other hand, in cases where there is a reasonable expectation of privacy in records under the Fourth Amendment, such as in the contents of a person's private email messages held by an email service provider, government investigators who sought to use a subpoena for such records were instead required to obtain a warrant.[20] A law enforcement agency likewise could not subpoena a landlord or hotel owner for the contents of a tenant's or guest's rooms,[21] nor an attorney for her client's files.[22] Where

---

[17] 387 U.S. 541, 544–45 (1967).

[18] *See* R&R at 5.

[19] *Couch v. United States*, 409 U.S. 322, 336 n.19 (1973); *accord United States v. Miller*, 425 U.S. 435, 440 (1976) ("We find that there was no intrusion into any area in which respondent had a protected Fourth Amendment interest and that the District Court therefore correctly denied respondent's motion to suppress[ records obtained from his bank via subpoena].").

[20] *United States v. Warshak*, 631 F.3d 266, 283–88 (6th Cir. 2010) ("The government may not compel a commercial ISP to turn over the contents of a subscriber's emails without first obtaining a warrant based on probable cause."); *Thompson v. City of Chicago Bd. of Educ.*, No. 14-cv-6340, 2016 WL 362375, at *8 (N.D. Ill. Jan. 29, 2016) ("The Court agrees with the Sixth Circuit's assessment in *Warshak*, 631 F.3d at 283–288. The content of personal email is more akin to the content of a telephone conversation than it is to records of telephone numbers dialed or bank records. If Thompson's allegation that the subpoena at issue sought the content of his personal email is true, then the issuance of the subpoena constitutes a search that falls under *Katz* rather than *Smith* or *Miller*, and the third-party doctrine does not control.").

[21] *Stoner v. California*, 376 U.S. 483, 488–90 (1964) (implicit consent to janitorial personnel to enter motel room does authorize police to search room without warrant); *Chapman v. United States*, 365 U.S. 610, 616–17 (1961) (landlord's authority to enter house for some purposes does not authorize warrantless search by police).

Fourth Amendment privacy interests are at their zenith, a subpoena, which is issued upon a mere executive-branch assertion of relevance, is simply the wrong form of legal process, and investigators must obtain a warrant.

To reach its erroneous conclusion on this point, the R&R relies on the Tenth Circuit's decision in *Becker v. Kroll*.[23] That case, while perhaps offering a somewhat analogous set of facts, does not settle the question of whether a subpoena or a warrant is the proper legal process for obtaining confidential prescription records from the UCSD. In *Becker*, a physician brought Section 1983 claims against several state actors, arguing, among other things, that her own rights under the Fourth Amendment had been violated when the Utah Medicaid Fraud Control Unit obtained her Medicaid billing records and related patient files during an investigation into her billing practices.[24] Unlike Respondents here, the plaintiff in *Becker* had willingly complied with an administrative subpoena for those records, even though the subpoena gave her several days to challenge it before she opted to comply.[25]

In holding that the physician's Fourth Amendment rights were not violated in that context, the Tenth Circuit reasoned that an "administrative subpoena is not subject to the same probable cause requirements as a search warrant."[26] That basic proposition is not in dispute here. *Becker*, however, did not discuss the question of whether the physician, much less her patients, had a reasonable expectation of privacy in the particular records at issue there. Likewise, the court did not address whether a subpoena was the correct kind of legal process to use under the

---

[22] *R v. Dixon* (1765) 97 Eng. Rep. 1047 (K.B.) (holding that an attorney need not respond to a subpoena for his client's papers in connection with a forgery prosecution of the client).

[23] 494 F.3d 904 (10th Cir. 2007); *see* R&R at 6.

[24] 494 F.3d at 909.

[25] *Id.* at 909–10.

[26] *Id.* at 916.

Fourth Amendment for the particular kind of records at issue. That *Becker* is silent on these questions is no surprise, as the plaintiff did not make those arguments in her appeal,[27] and had not raised them in response to the subpoena. *Becker* did not address, much less resolve, the key question now before this Court. Moreover, because of the specific facts around the subpoena at issue in *Becker*—a Medicaid provider being asked for a limited, random sampling of Medicaid patients' records by a state agency overseeing Medicaid to investigate Medicaid billing practices—generalizing *Becker* to any subpoena by any agency for any and all medical records is not appropriate. Nor did *Becker* purport to establish such a rule. Accordingly, it was error for the R&R to rely on that case as if it were controlling of any case involving any subpoena for any kind of medical record.[28]

Moreover, *Becker* cannot mean what the R&R suggests it means because prior and subsequent Tenth Circuit decisions *hold open* the question of whether a warrant is required for a search of prescription records and other medical records held by a third party. Two years before deciding *Becker*, the Tenth Circuit in *Douglas v. Dobbs*[29] addressed whether a prosecutor violated a suspect's Fourth Amendment rights by authorizing a police officer to apply for a court order to search the suspect's prescription records held by a pharmacy. After recognizing that people have a significant constitutional privacy interest in their prescription records,[30] the court resolved the case on qualified immunity grounds, holding that it was not clearly established that

---

[27] *See* Corrected Br. of the Pl./Appellant, *Becker*, 2005 WL 6137783, at *31–34; Third Br. on Cross Appeal by the Appellant Taj Becker, M.D., *Becker*, 2005 WL 6311342.

