IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>Petitioner,<br>v.<br><br>UTAH DEPARTMENT OF COMMERCE and UTAH DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING,<br><br>Respondents.<br><br><br>UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,<br><br>Petitioner,<br>v.<br><br>IAFF LOCAL 1696, EQUALITY UTAH, AMERICAN CIVIL LIBERTIES UNION OF UTAH, JOHN DOE 1, and JOHN DOE 2,<br><br>Respondents-Intervenors. | **MEMORANDUM DECISION AND ORDER ACCEPTING IN PART AND MODIFYING IN PART [65] REPORT AND RECOMMENDATION**<br><br>Case No. 2:16-cv-611-DN-DBP<br><br>District Judge David Nuffer |

The Report and Recommendation (the "R&R") issued by United States Magistrate Judge Dustin Pead[1] recommends that the district judge grant a Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration (the "Petition").[2] The subpoena

---

[1] Docket no. 65, filed March 10, 2017.

[2] Docket no. 2, filed June 15, 2016.

served November 12, 2015, seeks "all controlled substance prescriptions issued by the [prescriber] subject of the investigation . . . for the period January 8, 2015 to the present."[3] The subpoena was directed to the Utah Department of Commerce and Utah Division of Occupational and Professional Licensing (the "State").

The petitioner, the Drug Enforcement Administration (the "DEA"), contends that its administrative subpoena power is sufficient to obtain these prescription drug records for use in an investigation.[4] The State has a Controlled Substance Database (the "Database") that indisputably contains this information. But the State claims the Utah Controlled Substance Database Act (the "Database Act") requires a warrant for law enforcement searches of the Database.[5] Salt Lake County Firefighters IAFF Local 1696, Equality Utah, the American Civil Liberties Union of Utah, and two John Does (the "Intervenors") intervened with leave of the court[6] and oppose the Petition on multiple privacy and constitutional bases.[7]

Magistrate Judge Pead recommended the district court grant the Petition, ordering the State to comply with the DEA's administrative subpoena immediately or face contempt sanctions.[8] The Intervenors objected to the R&R.[9] The State objected by joining in the

---

[3] *Id.* at ¶ 9.

[4] *Id.*

[5] Memorandum in Opposition to Petitioner's Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration, docket no. 24, filed August 5, 2016.

[6] Order Granting Motion to Intervene, docket no. 47, entered November 7, 2016.

[7] Respondents-Intervenors' Memorandum in Opposition to Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Administration ("Intervenors Opposition"), docket no. 25, filed August 5, 2016.

[8] R&R at 19, docket no. 65.

[9] Respondents-Intervenors' Objections to Magistrate Judge's Report and Recommendation, docket no. 71, filed March 24, 2017. This docket number designates the refiling of the document after an erroneously designated electronic filing. *See* docket no. 66, filed March 24, 2017 and docket no. 69, filed April 4, 2017.

2

Intervenors' helpful analysis and further arguing that the requirement that the State comply "immediately" is unreasonable and impracticable.[10]

For the reasons explained below, the R&R is ACCEPTED IN PART and MODIFIED IN PART. The State is ordered to comply with the DEA's administrative subpoena within 21 days of this Memorandum Decision and Order.

**Table of Contents**

Background .................................................................................................................................... 3
    The DEA Issues Administrative Subpoenas under the Controlled Substances Act. .......... 3
    The Utah Department of Commerce Maintains the Database. ........................................... 5
    Utah Statute Requires a Warrant from Law Enforcement to Access the Database. ........... 6
    The DEA Seeks Enforcement of an Administrative Subpoena. ......................................... 6
    The Magistrate Judge Recommends Granting the DEA's Petition. ................................... 7
Discussion ....................................................................................................................................... 8
    The Respondents Have Standing to Challenge the DEA's Administrative Subpoena but Do Not Represent Individual Interests. ............................................................................... 9
        The Respondents Have Article III Standing. ........................................................... 9
        The Respondents' Capacity to Challenge a Search Is Limited. ............................ 11
    The Government Already Controls the Information in the Database. .............................. 12
    The Supremacy Clause Resolves the Conflict between State and Federal Law. .............. 13
        The Fourth Amendment's Protections Depend on a Reasonable Expectation of Privacy. ................................................................................................................... 15
        The Subpoena Satisfies the Reasonable Relevance Test. ..................................... 16
        Physicians and Patients Have No Reasonable Expectation of Privacy in the Highly Regulated Prescription Drug Industry. ...................................................... 17
    The State Is Permitted Reasonable Time to Comply with the Subpoena. ........................ 19
Order .............................................................................................................................................. 20

**BACKGROUND**

**The DEA Issues Administrative Subpoenas under the Controlled Substances Act.**

As part of declaring a "war on drugs," Congress enacted the Controlled Substances Act (the "CSA"), which is Title II of the Comprehensive Drug Abuse Prevention and Control Act of

---

[10] State Respondents' Objections to Magistrate Judge's Report and Recommendation, docket no. 67, filed March 24, 2017.