[28] *See United States v. McKinney*, 822 F.2d 946, 950–51 (10th Cir. 1987) (declining to read a prior case as having instituted a *per se* rule when that prior case "d[id] not state that this is a *per se* rule").

[29] 419 F.3d 1097 (10th Cir. 2005).

[30] *Id.* at 1102 ("[W]e have no difficulty concluding that protection of a right to privacy in a person's prescription drug records, which contain intimate facts of a personal nature, is sufficiently similar to other areas already protected within the ambit of privacy.").

a prosecutor could be held liable for "advis[ing] law enforcement officers about proposed motions or orders submitted to judges to obtain authorization to conduct searches."[31] The court explained, however, that "[w]hether a warrant is required to conduct an investigatory search of prescription records . . . *is an issue that has not been settled, and is an issue we need not decide in the present case*."[32]

Four years after *Becker*, in an opinion by Judge Gorsuch, the Tenth Circuit again explained that it had not yet decided whether access to medical records without a warrant was permissible under the Fourth Amendment. In *Kerns v. Bader*,[33] the court held that a sheriff who had asked a Veterans Affairs hospital to voluntarily provide a suspect's psychiatric records was protected by qualified immunity. Writing for the panel majority, Judge Gorsuch explained that the extent of Fourth Amendment protections for medical records held by a third party was an open question in this Circuit: "While there's certainly room to debate whether and how third party doctrine should apply to medical records, and while we in no way prejudge these questions, the fact that a live (and heated) debate exists on them is more than enough to preclude us from saying that the Sheriff violated clearly established law when he sought records held by a third party care provider."[34] In dissent, Judge Holloway agreed that "[i]t may be unclear whether a warrant is required," but argued that the search at issue did violate the Fourth Amendment.[35]

---

[31] *Id.* at 1103.

[32] *Id.* (emphasis added); *see also id.* at 1104 (Tymkovich, J., concurring in the judgment) ("I believe that a search of a pharmacy for such information would implicate a legitimate expectation of privacy under our traditional Fourth Amendment jurisprudence.").

[33] 663 F.3d 1173 (10th Cir. 2011).

[34] *Id.* at 1184–85 (citations omitted); *see also F.E.R. v. Valdez*, 58 F.3d 1530, 1535 (10th Cir. 1995) (noting that the patient-plaintiffs "had an expectation of privacy in their medical records" and upholding search pursuant to a facially valid warrant).

[35] 663 F.3d at 1196, 1199 (Holloway, J., dissenting).

The R&R errs by reading *Becker*'s narrow ruling too broadly. If *Becker* had settled the question of whether the warrantless search of medical records is permitted by the Fourth Amendment, surely the Tenth Circuit would have recognized as much four years later in *Kerns*. Instead, the court explained that this issue had not yet been decided, and explicitly avoided answering the question by ruling on qualified immunity grounds.

The R&R also errs by failing to distinguish *Becker* based on the differences in the scope and nature of the searches at issue there, and here. *Becker* involved a Medicaid fraud unit's limited request for one physician's "billing records for forty-seven randomly-selected patients" as part of an investigation into billing practices for patients on Medicaid.[36] In contrast, the DEA's subpoena at issue here seeks to effect a simultaneous search of the records of every pharmacy in Utah for prescriptions issued to an untold number of patients. As courts of this and other circuits have recognized, searching massive computerized databases and other voluminous digital files raises particular concerns.[37] Prior to creation of the UCSD, individuals could rely on the practical realities of law enforcement's limited resources to protect them from sweeping searches: to obtain records of all of a person's or physician's prescriptions, in many cases law enforcement would have had to canvass numerous pharmacies seeking relevant records, a resource-intensive exercise that would have been justified only in important or well-founded cases. Now, however, the government can obtain the prescription records from every pharmacy in the state with a single request. This enhanced ability of law enforcement to quickly and easily

---

[36] 494 F.3d at 909.

[37] *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175–77 (9th Cir. 2010) (en banc); *United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999).