1970.[11] The CSA's main objectives are "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances," particularly the diversion of drugs from legitimate to illicit channels.[12] The CSA sets forth a comprehensive system making it illegal to manufacture, distribute, dispense, or possess any controlled substance except as authorized by the CSA.[13] The CSA categorizes controlled substances into five schedules based on the drugs' potential for abuse, accepted medical uses, and likelihood of causing psychological or physical dependency.[14] The controls imposed for a substance depend on the substance's schedule designation.[15]

Under the CSA, the Attorney General is authorized to issue administrative subpoenas to investigate drug crimes:

> In any investigation relating to his functions under this subchapter [Subchapter I—Control and Enforcement] with respect to controlled substances . . . the Attorney General may subp[o]ena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.[16]

This authority to issue administrative subpoenas has been delegated to the DEA by regulation.[17] The Administrator of the DEA in turn has been authorized to redelegate administrative subpoena authority to subordinates within the DEA.[18] Section 876(c) of the CSA

---

[11] 21 U.S.C. §§ 801 et seq.; Gonzales v. Raich, 545 U.S. 1, 10–12 (2005).

[12] Gonzales, 545 U.S. at 12–13.

[13] Id. at 12–13 (citing 21 U.S.C. §§ 841(a)(1), 844(a)).

[14] Id. at 13–14 (citing 21 U.S.C. §§ 811, 812).

[15] Id. at 14 (citing 21 U.S.C. §§ 821–830).

[16] 21 U.S.C. § 876(a).

[17] 28 C.F.R. § 0.100.

[18] 28 C.F.R. § 0.104, pt. 0, subpt. R, app. § 4.

provides for judicial enforcement of administrative subpoenas: "In the case of contumacy by or refusal to obey a subp[o]ena issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on . . . to compel compliance with the subp[o]ena."[19]

### The Utah Department of Commerce Maintains the Database.

Utah has created the Database pursuant to its Database Act.[20] The Database is administered by the Utah Division of Occupational and Professional Licensing ("DOPL"),[21] a division of the Utah Department of Commerce. The Database records "every prescription for a controlled substance dispensed in the state to any individual other than an inpatient in a licensed health care facility."[22] The definition of "controlled substance" for purposes of the Database is functionally identical to the five schedules of substances under the federal CSA.[23] The Database Act provides that the Database should be used to track prescribing and dispensing practices; identify prescription forgeries; monitor individuals obtaining or dispensing controlled substances in excessive quantities; and identify controlled substance use by individuals convicted for driving under the influence, driving while impaired, or violating Utah's Controlled Substances Act.[24] One of the express uses and purposes of the Database central to this case is to identify "practitioners prescribing controlled substances in an unprofessional or unlawful manner."[25] The

---

[19] 21 U.S.C. § 876(c).

[20] Utah Code §§ 58-37f-101 *et seq.*

[21] *Id.* § 58-37f-201(2).

[22] *Id.* § 58-37f-201(5)(a).

[23] *Id.* § 58-37-2(f)(i).

[24] *Id.* § 58-37f-201(6).

[25] *Id.* § 58-37f-201(6)(b).

purposes of the state Database are entirely consistent with the enforcement scheme under the federal CSA.