8

delve into deeply personal records raises especially serious questions under the Fourth Amendment,[38] which the R&R failed adequately to address.

    2.    **This Court should correct other analytical errors in the Report and Recommendation.**

    The R&R errs in its suggestion that the Supreme Court's decision in *Whalen v. Roe*[39] supports the warrantless search of UCSD records.[40] In *Whalen*, the Supreme Court considered whether New York's collection of prescription records in an early computerized database violated patients' and doctors' right to informational privacy under the Due Process Clause of the Fourteenth Amendment. The Court discussed the weighty privacy interests in the prescription records at issue before concluding that the security and privacy protections of New York's system meant that it "does not, on its face, pose a sufficiently grievous threat to [privacy] interest[s] to establish a constitutional violation" under the Due Process Clause.[41] Critically, *Whalen* addressed only whether the creation and maintenance of the prescription monitoring program violated patients' privacy rights under the *Fourteenth* Amendment, not whether law enforcement requests to the program would survive scrutiny under the *Fourth* Amendment. Indeed, the Court explicitly distinguished "cases involv[ing] affirmative, unannounced, narrowly focused intrusions into individual privacy during the course of criminal investigations"—cases

---

[38] *Cf. United States v. Jones*, 565 U.S. 400, 429 (2012) (Alito, J., concurring in judgment) ("In the pre-computer age, the greatest protections of privacy were neither constitutional nor statutory, but practical. . . . Only an investigation of unusual importance could have justified such an expenditure of law enforcement resources. Devices like the one used in the present case, however, make long-term monitoring relatively easy and cheap."); *Riley v. California*, 134 S. Ct. 2473, 2489 (2014) ("[A]ny extension of th[e] reasoning [from pre-digital cases] to digital data has to rest on its own bottom.").

[39] 429 U.S. 589 (1977).

[40] *See* R&R at 8–9.

[41] 429 U.S. at 599–600.

where, the Court acknowledged, the Fourth Amendment *would* apply.[42] This case squarely

presents such a situation, and it therefore requires assessing whether people have a reasonable

expectation of privacy in their confidential prescription records held in the UCSD and whether a

warrant is required to search them. Nothing in *Whalen* sanctions warrantless access to

prescription database records by law enforcement agents, and the R&R's suggestion to the

contrary was error.

The R&R also errs in asserting that the fact that UCSD records "are in [state] government

hands" rather than "in the hands of any private third party" somehow weighs in the favor of the

DEA, a federal government entity.[43] The Supreme Court has made clear that "[t]he reasonable

expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is

that the results of those tests will not be shared with nonmedical personnel without her

consent."[44] That is true whether it is a government hospital, as in *Ferguson v. City of

Charleston*,[45] or a private facility.[46] For Fourth Amendment purposes, the records in the UCSD

---

[42] *Id.* at 604 n.32; *see also Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 998 F. Supp. 2d 957, 964 (D. Or. 2014) ("While *Whalen* is not controlling in this case because the Court did not reach any claims raised pursuant to the Fourth Amendment, it is nevertheless instructive.").

[43] R&R at 13–14. As the State of Utah's opposition to the DEA's petition makes clear, state and federal government entities in our federalist system can have opposing interests, and there is no reason to conclude that a state administrative agency's careful collection of records subject to confidentiality protections somehow waives constitutional safeguards against warrantless access by a federal law enforcement agency (or any law enforcement agency, for that matter).

[44] *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001).

[45] *Id.* at 70.

[46] *See, e.g.*, *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004) ("[A]ll provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient."); *Doe v. Broderick*, 225 F.3d 440, 450–51 (4th Cir. 2000) ("[A] patient's expectation of privacy . . . in his treatment records and files maintained by a substance abuse treatment center is one that society is willing to recognize as objectively reasonable.").

should be treated the same as records held by any other third party.[47] And as explained in Intervenors' Memorandum in Opposition, the mere fact of third-party access to or custody of records is not dispositive under the Fourth Amendment.[48] Rather, under the Supreme Court's rulings in *United States v. Miller*[49] and *Smith v. Maryland*,[50] the Fourth Amendment's protections turn on the sensitivity of the records and whether they were voluntarily conveyed.[51] Thus, the R&R's analogy to "a criminal defendant suggesting that the federal government must seek a warrant to obtain a defendant's records from local police" is not apt.[52] If the federal government is able to compel local police to provide a defendant's arrest records using a subpoena, it is because the defendant lacks a reasonable expectation of privacy in those records, not because they are held by a (distinct) government entity. A better analogy would be to the contents of students' private emails stored on a state university's servers; though such files are held by a government entity, surely that fact alone does not divest them of protection under the Fourth Amendment.[53] Finally, the R&R's claim that "the CSD does not exist for any treatment purpose," and therefore the privacy interest is somehow diminished, is incorrect.[54] As the Utah Division of Occupational and Professional Licensing explains, "Utah's Controlled Substance

---

[47] *See Or. Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 967 (analyzing records held in state prescription drug monitoring program under the third-party doctrine, and concluding that the doctrine does not apply to reduce the reasonable expectation of privacy in the records).