### Utah Statute Requires a Warrant from Law Enforcement to Access the Database.

The Database Act identifies who may access information in the Database and for what purposes.[26] Among the individuals to whom DOPL may make Database information available are: DOPL personnel conducting investigations or analysis, health care practitioners, therapists, patients, pharmacists, and—by agreement with DOPL—the Department of Health and its personnel.[27] Access by those persons is subject to limitations of purpose. An amendment to the Database Act in 2015—now codified at Section 58-37f-301(2)(m)—gives access "pursuant to a valid search warrant" to

> federal, state, and local law enforcement officers and state and local prosecutors who are engaged in an investigation related to:
> (i) one or more controlled substances; and
> (ii) a specific person who is a subject of the investigation . . . .[28]

### The DEA Seeks Enforcement of an Administrative Subpoena.

On November 12, 2015, investigators in the DEA's Office of Diversion Control served an administrative subpoena on Francine A. Giani, Executive Director of Utah Department of Commerce, and Mark Steinagel, Director of DOPL (the "Subpoena").[29] The Subpoena relates to an ongoing investigation into possible violations of the CSA by an individual in the Salt Lake metropolitan area who, at the time the investigation began, was registered to dispense controlled

---

[26] *Id.* § 58-37f-301.

[27] *Id.*

[28] *Id.* § 58-37f-301(2)(m). Prior to 2015 no warrant was required for law enforcement access, but alleged abuses by state and local law enforcement led to the 2015 amendment. *See* Intervenors' Opposition at 5–8.

[29] Petition ¶ 9, docket no. 2.

6

substances.[30] The Subpoena sought a full controlled substance report from the Database for the subject of the investigation for the period January 8, 2015 to the present, identifying all controlled substance prescriptions issued by the subject of the investigation and to whom these prescriptions were issued.[31] The compliance date on the Subpoena was November 23, 2015.[32]

The State responded by refusing to produce the records, citing the Database Act's requirement that federal law enforcement obtain a valid search warrant to access the Database.[33]

### The Magistrate Judge Recommends Granting the DEA's Petition.

After the DEA filed its Petition for judicial enforcement,[34] with a supporting memorandum,[35] the State filed an opposition memorandum.[36] The Intervenors also opposed the Petition.[37] The Magistrate Judge held a hearing on the Petition.[38] Following the hearing, the Magistrate Judge issued the R&R.[39] After a thorough analysis of the issues, the R&R recommends the district court grant the DEA's Petition and order the State to comply with the DEA's subpoena immediately or face contempt sanctions.[40] The parties were notified of their right to file objections to the R&R within 14 days of service pursuant to 28 U.S.C. § 636(b) and

---

[30] *Id.* ¶¶ 8–9.

[31] *Id.* ¶ 8.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] Memorandum in Support of Petition to Enforce DEA Administrative Subpoenas, docket no. 7, filed June 14, 2016.

[36] Docket no. 26.

[37] Intervenors Opposition, docket no. 25.

[38] Minute Entry for Proceedings Held Before Magistrate Judge Dustin B. Pead, docket no. 37, entered March 9, 2017.

[39] R&R, docket no. 65, entered March 10, 2017.

[40] *Id.* at 19.

Federal Rules of Civil Procedure 72(b)(2).[41] Both the Intervenors and the State filed objections to the R&R,[42] to which the DEA responded.[43]

## DISCUSSION

The Intervenors objected to the R&R on several bases, arguing that the DEA cannot access information in the Database without a valid search warrant; that the Fourth Amendment limits the use of administrative subpoenas; that records should be no less protected because they are already held by state government; and that the State and the Intervenors (collectively, the "Respondents") have standing to assert the substantive Fourth Amendment rights of the individual patients and physician subject to the Subpoena.[44] The State joined in the Intervenors' objections and further argued that immediate compliance with the Subpoena is impracticable.[45]

The district court must make a de novo determination of those portions of a magistrate judge's report and recommendation to which objections are made.[46] The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[47] Based on a review of all materials on file—including the record that was before the magistrate judge, the reasoning set forth in the R&R, and the objections to the R&R and responses to those objections—the R&R is accepted in part and modified in part.

---

[41] *Id.*

[42] Respondents-Intervenors' Objections to Magistrate Judge's Report and Recommendation ("Intervenors' Objections"), docket no. 71, filed March 24, 2017; State Respondents' Objections to Magistrate Judge's Report and Recommendation ("State's Objections"), docket no. 67, filed March 24, 2017.

[43] Petitioner's Response to Objections to Magistrate Judge's Report and Recommendations.

[44] Intervenors' Objections, docket no. 71.

[45] State's Objections, docket no. 67.

[46] 28 U.S.C. § 636(b)(1)(C).

[47] *Id.*

Compliance with the Subpoena is ordered, over the Respondents' objections, although the State will be afforded 21 days in which to comply with the Subpoena.

### The Respondents Have Standing to Challenge the DEA's Administrative Subpoena but Do Not Represent Individual Interests.