[48] Docket No. 25, at 19–21.

[49] 425 U.S. 435 (1976).

[50] 442 U.S. 735 (1979).

[51] Intervenors' Mem. in Opp'n, Docket No. 25, at 20.

[52] R&R at 14.

[53] *See In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1090–91 (9th Cir. 2016) (quashing subpoena for email messages in part on the basis that that the subject of the subpoena, a former state governor, had a reasonable expectation of privacy in personal emails stored on a state server).

[54] R&R at 13.

Database Program (CSD) is a resource that assists prescribing practitioners and pharmacists in providing efficient care for their patients' and customers' usage of controlled substances."[55] As previously detailed by Intervenors, the expectation of privacy in such medical treatment records under the Fourth Amendment is high.[56]

Lastly, although the R&R reaches the Fourth Amendment questions presented on other grounds, it errs in asserting that "State Respondents and [Intervenors] have not shown they may assert the substantive Fourth Amendment rights of specific patients and the physician whose records will be disclosed pursuant to the subpoena."[57] As the Supreme Court has recognized, states have standing "to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest."[58] Thus, a state may raise the constitutional rights of certain of its residents if it satisfies the requirements of third-party standing: that the state itself has suffered an injury in fact, that it has a close relationship to the person whose rights it is asserting, and that that person is hindered from protecting his or her own interests.[59] Here, Respondents, as recipients of the subpoena, have suffered an injury in fact.[60] Like other custodians of medical records bound by duties of confidentiality, the state has a close relationship with the people

---

[55] Utah Division of Occupational & Professional Licensing, *Utah Controlled Substance Database*, http://www.dopl.utah.gov/programs/csdb/; *see also* Utah Code Ann. § 58-37f-301(2)(h) (permitting licensed medical practitioners to access patients' UCSD records "for the purpose of: (I) prescribing or considering prescribing any controlled substance to the current or prospective patient; (II) diagnosing the current or prospective patient; [or] (III) providing medical treatment or medical advice to the current or prospective patient.").

[56] Intervenors' Mem. in Opp'n, Docket No. 25, at 13–19.

[57] R&R at 16–17; *but see* Docket No. 35, at 11–12 (Intervenors' briefing on Respondents' third-party standing).

[58] *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 602 (1982).

[59] *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

[60] *See* R&R at 16.

whose records it collects and safeguards in the UCSD.[61] And here, the physician and patients whose records are the subject of the subpoena are hindered from advancing their own rights by the lack of notice of the subpoena.[62] The Fourth Amendment interests of the subjects of the subpoena are thus properly before the Court.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully urge the Court to reject the portions of the R&R recommending enforcement of the DEA's subpoena and finding that no warrant is required for access to confidential prescription records in the UCSD. As explained in Intervenors' and Respondents' memoranda in opposition to the DEA's petition[63] and as held by the only other federal court to have addressed the Fourth Amendment question at issue here,[64] the reasonable expectation of privacy in these records under the Fourth Amendment requires the DEA to obtain them using a warrant rather than a subpoena.

March 24, 2017

Respectfully submitted,

/s/ Nathan Freed Wessler
Nathan Freed Wessler (*pro hac vice*)
Brett Max Kaufman (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org

---

[61] *See, e.g.*, *In re Search Warrant*, 810 F.2d 67, 70–71 (3d Cir. 1987) (physician); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 (3d Cir. 1980) (employer).

[62] *Westinghouse Elec. Corp.*, 638 F.2d at 574. ("As a practical matter, the absence of any notice to the employees of the subpoena means that no person other than Westinghouse would be likely to raise the privacy claim. Indeed, this claim may be effectively lost if we do not hear it now."); *see also* Docket No. 25, at 21–22 (discussing lack of notice).

[63] Docket Nos. 25 and 26.

[64] *Or. Prescription Drug Monitoring Program*, 998 F. Supp. 2d 957.

13

/s/ John Mejia
John Mejia, USB No. 13965
Leah Farrell, USB No. 13696
ACLU of Utah Foundation
355 North 300 West
Salt Lake City, UT 84103
(801) 521-9862
jmejia@acluutah.org

*Counsel for Respondents–Intervenors*[65]

---

[65] ACLU legal fellow Vera Eidelman, who is admitted to practice in California, contributed to the drafting of this brief.