The DEA has questioned whether the Respondents have standing to challenge the Subpoena. The R&R correctly distinguishes between two concepts of "standing" argued by the parties.[48] First, Article III of the Constitution limits federal judicial power to "Cases" and "Controversies."[49] For a court to have subject-matter jurisdiction, the parties must present a dispute over a concrete, particularized, and actual or imminent injury that is both fairly traceable to the challenged action and redressable by court ruling.[50] The second concept of "standing" is better described as a party's capacity to challenge a search on Fourth Amendment grounds.[51] The Respondents have Article III standing, although their capacity to challenge the Subpoena on Fourth Amendment grounds is limited because neither the State nor the Intervenors represent individual patient or prescriber interests.

*The Respondents Have Article III Standing.*

The R&R concludes that in spite of some muddled argument on the issue, this case presents no real challenge to Article III standing.[52] The CSA expressly provides that the DEA may "invoke the aid of any court of the United States . . . to compel compliance with the subp[o]ena"

---

[48] R&R at 15–16, docket no. 65.

[49] *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014).

[50] *Id.*

[51] *United States v. Johnson*, 584 F.3d 995, 999 n.3 (10th Cir. 2009) (citing *United States v. Higgins*, 282 F.3d 1261, 1270 n.3 (10th Cir. 2002).

[52] R&R at 16, docket no. 65.

when any person refuses to obey an administrative subpoena.[53] To enforce or quash the Subpoena presents a redressable legal question of concrete, particularized, and actual effect traceable to the State's refusal to comply with the Subpoena, which satisfies the test for Article III standing. The Petition is properly before this court.

The Intervenors have been permitted to respond to the Petition along with the State. The Supreme Court's recent decision in *Town of Chester v. Laroe Estates, Inc.*[54] does not require a different result. In *Town of Chester*, the Court held that "an intervenor must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff."[55] In other words, intervenors must independently satisfy the test for standing if their interests do not align with those of a party with standing. The Ninth Circuit applied this principle in the context of a challenge to an administrative subpoena in *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Administration* ("*Oregon Program*").[56] The Ninth Circuit determined in *Oregon Program* that the civil rights groups who intervened in the case lacked Article III standing under *Town of Chester* because those civil rights groups sought relief that was admittedly different than the relief sought by the State of Oregon, the respondent, and because the civil rights groups otherwise could not establish standing.[57]

Here, by contrast, the State and the Intervenors seek identical relief—to require a valid warrant for the DEA to access the Database. Indeed, the State joined completely in the

---

[53] 21 U.S.C. § 876(c).

[54] 137 S.Ct. 1645, 2017 WL 2407473, *2 (2017), added to the record by Petitioner's Notice of Supplemental Authority, docket no. 74, filed June 14, 2017.

[55] *Id.*

[56] 2017 WL 2723931, *1 (9th Cir. June 26, 2017).

[57] *Id.* at *4.

Intervenors' objections to the R&R, adding only that extra time should be afforded to comply with the Subpoena in the event it is enforced.[58] *Town of Chester* and *Oregon Program* are distinguishable and do not show any deficiency in standing. The Respondents have Article III standing.

### *The Respondents' Capacity to Challenge a Search Is Limited.*

A party's capacity to challenge a search on Fourth Amendment grounds is a substantive Fourth Amendment issue rather than a standing issue.[59] The R&R correctly concludes that "no party to this suit may assert the substantive Fourth Amendment rights of any investigative target or any patient whose information is disclosed as a result of [the State's] compliance with the [Subpoena]."[60] The Intervenors, joined by the State, argue in their objections to the R&R that a state has, apart from its sovereign role, the ability to pursue the interests of private citizens "only for the sake of the real party in interest" under the *parens patriae* doctrine,[61] and that a state can use third-party standing to do so.[62] However, the cases cited by the Intervenors do not concern Fourth Amendment rights asserted by a state against the federal government. To the contrary, the Supreme Court has held specifically that states may not invoke the *parens patriae* doctrine in order to assert the constitutional rights of their residents against the federal government.[63] The

---

[58] State's Objections, docket no. 67.

[59] *Johnson*, 584 F.3d at 999 n.3 ("Whether a defendant can show a violation of his own Fourth Amendment rights 'is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'") (quoting *Rakas v. Ill.*, 439 U.S. 128, 140 (1978)).

[60] R&R at 17, docket no. 65.

[61] Intervenors' Objections at 12, docket no. 71 (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 602 (1982).

[62] *Id.* (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

[63] *See Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923) ("[I]t is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the Federal Government. In that field it is the United States, and not the State, which represents them as *parens patriae*."); *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17, 539 (2007) (explaining that *Mellon* "prohibits" allowing a state "to protect her citizens from the operation of federal statutes").

11

Respondents do not represent the rights or interests of the subjects of the Subpoena in this enforcement action.

### The Government Already Controls the Information in the Database.

The Subpoena seeks access to prescription drug information that is already in government control. The State, which is undeniably a government entity, records details of every prescription for every controlled substance dispensed in the State of Utah to any individual other than an inpatient in a licensed health care facility.[64] The State shares this information with DOPL personnel conducting investigations or analysis, health care practitioners, therapists, pharmacists, and—pursuant to agreements with DOPL without the agreement of the individual patients or prescribers—the Department of Health and its personnel.[65] In that way the State already controls what the Intervenors describe as "some of the most personal and sensitive information people have: prescription records and the confidential medical information they reveal."[66]

Respondents cite to *Ferguson v. City of Charleston*, in which the Supreme Court held that a state hospital violated the Fourth Amendment by conducting drug tests and then turning the results over to law enforcement agents without the knowledge or consent of the patients.[67] Although *Ferguson* involved information passed from one government entity to another, it did not involve an administrative subpoena. Rather, the state hospital developed and followed a policy in conjunction with local law enforcement to test, arrest, and prosecute drug-

---

[64] Utah Code § 58-37f-201(5)(a).

[65] *Id.* § 58-37f-301.

[66] Intervenors Opposition at 1, docket no. 25.

[67] 532 U.S. 67, 77 (2001).

12

abusing mothers.[68] Local law enforcement was "extensively involved in the day-to-day administration of the policy."[69]

Unlike *Ferguson*, no party to this action is questioning whether the State's maintenance of the Database is a violation of the Fourth Amendment's protection against unreasonable search and seizure. The State and the Intervenors—which include privacy advocates Equality Utah and the American Civil Liberties Union of Utah—are strange bedfellows here. The Intervenors have supported the State's efforts to limit the DEA's administrative subpoena authority by requiring a warrant to access the Database.[70] Yet the State, without objection from Intervenors, is maintaining and sharing extensive the sensitive prescription information in the Database.[71]

The issue raised by the Petition, then, is the means by which the DEA may gather prescription drug information, not from patients or prescribers, but from the State. Does the DEA's administrative subpoena authority empower it to obtain Database records already in the State's control without the warrant required by Utah statute?

**The Supremacy Clause Resolves the Conflict between State and Federal Law.**

This is a conflict between the State's law requiring federal law enforcement to have a valid search warrant to access the Database[72] and the DEA's administrative subpoena authority. Under the CSA's express preemption provision, where state law presents a positive conflict with

---

[68] *Id.* at 81–82.

[69] *Id.* at 82.

[70] *Id.* at 22.

[71] Utah Code § 58-37f-201.

[72] Utah Code § 58-37f-301(2)(m).

the CSA "so that the two cannot consistently stand together," the state law must give way to federal law.[73]

The federal CSA was enacted in part to "strengthen law enforcement tools against the traffic in illicit drugs."[74] The statutory scheme provides that the Attorney General and those to whom the Attorney General delegates administrative subpoena power, including the DEA,[75] can obtain testimony and documents through a subpoena and without a court order.[76] Under the federal statute, a court order is needed only in the event of noncompliance with a subpoena.[77] The conflict created by the warrant requirement under the Database Act[78] with the provisions of 21 U.S.C. § 876 is resolved by the Supremacy Clause.

Although a proper exercise of national power preempts and invalidates a conflicting exercise of state power,[79] federal supremacy power is not absolute. "[T]he Supremacy Clause enshrines as the supreme Law of the Land only those Federal Acts that accord with the constitutional design."[80] "Appeal to the Supremacy Clause merely raises the question whether a law is a valid exercise of the national power."[81] The Respondents do not dispute the theoretical supremacy of the CSA over the Database Act; instead, they contend that the CSA is not a valid

---

[73] 21 U.S.C. § 903.

[74] *Oregon Program*, 2017 WL 2723931, *5 (quoting *Gonzales*, 545 U.S. at 10).

[75] 28 C.F.R. § 0.104, pt. 0, subpt. R, app. § 4.

[76] *Oregon Program*, 2017 WL 2723931, *5 (citing 21 U.S.C. § 876(a)).

[77] 21 U.S.C. § 876(c).

[78] Utah Code § 58-37f-301(2)(m).

[79] *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016). *See also U.S. Dept. of Justice v. Colo. Bd. of Pharmacy*, No. 10–cv–01116–WYD–MEH, 2010 WL 3547898, *4 (D. Colo. Aug. 13, 2010) (holding a Colorado statute conflicts with and is preempted by 21 U.S.C. § 876(a)).

[80] *Alden v. Maine*, 527 U.S. 706, 731 (1999) (internal citation and quotation marks omitted).

[81] *Id.*

exercise of national power because the Fourth Amendment requires a valid search warrant, not an administrative subpoena alone, to access the Database.[82] Determining whether the Subpoena is a valid exercise of national power requires scrutiny under the Fourth Amendment.

### *The Fourth Amendment's Protections Depend on a Reasonable Expectation of Privacy.*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court "uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action."[83] In *Smith v. Maryland*, the Supreme Court applied this test in two steps.[84] First, the Court assessed "the nature of the state activity that is challenged" to determine whether an expectation of privacy existed.[85] Second, the Court analyzed whether, assuming an expectation of privacy, that expectation is "one that society is prepared to recognize as reasonable."[86]

In this case, the state activity at issue is the DEA's Subpoena, an administrative subpoena issued without a warrant seeking prescription drug records maintained in the Database.[87] Under the Tenth Circuit's decision in *Becker v. Kroll*, the Fourth Amendment requires only that an administrative subpoena satisfy a "reasonable relevance test."[88] Moreover, any expectation of

---

[82] Intervenors' Objections at 3–5, docket no. 71.

[83] *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal citation and quotation marks omitted). *See also Katz v. United States*, 389 U.S. 347, 353 (1967).

[84] *Smith*, 442 U.S. at 741–44.

[85] *Id.* at 742–43.

[86] *Id.* at 743–44.

[87] Petition ¶ 9, docket no. 2.

[88] 494 F.3d 904 (10th Cir. 2007).

privacy that patients or prescribers may have in the Database is not reasonable. The prescription drug industry is highly regulated. For these reasons, the Subpoena does not offend the Fourth Amendment.

### *The Subpoena Satisfies the Reasonable Relevance Test.*

To determine that the Subpoena does not violate the Fourth Amendment's protections against unreasonable search and seizure, the R&R employed the reasonable relevance test.[89] This is the test articulated in the Tenth Circuit's decision in *Becker v. Kroll*.[90] Under the reasonable relevance test, "the Fourth Amendment requires only that a subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."[91] The Tenth Circuit applied the reasonable relevance test to an administrative subpoena under similar circumstances in *Becker*.[92] Relying on a line of Supreme Court cases applying the reasonable relevance test, the Tenth Circuit concluded that "an investigatory or administrative subpoena is not subject to the same probable cause requirements as a search warrant."[93]

Applying the elements of the reasonable relevance test to the Subpoena in this case is straightforward. The Subpoena is limited in scope. The DEA requested records for one specific physician for a limited time period.[94] The Subpoena is relevant in purpose. The DEA had an ongoing investigation into the physician who is the subject of the Subpoena at the time of

---

[89] R&R at 7.

[90] 494 F.3d 904 (10th Cir. 2007), cited in R&R at 6.

[91] *Id.* at 916.

[92] *Id.* at 909 (reasonable relevance test applied to subpoena for medical billing records).

[93] *Id.* at 916. *See also Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984); *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 195, 214, 216–217 (1946).

[94] Petition ¶ 9, docket no. 2.

service.[95] And the Subpoena is specific in directive so that compliance will not be unreasonably burdensome. The DEA seeks a single search of the Database by DOPL personnel,[96] which the State has not claimed to be an extraordinarily time-consuming endeavor.

Respondents object to applying the reasonable relevance test in this case and argue that a higher standard should apply.[97] The Respondents claim that the reasonable relevance test is insufficient given "the demonstrated and reasonable expectation of privacy in the sensitive records at issue."[98] Respondents argue that "[w]here there is a sufficient expectation of privacy under the Fourth Amendment, use of a subpoena becomes unreasonable and a warrant is required instead."[99] But, as discussed in the next sections, there is no reasonable expectation of privacy in the Database.

***Physicians and Patients Have No Reasonable Expectation of Privacy in the Highly Regulated Prescription Drug Industry.***

Medical records, including prescriptions, are no doubt personal and private matters. The expectation of privacy analysis nonetheless weighs in the DEA's favor.

Prescription drugs are a highly regulated industry in which patients and doctors do not have a reasonable expectation of privacy. The Sixth Circuit has held that "the pharmaceutical industry, like the mining, firearms, and liquor industries, is a pervasively regulated industry and that consequently pharmacists and distributors subject to the [CSA] have a reduced expectation of privacy in the records kept in compliance with the [CSA]."[100] As one federal district court

---

[95] *Id.*

[96] *Id.*

[97] Intervenors' Objections at 3–9, docket no. 71.

[98] *Id.* at 3.

[99] *Id.* at 4.

[100] *United States v. Acklen*, 690 F.2d 70, 75 (6th Cir. 1982).

explained, the CSA "was intended as a comprehensive federal program to place certain drugs and other substances under strict federal controls to be administered by the Attorney General." In other words, the expectation created by the CSA is that the prescription and use of controlled substances will happen under the watchful eye of the federal government.

Controlled substance use is further regulated by the State of Utah under the Database Act, which has a parallel regulatory purpose. A patient in Utah decides to trust a prescribing physician with health information to facilitate a diagnosis. In so doing, a patient takes the risk—in this circumstance, a certainty—that his or her information will be conveyed to the government as required by the Database Act.[101] The Supreme Court "has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."[102] Surely there is even less expectation of privacy in records held by a governmental entity, when considering a request by another governmental entity.

The Utah Legislature has determined that when a health care provider prescribes controlled substances for a patient's condition, the prescription must be tracked and recorded in the Database.[103] That means the State already has decided that any individual right to privacy in one's prescription drug records is outweighed by a countervailing interest in the government monitoring the prescriptions for unlawful or improper use.[104] Under the circumstances,

---

[101] *United States v. Miller*, 425 U.S. 435, 443 (1976) (citing *United States v. White*, 401 U.S. 745, 751–52 (1971)).

[102] *Id.*

[103] Utah Code § 58-37f-201.

[104] *Id.* § 58-37f-201(6).

physicians and patients have no reasonable expectation of privacy from the DEA in the Database.[105]

The State has, admirably, placed considerable controls and precautions on Database access. The determination that a warrant is required of "state, and local law enforcement officers and state and local prosecutors"[106] is within the State's authority. But the State's attempt to regulate federal law enforcement fails.

In summary, the Subpoena is a valid exercise of national power because it does not offend the Fourth Amendment. Physicians and patients do not have a reasonable expectation of privacy in the highly regulated prescription drug industry, particularly because the State already has control of the prescription information by maintaining the Database. Therefore, the DEA's administrative subpoena authority under the CSA preempts the warrant requirement imposed by the Database Act for federal law enforcement to access the Database. The Subpoena satisfies the reasonable relevance test because it is sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome to the State.

### The State Is Permitted Reasonable Time to Comply with the Subpoena.

The State objects to the magistrate judge's recommendation that the State be ordered to comply with the Subpoena "immediately."[107] The State argues that immediate compliance is impossible and requests a brief period of time to gather the requested information and evaluate whether to appeal a ruling.[108] A reasonable time period to respond to the Subpoena is consistent with the objectives of the CSA. Accordingly, the State will be permitted 21 days from the date of

---

[105] The R&R aptly notes that the argument to the contrary "akin to a criminal defendant suggesting that the federal government must seek a warrant to obtain a defendant's records from local police." R&R at 14.

[106] Utah Code § 58-37f-301(2)(m).

[107] State's Objections at 2–3, docket no. 67.

[108] *Id.*

this Order to comply with the Subpoena or be subject to contempt sanctions pursuant to 21 U.S.C. § 876(c). If an appeal is filed, an application for stay may be made.

## ORDER

IT IS HEREBY ORDERED that the Report and Recommendation[109] is ACCEPTED IN PART and MODIFIED IN PART.

IT IS FURTHER ORDERED that the Petition[110] is GRANTED.

IT IS FURTHER ORDERED that the State is ordered to comply with the DEA's administrative subpoena within 21 days of issuance of this Order or face contempt sanctions upon motion made by the DEA.

Dated July 27, 2017.

BY THE COURT:

David Nuffer
United States District Judge

---

[109] Docket no. 65.

[110] Docket no. 2.